UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 23 Cr. 289 (VM)

NIKHIL GUPTA,

Defendant. Arraignment & Conference

------------------------------x

New York, N.Y.
October 18, 2024
12:05 p.m.

Before:

HON. VICTOR MARRERO,

District Judge

APPEARANCES

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
ALEXANDER N. LI
CAMILLE L. FLETCHER
ASHLEY C. NICOLAS
Assistant United States Attorneys

JEFFREY CHABROWE
Attorney for Defendant

THE COURT: Good morning. Thank you. Be seated.

This is a proceeding in the matter of *United States v. Gupta*; it's docket number 23 CR 0289.

Counsel, please enter your appearances for the record.

MR. LI: Good afternoon, your Honor.

Alexander Li, Camille Fletcher, and Ashley Nicolas, for the government.

THE COURT: Thank you.

MR. CHABROWE: Good afternoon, your Honor.

Jeff Chabrowe, for Mr. Gupta.

THE COURT: The Court notes for the record that the defendant is present in the courtroom seated next to his attorney.

The Court further notes that superseding indictment number 23 CR 0289 was filed on October 17, 2024, and that this defendant has not yet been arraigned on that superseding indictment.

So let us then proceed with the arraignment on the superseder. Mr. Gupta, please rise.

I will now advise you of your rights with respect to the superseding indictment, number 23 CR 0289.

You have the right to remain silent. You need not make any statement. If you do make -- if you have already made statements to the authorities, you need not make any additional statements. Any statements that you do make may be used

against you.

I know that you're represented by counsel today, and you have the right to be represented by an attorney at all future proceedings in this matter.

Mr. Gupta is charged with certain crimes by an indictment. The superseding indictment charges one count of murder for hire conspiracy, in violation of Title 18, Section 1958; one count of murder for hire, in violation of Title 18 U.S.C., Sections 1958 and 2; and one count of conspiracy to commit money laundering, in violation of Title 18, U.S. Code, Section 1956(h).

Mr. Chabrowe, have you seen a copy of the superseding indictment?

MR. CHABROWE: I have, your Honor.

THE COURT: Did you have an opportunity to discuss it with your client?

MR. CHABROWE: Yes, I did.

THE COURT: Mr. Gupta, have you seen a copy of the superseding indictment?

THE DEFENDANT: Yes, your Honor. He read for me. So but I'm weak in the English, and I am not carrying my glasses, so I could not sure read it -- I read it properly. I don't know what this indictment is saying, so I need time.

THE COURT: Well, Mr. Chabrowe, you indicated just now that you had an opportunity to discuss the superseder with your

client.

MR. CHABROWE: Just one --

(Counsel conferred with defendant)

MR. CHABROWE: Yes, your Honor. I read the indictment in its entirety to Mr. Gupta just downstairs.

THE DEFENDANT: He no read. And I don't know what this paper saying, so I need to discuss in detail with my attorney.

THE COURT: All right.

Mr. Chabrowe, your client seems to have a difference of opinion as to whether or not he has reviewed the indictment -- the superseding indictment properly and adequately and whether there have been discussions of it with yourself. If that is the case, I think we should pause the proceeding at this point and give you and your client an opportunity to confirm that you've read the superseding indictment and we can proceed.

MR. CHABROWE: Judge, can I have just one second, please.

(Counsel conferred with defendant)

MR. CHABROWE: Your Honor, I think Mr. Gupta is entirely clear with the proceedings here. I explained to him that the issue is just whether or not he read the indictment or whether I've read it to him, which I have. And he understands that. And I believe he just wants to plead not guilty. And if

there are any questions your Honor wanted to ask him to follow up whether or not he heard it, please do so.

THE DEFENDANT: Yeah. My attorney read for me this indictment and I plead not guilty, sir.

THE COURT: All right. Mr. Gupta, I'm going to ask you to repeat what you just said because I'm not sure I follow you, your statement.

THE DEFENDANT: Yeah. Mr. Chabrowe read the superseding indictment for me downstairs at the meeting room, and I plead not guilty.

THE COURT: All right. Let me ask you point-blank, Mr. Gupta, have you read -- have you now had sufficient opportunity to read the superseding indictment and to discuss it with your attorney and be ready to enter a plea?

(Counsel conferred with defendant)

THE DEFENDANT: I'm entering and plead not guilty, your Honor.

THE COURT: We're not quite there yet.

THE DEFENDANT: Sorry. My English is not good.

MR. CHABROWE: Your Honor, I read the indictment in its entirety to Mr. Gupta. I think when you're saying "enter a plea," he's thinking that means entering a plea of guilty when, in fact, he's saying not guilty, and that's the disconnect.

But I did read the indictment in its entirety. Perhaps Mr. Gupta can confirm that.

THE DEFENDANT: Yeah, he did.

THE COURT: All right.

Do you waive a public reading of the entire superseding indictment?

MR. CHABROWE: Yes.

THE DEFENDANT: Yeah.

THE COURT: All right.

Mr. Gupta, since you have confirmed that you now have read and reviewed the superseding indictment and have adequately discussed it with your attorney and are prepared to waive a public hearing -- a public reading of the superseding indictment, I so confirm at this point.

Now, let me then come back. Are you prepared to enter a plea to the indictment at this time?

THE DEFENDANT: Plead not guilty.

THE COURT: You're entering a plea of not guilty.

THE DEFENDANT: Yes.

THE COURT: A plea of not guilty will be entered. And the record should reflect the defendant is now arraigned on the superseding indictment.

Thank you. You may be seated.

Let me come back --

THE DEFENDANT: Your Honor, I have a --

THE COURT: You may be seated.

Let me come back to the government.

Are you ready to proceed, Mr. Chabrowe?

MR. CHABROWE: Yes. Just very briefly, your Honor.

We have received discovery from the government. It is rather voluminous and it includes --

THE COURT: You're ahead of us --

MR. CHABROWE: Oh, okay.

THE COURT: -- Mr. Chabrowe.

Let me ask Mr. Li to update the Court on the government's discovery obligations, what it has done, any scheduling matters or other circumstances that the Court may wish to bring to the Court's attention at this time.

MR. LI: Thank you, your Honor.

Since our last conference in June, the government has substantially completed its production of Rule 16 discovery to the defense in this case. There may be one or two straggling items, but there will be very, very small productions. Our production is substantially complete.

It's our understanding that the defense is currently reviewing that discovery and there may be an application by the defense in regards to that review.

THE COURT: All right.

Mr. Li, what is your projection of when the government expects to have completed whatever remains to be produced by way of discovery to the defendant?

MR. LI: I expect, your Honor, the straggling items I

referred to were just one or two DEA reports, and they will be produced by next week.

THE COURT: Thank you.

Mr. Chabrowe, now you may address the Court concerning the scope of the discovery and the amount of time you may need in order to adequately review it and go over it with your client.

MR. CHABROWE: Thank you, your Honor.

We have received discovery. I've had some preliminary discussions with Mr. Gupta regarding the discovery. However, he also has a copy of the discovery, which is rather voluminous. It includes recordings that he would like to review himself.

The problem is that currently at MDC there have been constant lockdowns, as I'm sure your Honor is aware. And Mr. Gupta would need access to the law library to review the discovery himself, which he would like to do, but he does not have such access.

We've reached out to MDC. They say that he hasn't asked, but I know that he has, which unfortunately is par for the course at MDC, where they're not particularly helpful.

I've discussed this issue with the government today and they say that they will assist us in getting him law library access. I'm sure that the government will be able to do so. If for some reason they are not, I will reach out to

the Court if we need the Court's help, but I would like to think that the government can solve this issue for us.

The only other outstanding issue which I think Mr. Gupta wanted me to address with the Court is that there are a number of notes of Mr. Gupta's that he took while he was in custody in the Czech Republic, much of which was written on court paperwork that he'd been given, which we also think is privileged because it involves notes that he discussed with his attorneys, his extradition attorneys regarding -- in the Czech Republic.

I've been in touch with the government, who've done a full privilege review of some of these documents. We felt as though what we received was not complete; and we then received a large production from the government last night which we've been going through this morning. And it does appear as though it's more complete than what Mr. Gupta recalls him having in the Czech Republic, so I hope it will be complete. And if it's not, we'll bring that to the attention of the government.

The only other issue, your Honor, is that Mr. Gupta had hoped that he'd be able to get a prayer book, which is very personal to him, and has some notes in it as well that he believes was in his cell in the Czech Republic. In my discussions with the government, they do not see anything that resembles a prayer book, but it certainly is very important for him in order for him to exercise his religious rights. And

unfortunately it appears as though that is something that did not make it from the Czech Republic. And we just want to make sure that the government has gone through everything they have to see if, in fact, that exists somewhere.

THE COURT: Thank you.

Mr. Li, do you have any comment on this request for this book?

MR. LI: Sure, your Honor.

Let me just describe what happened.

When the defendant was extradited from the Czech Republic to the United States, there were certain personal items that were transferred to the custody of the United States government in connection with his extradition.

The prosecution team has not reviewed those personal items. And I'll describe in a moment what those items were. We did not review those items because we thought there might be an issue of privilege, and those items were transferred to a privilege review team.

The personal items are as follows: There is a category of what I would call commercial books and magazines, for example, the novel *The Alchemist*, and then there are some commercial magazines. There appear to be some notations made in those items, and those notations were scanned and transferred by the privilege review team to the defense.

Separately, there is a collection of what I would call

personal papers. These include notebooks, loose papers, and other items with the defendant's writing in them. Again, these items were not reviewed by the prosecution team. All of these items were transferred to the privilege team.

The privilege team scanned and transferred these scans of those items to the defense. In fact, they did so back in July. And a request was made by the privilege team to the defense to identify any items they believe were privileged.

It is our understanding that the defense has not yet identified what items, if any, they believe are privileged. There have been repeated requests made to the defense to provide a privilege log. As of now, no such privilege log has been provided.

And so I think that issue of privilege is being sorted out between the privilege team and the defense. It sounds from what Mr. Chabrowe is saying, that the defense is now reviewing the new scans to see what, if anything, they believe is privileged, and they will resolve those issues with the privilege team.

Turning finally to the prayer book. We have not been able to identify anything that resembles a prayer book. We have sent to the defense actual photographs of all the personal items we received from the Czech Republic which are, as I described to the Court, essentially commercial books and magazines and then personal notes and notebooks. The defense

has not identified for us anything that they see that appears to resemble a prayer book. So if there is such a prayer book, we don't know what it is and we do not see anything that resembles such a book.

THE COURT: Thank you.

Mr. Chabrowe, have you heard what the government had just said concerning this prayer book, whether or not it exists?

What do you suggest may be the next step on this issue? The government essentially is denying that it has any knowledge of it or that it exists, such book, or whether the book was in its custody at any point.

What is your proposal as to how the Court should address this issue at this point?

MR. CHABROWE: Your Honor, if the government is saying that there is no prayer book that's been found anywhere, I don't know quite how to -- what to do with that. I certainly trust the government that they have done a search and looked into it. I don't know if they've contacted the Czech authorities or so forth.

It just appears as though a lot of other things have made it across from Czech Republic. But, for example, I know that we had asked for a number of notes; we were told that the notes were complete. And then we said it doesn't appear they are complete, there's more notes; and then yesterday we

received more notes.

So I would just ask the government to make sure that there is no prayer book and, if not, perhaps there is a way that it could be replaced and gotten to Mr. Gupta immediately so that he can exercise his religious rights.

MR. LI: Your Honor, if I may very briefly be heard.

What I would suggest is a suggestion that we had actually made before Mr. Chabrowe, which is that he physically come and inspect the items that we received from the Czech Republic. If there is such a prayer book, the defense is free to physically review the materials we received and identify for us what this prayer book is.

We don't see it. We've sent the defense photographs of the items we have. They have not identified it in the photographs. But, again, we welcome the defense to make a personal inspection, a physical inspection of those items, and they are free to do so at a time at their convenience.

THE COURT: All right. Let's proceed, since the issue is not one that is amenable to resolution at this point, given the statements and representations made on the record.

All right. Mr. Chabrowe, I did not hear a specific answer to the question of how long you think you will need in order to review the discovery that has been turned over and have your client have a sufficient opportunity to review it and for the two of you to consult.

MR. CHABROWE: Your Honor, thank you.

In terms of perhaps a proposed status conference date, if we could have perhaps 45 days, perhaps something in early January.

THE COURT: All right. Forty-five days.

Mr. Li, does the government have a view concerning the proposal?

MR. LI: The government is ready at the Court's convenience and at the defense's convenience.

THE COURT: Thank you.

Then let's look at the calendar for a date for a follow-up conference roughly 45 days out into January.

THE DEPUTY CLERK: Forty-five days takes us into December; but we can do early January. The Court has availability January 3rd or January 10th.

Do either of those dates work for the parties?

MR. LI: The government is available.

MR. CHABROWE: Your Honor, Mr. Gupta is telling me that he wishes to have the Court appoint a new attorney; perhaps someone who speaks Hindi, he's asking for.

THE COURT: Before we proceed, let us come back to the question that we left open, which is whether the parties are available for a follow-up conference in the January time frame that the Court has indicated.

MR. LI: Your Honor, the government is available.

THE COURT: Mr. Chabrowe?

MR. CHABROWE: That is fine, your Honor. Sure.

THE LAW CLERK: How about on January 3rd at 3 o'clock?

THE COURT: That would be too soon.

THE LAW CLERK: Let's do January 17th.

MR. CHABROWE: That's fine.

THE COURT: What time?

THE DEPUTY CLERK: Noon. Is noon okay for everybody?

MR. CHABROWE: Sure.

MR. LI: Yes, your Honor.

THE COURT: All right.

So, Mr. Li, is there a government motion on that schedule?

MR. LI: Yes, your Honor.

The government respectfully moves to exclude time until January 17th. This is in the interest of justice, to allow the defense sufficient time to review the discovery, to consider any motions they may wish to bring, and for the parties to discuss any potential pretrial resolution to the case.

THE COURT: Thank you.

Mr. Chabrowe, any response from the defendant to that request?

MR. CHABROWE: I'm sorry, your Honor?

THE COURT: Do you have any response to the

government's motion?

MR. CHABROWE: We consent to the exclusion.

THE COURT: All right.

On the government's motion to exclude adjourned time from speedy trial calculations from today through January 17th, 2025, no objections recorded by the defendant, the motion is granted.

I find that the reasons conveyed to the Court warrant exclusion of time, as it is intended to ensure the effectiveness of counsel and to prevent any miscarriage of justice. The Court is satisfied that the ends of justice served in the granting of this continuance outweigh the best interests of the public and the defendant in a speedy trial.

This order of exclusion of time is entered pursuant to the provisions of the Speedy Trial Act, Title 18, U.S.C., Section 3161(h)(7)(B)(i) and (iv).

Mr. Chabrowe, do you have -- did you rise on any particular point?

MR. CHABROWE: I'm sorry, your Honor?

THE COURT: Did you rise on any particular point?

MR. CHABROWE: Oh, no, your Honor.

Your Honor, my client has a letter that he wants to submit to the Court.

THE DEFENDANT: Already I sent to the Court this 5th of July, 2024. But I hope that it is not arrived to the -- by

law.

MR. CHABROWE: He just wanted me to put that on the record, that there is a letter that is to be provided to the Court. Perhaps I could just get that to the Court once we're done today.

THE COURT: All right. Is there a letter to the Court, Mr. Chabrowe? You are counsel to the defendant. And we have to assure that any such correspondence comes to the Court through you; and whether or not the correspondence or letter is one that could be entered into the Court's docket, assuming there is no confidential material in it.

Let me come back to one last housekeeping matter.

I direct the government to comply with its obligations under *Brady v. Maryland* and its progeny to disclose to the defense all information, whether admissible or not, that is favorable to the defendant, material either to guilt or to punishment, and that is known to the prosecution. Possible consequences for noncompliance may include dismissal of individual charges or the entire case, exclusion of evidence and professional discipline or court sanctions on the attorney responsible.

I will be entering a written order more fully describing this obligation and the possible consequences of the government's failing to meet it. I direct the government to review and comply with that order. Mr. Li.

MR. LI: The government confirms that it understands its obligations, has been fulfilling them, and will continue to fulfill them.

THE COURT: Thank you.

Anything else from the government?

MR. LI: Your Honor, if we could just have a moment to confer with the defense.

THE COURT: Yes.

(Counsel conferred)

MR. CHABROWE: Your Honor, after conferring with the government, pursuant to Mr. Gupta's requests, I will be filing something on the docket going forward.

THE COURT: I'm sorry, I did not hear you.

MR. CHABROWE: Pursuant to Mr. Gupta's requests, I will be filing something on the docket, as well as the letter that he sent to me. Thank you.

THE COURT: Oh, okay. Thank you.

Is there anything else, Mr. Li?

MR. LI: Nothing from the government, your Honor.

Thank you.

THE COURT: Anything else, Mr. Chabrowe?

MR. CHABROWE: No. Thank you, your Honor.

THE COURT: Thank you.

Have a good day and a good weekend.

* * *