# EXHIBIT 15B

JID: PCR22ETRfo230037

Police of the Czech Republic
National Drug Enforcement Center SKPV
Prague Division
[redacted]

Case No. NPC-1755-27/ČJ-2023-2200PR

Prague, September 19, 2023
Number of Pages: 1

## Record of Handover of Items

Pursuant to the request for legal assistance CRM-182-89870 (extradition proceedings of Nikhil GUPTA) dated August 1, 2023, the following items shall be handed over:

1.) Apple iPhone mobile phone, IMEI [redacted], SIM [redacted], with a damaged back cover
2.) Apple iPhone mobile phone, IMEI [redacted], SIM [redacted]
3.) Vivo mobile phone, IMEI [redacted], SIM [redacted]
4.) Record of item issuance (mobile phones)
5.) Record of interrogation of Nikhil GUPTA
6.) Record of custody hearing of Nikhil GUPTA
7.) Request for expert opinion (mobile phones)
8.) Expert opinion (mobile phones)
9.) WD SSD drive, 240 GB

On September 14, 2023, Special Agent Joseph Catalano was authorized (via email) by Peter Baldwin, as specified in request CRM-182-89870, to take possession of the aforementioned items.

Processed by: Captain Tyle

Received by:
Joseph Catalano

Přítomen: Col. Martin SLIVA, M.A.

JID: PCR22ETRfo223910

Police of the Czech Republic
National Drug Enforcement Center SKPV
Prague Division
[redacted]

Case No. NPC-1755-8/ČJ-2023-2200PR

Prague, June 30, 2023
Number of Pages: 2

# Record of Surrender of Items

On June 30, 2023, at 19:15 hours, in Terminal 1 of Václav Havel International Airport in Prague, pursuant to Section 78, Paragraph 1 of the Criminal Procedure Code, the following individual was requested to surrender items:

Requested individual: Nikhil GUPTA, born on October 2, 1971, in the Republic of India, nationality: Indian, document: [redacted]

Surrendered items:

1) Mobile phone, brand: iPhone, IMEI: [redacted], access code: [redacted], damaged back cover, gray color

2) Mobile phone, brand: iPhone, IMEI: [redacted], access code: [redacted], slightly damaged back cover, purple-gray color

3) Mobile phone, brand: Samsung VIVO Y 56 5G, IMEI slot 1: [redacted], IMEI slot 2: [redacted], gray color, no visible damage, no security protection

**These items were surrendered as objects that may serve as evidence.**

**Instructions:**

According to Section 78, Paragraph 1 of the Criminal Procedure Code, any person in possession of an item that may serve as evidence is obligated to surrender it upon request. If they refuse, the item may be seized (§ 79 of the Criminal Procedure Code), and a disciplinary fine may be imposed (§ 66 of the Criminal Procedure Code).

Under Section 78, Paragraph 2, the obligation to surrender items does not apply to documents or any physical media containing visual, audio, or data recordings related to matters protected by testimonial privilege unless the confidentiality obligation has been waived or privilege has been lifted.

Per Section 78, Paragraph 3, no one can be compelled to present or surrender an item that may serve as evidence against themselves or their close relatives at the time of the request. This does not affect provisions on seizure, house searches, searches of other premises and land, or personal searches.

According to Section 78, Paragraph 4, if necessary to prevent obstruction of forfeiture or confiscation of an item, the investigative authority listed in Paragraph 1 may issue an order preventing the person in possession of the item from transferring or encumbering it. Any legal action taken in violation of this order is void, and the court may recognize its invalidity ex officio.

2. Record of Surrender of Items

Under Section 78, Paragraph 7, a person whose item has been seized has the right to request its return at any time. If the request is denied, they may resubmit it only after 30 days following the final decision, unless new reasons are provided.

Pursuant to Section 7b, Paragraph 1, if necessary to prevent loss, destruction, or alteration of data critical to criminal proceedings, an individual holding or controlling such data stored in a computer system or on an information carrier may be ordered to preserve it in its original state for the duration specified in the order, taking necessary measures to ensure that its preservation remains undisclosed.

Under Section 7b, Paragraph 2, if required to prevent further criminal activity or its recurrence, an order may be issued directing an individual holding or controlling data stored in a computer system or information carrier to prevent other persons from accessing such data.

According to Section 7b, Paragraph 3, an order under Paragraphs 1 or 2 may be issued by the presiding judge or, in preliminary proceedings, by the public prosecutor or law enforcement authority. Law enforcement requires prior approval from the public prosecutor, unless obtaining such approval is impossible and the matter is urgent.

Under Section 7b, Paragraph 4, an order issued under Paragraphs 1 or 2 must specify the data to which it applies, the reason for its preservation or restricted access, and the period during which these measures will remain in effect, which must not exceed 90 days. The order must include instructions regarding the consequences of non-compliance.

Per Section 7b, Paragraph 5, the authority that issued the order under Paragraphs 1 or 2 must promptly deliver it to the individual to whom it applies.

Statement of the Person Following Instruction:

The following is an exact description of the items: All of the above-mentioned mobile phones belong to me. This includes two Apple iPhones and one Samsung mobile phone.

The aforementioned items were surrendered at the arrival hall of Terminal 1, Václav Havel International Airport, Prague Ruzyně.

After reading this document, I declare that the protocol is accurate, I do not request any corrections or additions, and I sign it as correct and complete on June 30, 2023, at 20:58 hours.

| Person who received the items: Captain Břetislav ŠTĚPÁN, M.A., Chief Commissioner<br>Tel: [redacted] | Interpreter: Heather Badieová | Person who surrendered the items: Nikhil GUPTA |
|---|---|---|
| | Defense Attorney under Substitution: Mgr. Jiří Slováček, Czech Bar Association (ČAK) No. 13596 | |

79.4783.223912

JID: PCR22ETRfo223873

Police of the Czech Republic
National Drug Enforcement Center SKPV
Prague Division
[redacted]

Prague, June 30, 2023
Number of Pages: 2

Case No. NPC-1755-10/ČJ-2023-2200PR

# Interrogation Protocol

**Pursuant to Section 93, Paragraph 2 of the Act on International Judicial Cooperation in Criminal Matters ("ZMJS") for a person detained for extradition proceedings**

On June 30, 2023, at 19:10 hours, at the restricted area of Terminal 1, Václav Havel International Airport, Prague, Aviatická Street, Prague Ruzyně, the following individual was detained pursuant to Section 93, Paragraph 1 of the ZMJS:

Name: Nikhil GUPTA
Previous Name: GUPTA
Date of Birth: October 2, 1971 Place of Birth: New Delhi
Identification Document: [redacted]
Nationality: Indian
Permanent Residence: [redacted]
Residence in the Czech Republic: Unknown
Occupation (Address, Position): Business
Delivery Address: See permanent residence
Native Language and Additional Languages Spoken: English, Hindi
Other Contact Information: See Detention Record
Interrogation commenced on June 30, 2023, at 21:44 hours.

## Instruction:

Pursuant to Section 93(2) of the Act on International Judicial Cooperation in Criminal Matters (hereinafter "AIJCCM"), you are hereby informed that you may express your consent to extradition before the presiding judge of the competent court, in the presence of your defense counsel, for inclusion in the official record. Prior to giving such consent, the presiding judge shall thoroughly and comprehensively inform you of the significance of this consent and the consequences associated therewith. Based on this consent, a simplified extradition procedure pursuant to Section 96 of the AIJCCM would be conducted. In simplified extradition proceedings, the court does not decide on the admissibility of the extradition, nor does the Minister of Justice decide on the authorization of extradition. After the preliminary investigation concludes, the public prosecutor will only submit a motion to the court for placement of the individual into extradition custody or for conversion of preliminary custody into extradition custody, or a motion to discontinue the extradition. The grounds for inadmissibility of extradition set forth in Section 91(1)(a), (c)–(g), (j), and (m) of the AIJCCM shall not apply to simplified extradition. However, should the public prosecutor find that any of the remaining grounds for inadmissibility [Section 91(1)(b), (h), (i), (k), (l), (n), (o), or (p)] apply, the prosecutor shall proceed as if consent to extradition was not given, i.e., submit a motion to the court to declare the extradition inadmissible. By consenting to extradition, you waive the principle of specialty (Sections 85 and 103 AIJCCM). This means the requesting state would not need to seek the Czech Republic's consent for prosecution against you for any offense committed prior to extradition other than that for which extradition was granted, or for enforcement of a sentence or protective measure imposed for such offense, or for surrender to a third state for prosecution or enforcement of an unconditional custodial sentence or protective measure involving deprivation of liberty imposed for such offense. Consent to extradition is irrevocable.

As you were previously informed upon detention, pursuant to Section 14(1)(a) of the AIJCCM and, where applicable, Section 33(1) third and sixth sentences, Sections 37 and 38 of the Criminal Procedure Code, you are entitled to legal counsel in extradition proceedings. You have the right to choose your counsel, communicate with them in private, and consult with them during any stage of the extradition proceedings. Should you not select counsel, one will be appointed for you.

In accordance with Section 93(2) of the AIJCCM, you have the right to request that your counsel be present during your interrogation upon detention unless the counsel is unreachable within the deadline set for surrender to the court.

Under the Vienna Convention on Consular Relations of April 24, 1963 (No. 32/1969 Coll.) and pursuant to Section 76b of the Criminal Procedure Code, you may request that the consular or diplomatic office of your state of nationality operating in the territory of the Czech Republic be informed of your detention. You have the right to communicate with such consular or diplomatic office. If you lack sufficient financial means, such communication shall be provided free of charge.

Pursuant to Section 2(14) of the Criminal Procedure Code, you have the right to use your native language or another language you claim to understand before authorities conducting the criminal proceedings if you declare that you do not understand the Czech language.

You have the right to remain silent regarding your criminal matter.

Knowingly providing false information that harms another person may result in criminal liability (including the offenses of false accusation under Section 345 of the Criminal Code, defamation under Section 184, damage to another's rights under Section 181, complicity under Section 366, and obstruction of justice under Section 347a).

You have the right to read this protocol upon its presentation and request additions or corrections to ensure it corresponds with your statement.

Statement Following the Instruction:
On this day, the instruction has been interpreted into my native language.

I have been duly informed in accordance with the relevant provisions of the ZMJS and the Criminal Procedure Code as stated in the interrogation protocol pursuant to § 93(2) ZMJS regarding the detention for extradition proceedings to a foreign country. I understand the provided explanation and do not require any further clarification.

I acknowledge the legal requirement for defense in these proceedings and state that I have not chosen a defense attorney. Therefore, I have requested that one be appointed for me. The presiding judge for Prague 6 has appointed attorney JUDr. Václav Král, who will be represented in substitution by Mgr. Jiří Slováček, ČAK [redacted]

I require that the appointed defense attorney be present for this interrogation.

I acknowledge that the appointed attorney has been informed of the time and place of the interrogation and is present during the proceedings.

I acknowledge that I will be further interrogated by the prosecutor and the judge, where I will have the opportunity to provide a detailed statement on the matter.

I have been duly informed of the reasons for extradition. Regarding my status as an internationally sought individual, I state the following:

At present, I have nothing to declare, as I do not even know what charges have been brought against me. Once I am informed of the charges, I will respond to them accordingly before the competent authority.

Additionally, I have been informed pursuant to § 93(2) of Act No. 104/2013 Coll. that at this moment, I may express my consent to extradition to a foreign state. I agree to this, but I need to know the exact charges against me.
Regarding my stay/travel to the Czech Republic, I state the following: I came to the Czech Republic for the weekend solely for leisure.
As for my health condition: In the past two days, I have experienced significant liver pain, which made me consider canceling my trip entirely. For the past three to four months, I have been taking medication for my liver, but I do not recall the names offhand. I have these medications in my luggage.
Heartburn, reflux—these are likely my most significant health issues. I regularly take these medications (see item list), including liver medication.
No harm was caused to me during my detention.
I request that the diplomatic office be informed of my detention.
After the interpretation of my statement, I confirm that I agree with its content and do not request any corrections or additions.
Finished, read, and signed as correct on June 30, 2023, at 21:53 hours.

Captain Mgr. Břetislav Štěpán,
a Chief Commissioner

Captain Lukáš Raul

Nikhil Gupta
Detainee

Bc. Heather Badieová, Interpreter
[Signature]

Mgr. Jiří Slováček Defense Attorney

258.4651.223873

Case Number. Nt417/2023

# Minutes of the Detention Hearing

**Municipal Court in Prague, Date: July 1, 2023, at 1:45 PM, Location: Holding Cell No. 327 / 3rd Floor**

Criminal Case Against: Nikhil Gupta, born October 2, 1971

The subject of this detention hearing is the proposal submitted by the Public Prosecutor's Office of the Municipal Public Prosecutor's Office in Prague dated July 1, 2023, received by the Municipal Court in Prague on July 1, 2023, at 12:10 PM, file number 1 KZM 1015/2023, requesting that the detainee, Nikhil Gupta, born October 2, 1971, be placed into pre-trial detention pursuant to Section 94, paragraph 1 of Act No. 104/2013 Coll., on the Criminal Code of Procedure (ZMJS).

Present:

| | |
|---|---|
| Presiding Judge: | Mgr. Jana Miklová |
| Recording Clerk: | Mgr. Kateřina Pajurek |
| Public Prosecutor: | Mgr. Radek Kivaňa – absent, excused due to scheduling conflict with another detention hearing; notified by telephone on July 1, 2023, at 12:20 PM |
| Detainee: | Nikhil Gupta — appeared in person, born October 2, 1971, citizen of the Republic of India. Identity verified by the escort commander. Pursuant to the presiding judge's instruction, restraints were removed. |
| Defense Counsel: | JUDr. Václav Král, Registration No. [redacted], appointed by the District Court on June 30, 2023; present in substitution: Mgr. Jiří Slováček, Ph.D., Registration No. [redacted] |
| Interpreter: for the Hindi language: | Ing. Rashid Zahid, Residence permit No. [redacted], issued on June 28, 2022, Ministry of the Interior of the Czech Republic, Prague 4 |

Prior to the commencement of the detention hearing, the defense counsel was served by expedited delivery with the proposal for the detainee's placement into pre-trial detention submitted by the Municipal Public Prosecutor's Office, file number 1 KZM 1015/2023. The case file was provided for review, and the detainee was permitted to consult with counsel in the absence of the judge. According to the defense counsel, an interpreter was not required for client consultation.

The detention hearing commenced at 1:45 PM.

The interpreter was appointed ad hoc upon signing the oath to interpret from Hindi to Czech and vice versa, as well as to translate documents. No interpreter for the Hindi language is registered on the official list of interpreters.

The proposal for the detainee's placement into pre-trial detention, file number 1 KZM 1015/2023, was served on the detainee by expedited delivery.

The content of the proposal for pre-trial detention was interpreted to the detainee by the present interpreter.

The presiding judge stated the subject matter of today's hearing and read the proposal submitted by the Municipal Public Prosecutor's Office in Prague, file number 1 KZM 1015/2023, regarding placement into pre-trial detention.

The hearing proceeded with the examination of the detainee:

**Nikhil Gupta**

Who, after being instructed pursuant to Section 92 of the Criminal Procedure Code, Section 95(2) of the Criminal Procedure Code, on the legal conditions for extradition under Sections 92–96, and pursuant to Sections 85 and 96 of Act No. 104/2013 Coll. on International Judicial Cooperation in Criminal Matters, with the understanding that consent to simplified extradition may only be granted after a final and binding order on pre-trial detention and the proposal of the Municipal Public Prosecutor's Office, stated as follows regarding the proposal of the Public Prosecutor:

I have understood the instruction.
The detainee was permitted to consult with counsel.

After consulting with counsel, the detainee states: I consent to extradition to the United States and request that the court allow me to purchase a plane ticket at my own expense so that I may travel to the United States as soon as possible to testify before the court that issued the arrest warrant. I will cooperate with U.S. authorities. I will not testify before your court. I will not provide testimony regarding myself or the alleged offense here.

Statement of the detainee regarding the proposal of the Public Prosecutor: Yes, I consent to my extradition and do not waive the principle of specialty. I propose that I be granted special measures and allowed to attend to some authority and purchase my own plane ticket. The detainee requests the court's permission to temporarily access his phone to communicate with that court in the United States.

**Read aloud:**

- Request for provisional detention for the purpose of extradition dated June 19, 2023, including photograph and description
- Provisional consent to detention by the Public Prosecutor
- Detention report dated June 30, 2023
- List of detained person's belongings

Regarding the documents, the detainee states: I do not wish to make a statement; I only confirm that I consent to extradition to the United States.

Defense counsel, in response to a query about additional proposals for supplementing the evidence, states: We will not learn anything regarding the offense or the charges; the content borders on failure to meet the conditions for extradition. If I were to make a proposal, it would be that essential documents are completely missing, so it is impossible to ascertain the description and scope of the subjective or objective elements of the offense. We do not know the procedural status of the case. Therefore, my proposal is to request the documents necessary for a full assessment of the matter. The detainee, when asked about any additional proposals for supplementing the evidence, states: I request that the court allow me to travel to the United States at my own expense. I have no knowledge of any charges.

**Resolution announced:**
Pursuant to Section 216(1) of the Criminal Procedure Code, no further evidence will be taken.
A brief reasoning was given, instruction on the inadmissibility of an appeal was provided, and the evidence was declared closed. The hearing proceeded to final submissions.

**Defense counsel:**
At this time, in my opinion, the conditions for extradition and for the detainee's placement into custody have not been met; both the subjective and objective elements of the crime are absent. There are over 180,000 lawyers living in New York. The detainee was, as he himself stated, immediately questioned by U.S. agents after his detention, so they are present and there is no problem with the detainee being voluntarily transferred to the U.S., where the prosecuting authorities would take custody upon arrival. In contrast, in the other case, the documents in the file are insufficient and will need months of clarification. The detainee should be allowed to voluntarily comply with the request.

Detainee:
I refer to my previous statement. I will fully cooperate with the authorities here as well as with the authorities in the United States. I do not waive the principle of specialty and request that special measures be imposed, allowing me to report to a designated authority and to purchase my own plane ticket.

Resolution announced:
I.
Pursuant to Section 94(1) of Act No. 104/2013 Coll., on International Judicial Cooperation in Criminal Matters, the detainee, Nikhil Gupta, born October 2, 1971, in New Delhi, citizen of the Republic of India, is taken into pre-trial detention based on the request of the U.S. Department of Justice for provisional detention for the purpose of extradition dated June 19, 2023, file number CRM-95-100-30787, for participation in an international conspiracy and the commission of contract murder in New York, based on the criminal indictment of the U.S. District Court, Southern District of New York, case number 23 Cr. 289 2, dated June 13, 2023, for the following offenses:

A) Conspiracy to commit contract murder with intent to cause death, in violation of Title 18, United States Code, Section 1958(a);
B) Contract murder with intent to cause death, in violation of Title 18, United States Code, Sections 1958(a) and 2.

Pursuant to Section 73(1)(c) of the Criminal Procedure Code and applying Section 94(2) of Act No. 104/2013 Coll. on International Judicial Cooperation in Criminal Matters, by way of exception, pre-trial detention of Nikhil Gupta cannot be replaced by probation officer supervision.

II.
Pre-trial detention begins at the moment the requested restriction of personal liberty commenced, namely on June 30, 2023, at 6:33 PM.

A brief justification was provided along with instruction on the right to appeal.

After consulting with counsel, the detainee stated: I reserve the time limit to file an appeal.

After consultation with counsel, the detainee further stated: I do not request a translation of the resolution. I request that the court notify my son in India and my son in Pakistan, as well as the Indian Embassy in Prague, about my placement in pre-trial detention. The detainee provided the following contact details: son [redacted], and wife [redacted].

Upon inquiry, the detainee stated: I have a stomach condition, which I have already mentioned during interrogation, and I have my medication here. Nothing else.

The detention hearing concluded at 2:36 PM.

The detainee was permitted to consult with counsel.

The detainee was handed over to the escort at 2:55 PM along with one copy of the detention order and two copies of the order for admission into custody.

Nt 417/2023

Mgr. Jana Miklová
Presiding Judge

Mgr. Kateřina Pajurek
Recording Clerk

The minutes of the detention hearing were prepared based on the audio recording of the hearing held on July 1, 2023. The CD containing the audio recording is attached to the case file.

JID: PCR22ETRfo223920

Police of the Czech Republic
National Drug Headquarters SKPV
Department Prague, [redacted]

Prague, July 1, 2023
Number of pages: 2

File No.: NPC-1755-16/CJ-2023-2200PR

Criminal Investigation Institute
[redacted]

## REQUEST FOR EXPERT OPINION

**in the field of criminology, specializing in data analysis and examination of data carriers**

Pursuant to Section 105(1) of the Criminal Procedure Code, I hereby request the Criminal Investigation Institute, as an expert institute within the meaning of Section 7 of Act No. 254/2019 Coll., on Experts, Expert Offices, and Expert Institutes, registered in the fields of electrical engineering, chemistry, criminology, handwriting analysis, and mechanical engineering pursuant to Section 48 of Act No. 254/2019 Coll.,

To prepare an expert opinion in the matter of:
Nikhil GUPTA – extradition
Date: June 30, 2023
Location: PRAGUE, [redacted]

Description and Detailed Specification of the Offense:
Based on a detention order in connection with a future extradition requested by the United States, on June 30, 2023, at 7:10 PM, at Terminal 1 of Václav Havel International Airport, Aviatická Street, Prague Ruzyně.

Victim:
Public interest

Suspect (Accused):
Nikhil GUPTA, born October 2, 1971, in New Delhi, valid citizenship: IND (India), ID document: [redacted]
permanent residence: [redacted]

For the purpose of preparing an expert opinion, I am submitting the following items for examination or comparison against forensic collections:

Note regarding evidence:
No. 1 — Mobile phone, total 1 piece: iPhone, serial number [redacted], brand: iPhone — IMEI: [redacted] — access code: [redacted] — damaged rear cover, gray color.

No. 2 — Mobile phone, total 1 piece: iPhone, serial number [redacted], brand: iPhone — IMEI: [redacted] — access code: [redacted] — slightly damaged rear cover, purple-gray color.

No. 3 — Mobile phone, total 1 unit:
SAMSUNG, serial number IMEI Slot 1: [redacted], mobile phone brand: Samsung VIVO Y56 5G — IMEI Slot 1: [redacted], IMEI Slot 2: [redacted] — gray color, no visible damage, not secured (unlocked).

**I request an examination of the above items and the preparation of an expert opinion addressing the following questions:**

1) Perform a backup of all data from the above-listed mobile phones.
2) Any additional findings as determined by the expert.

The requested expert opinion must clearly indicate the factual basis from which it was derived, including the methods and procedures used to reach its conclusions.

The deadline for preparation and delivery of the expert opinion is set for July 14, 2023.
The expert opinion must be prepared in two copies.

Together with this request, the expert is being loaned Faraday bag No. 3285.

I do not consent to the use of destructive methods during the expert examination.
I do not consent to inclusion of the evidence into the forensic trace collection, even if the expert institution expresses interest in doing so.

On behalf of the police authority:
Captain Mgr. Břetislav Štěpán
Chief Commissioner
[redacted]

PCR23ETRpo469869

POLICE OF THE CZECH REPUBLIC
CRIMINAL INVESTIGATION INSTITUTE

File No.: KU-6076-2/CJ-2023-2306TC

Prague, September 14, 2023

Number of pages: 11
Attachments: 1 (one) SSD disk

Police of the Czech Republic
National Anti-Drug Center SKPV
Prague Department
[redacted]

# EXPERT OPINION

**in the field of criminology, specializing in data analysis and examination of data carriers**

The Criminal Investigation Institute of the Police of the Czech Republic, as an expert institution pursuant to Section 7 of Act No. 254/2019 Coll., on Experts, Expert Offices, and Expert Institutions (hereinafter referred to as the "Experts Act"), registered in the fields of criminology, electrical engineering, chemistry, forensic handwriting examination, and mechanical engineering pursuant to Section 48 of the Experts Act, hereby issues this expert opinion

in the matter of: Nikhil GUPTA — extradition

based on the request issued to the Police of the Czech Republic under file no.: NPC-1755-16/CJ-2023-2200PR dated July 1, 2023, pursuant to the provisions of Section 105(1) of Act No. 141/1961 Coll., on Criminal Procedure (the Criminal Procedure Code), as amended (received on July 3, 2023).

Strojnická [redacted]

**Information obtained from the request for expert opinion:**
Date: June 30, 2023
Location: [redacted]

Description and detailed specification of the act:
Based on the warrant for detention in connection with a future extradition request from the United States, the detention took place on June 30, 2023, at 7:10 PM, in Terminal 1 of Václav Havel International Airport, Aviatická Street, Prague Ruzyně.
Victim: Public interest
Subject under investigation (suspect, accused):
Nikhil GUPTA, born October 2, 1971, in New Delhi, valid citizenship: India, ID document No. [redacted], permanent residence at [redacted]

**Submitted items (verbatim excerpt from the request):**
No. 1 – Mobile phone, 1 piece, IPHONE, serial number [redacted]7, brand: iPhone, IMEI: [redacted], access code: [redacted], damaged rear cover, gray color

No. 2 – Mobile phone, 1 piece, IPHONE, serial number [redacted], brand: iPhone, IMEI: [redacted], access code: [redacted], slightly damaged rear cover, purple-gray color

No. 3 – Mobile phone, 1 piece, SAMSUNG, serial number IMEISLOT1-[redacted], brand: Samsung VIVO Y 56 5G, IMEI slot 1: [redacted], IMEI slot 2: [redacted], gray color, no visible damage, unsecured

**Examination to determine (verbatim excerpt from the request):**

1) Create a full backup of all data from the above-listed mobile phones.
2) Further as determined by the expert.

**Methods Used:**

**From the fields of data analysis and examination of data carriers**

1. The general procedure for examining the memory of a mobile device provided without an inserted SIM card is based on the testing method KÚP-SOP-5, titled Standard Procedure for Accessing, Backing Up, and Analyzing the Contents of Telecommunication Equipment Memories. The examined device is connected via a suitable interface to a forensic device. Subsequently, a backup of the mobile device's memory is created and analyzed using forensic tools. The analyzed records will be generated in the form of an output report. Then, information regarding the firmware version and the IMEI number of the mobile device will be retrieved from the device's memory and recorded from the display. For records that cannot be obtained in this manner, data will be transcribed directly from the display (if available) into text files. If necessary, to enhance readability and comprehensibility, corrections of incorrectly converted characters and formatting adjustments (such as adding or removing spaces, tabs, and other formatting characters) will be performed while preserving the original textual content of the records. Any deviations from this examination procedure will be disclosed in the section titled "Performed Examination."

2. The general procedure for examining a SIM card is based on the testing method KÚP-SOP-6, titled Standard Procedure for Accessing, Backing Up, and Analyzing the Contents of SIM Card Memories and Their Modifications. After inserting the SIM card into the chip card reader of the forensic device UFED (Universal Forensics Extraction Device), a full backup ("memory dump") of the SIM card will be performed. This backup is then analyzed using the UFED Physical Analyzer software (recently renamed Cellebrite Physical Analyzer). The analyzed records from the SIM...

The records from the SIM cards will be generated in the form of an output report. Any deviations from the examination procedure will be disclosed in the section entitled "Performed Examination."

**List of Measuring Instruments and Devices Used:**
A technological computer running Windows 10 operating system with the following installed software:
Forensic tool Cellebrite Physical Analyzer, versions: 7.62.0.59 and 7.63.0.126
Forensic tool Cellebrite UFED, versions: 7.66.0.126, 7.65.0.255, and 7.66.0.139
Total Commander, version: 9.0a
WinRAR, version: 6.02
Forensic tool Magnet AXIOM, version: 7.2.0.36145

**Explanation of Terms and Designations Used in the Expert Opinion:**
ICCID (Integrated Circuit Card Identifier):
A series of digits and characters printed on the plastic casing of the SIM card and stored in its internal memory. It is a unique manufacturing serial number assigned to SIM cards by mobile operators. For the Czech Republic, the ICCID begins with the digits 8942 and consists of a total of 19 digits stored in the internal memory. This number is not protected by a PIN code. The ICCID printed on the back of the SIM card may be abbreviated or supplemented with additional characters and digits by some operators. These additional details serve exclusively for the operator's use.

IMSI (International Mobile Subscriber Identity):
A unique number assigned by the mobile operator to the SIM card within the mobile network. Upon the mobile device's first registration to the network, the IMSI is transmitted to the mobile operator along with the ICCID and a secret 128-bit authentication key (referred to as the KI). These numbers substitute the cellular (telephone) number. The telephone number is not stored on the SIM card but can be retrieved from the operator, for example. The IMSI contains 15 digits. This number (together with the SIM card memory contents) may be protected by an active PIN1 code at the owner's discretion, and without knowledge of this code, it cannot be retrieved from the SIM card memory (e.g., for cloning purposes).

IMEI (International Mobile Equipment Identity):
A unique number assigned by the manufacturer to a mobile device. It is a fifteen-digit number, which can be recorded in the format AAAAAAbbCCCCCCd. The first group (A) is the so-called Type Approval Code (TAC); the first two digits represent the country code, and the next four digits belong to the manufacturer. The second group (b) consists of two digits identifying the manufacturer. The third group (C) is the device's serial number. The last digit (d) is used as a check digit calculated by applying the Luhn algorithm to all preceding digits. For most mobile devices, the IMEI can be obtained by entering the code *#06#.

Firmware:
A program or data structure that internally controls various electronic devices (e.g., calculators, mobile phones, navigation systems, computers, and others).

Time Zone Offset (GMT/UTC):
This arises in some reports obtained from mobile devices that store their records in memory set to UTC +0 but display times, for example, as UTC +1. The base time zone is at the Prime Meridian (UTC +0, London, England), and other time zones are relative to it. For the Czech Republic, the applicable time zones are UTC +2 (Daylight Saving Time) and UTC +1 (Standard Time). This means if the final report shows a time of, for example, 12:00 (UTC +0), the corresponding time for a mobile device located in the Czech Republic will be 13:00 during Standard Time and 14:00 during Daylight Saving Time. This automatic adjustment in the mobile device occurs only if the function is enabled and supported by the device.

Checksum:
A digital fingerprint of a file (or other data), used in this case to verify data integrity. The most common verification methods include checksum types such as CRC, MD5, or SHA.

**Statement**

**Basic Inspection of the Submitted Equipment (Data):**
The basic inspection includes identification of the evidence and a description of its current physical condition prior to commencing the examination. This means that the functionality of individual evidence items is not verified by powering on or by the use of forensic tools.

**Evidence 1) Mobile Phone, Brand APPLE, iPhone:**
This is a mobile phone of the brand APPLE, iPhone, with an inserted SIM card. Upon receipt, mechanical damage was noted (abrasions on the body of the mobile phone, scratched display, broken rear part of the mobile phone). Delivered in a Faraday bag together with evidence items 2 and 3.

- IMEI Number (on the device): [redacted]
- SIM Card, Operator Vodafone: [redacted]

**Evidence 2) Mobile Phone, Brand APPLE, iPhone:**
This is a mobile phone of the brand APPLE, iPhone. Upon receipt, mechanical damage was observed (cracked rear portion of the mobile phone, abrasions on the display protective film). Delivered in a Faraday bag together with evidence items 1 and 3.

- IMEI Number (on the device): Not provided
- SIM Card, Operator Airtel: [redacted]

**Evidence 3) Mobile Phone, Brand VIVO:**
This is a mobile phone of the brand VIVO. Upon receipt, no mechanical damage was observed. Delivered in a Faraday bag together with evidence items 1 and 2.

- IMEI Number (on the device): Not provided
- SIM Card, Operator Airtel: [redacted]

**Performed Examination:**

**Evidence 1) Mobile Phone, Brand APPLE, iPhone, SIM Card**
**Analysis of the Mobile Device Memory Content**
Using the procedure outlined above in the section titled "Methods Used," the following was found:

Basic Identification Data:

| | |
|---|---|
| IMEI Number (on the device): | [redacted] |
| IMEI1 Number (in device memory): | [redacted] |
| IMEI2 Number (in device memory): | [redacted] |
| Serial Number (in device memory): | [redacted] |
| Configured Apple ID (in device memory): | [redacted] |
| Device Model (determined from IMEI): | iPhone 11 Pro Max (A2218) |
| Operating System Version: | 16.5.1 |
| Provided Security Code: | [redacted] |

Data Extracted from the Mobile Device Using Forensic Tools:
To extract and recover both deleted and undeleted messages, records, and files, the forensic tool Cellebrite UFED (Universal Forensics Extraction Device) was utilized. A memory dump backup of the mobile device was created (the backup is not included as an attachment to this report), from which the following records were obtained:

| | Total Number of Records: | Of Which Deleted: |
|---|---|---|
| Wireless Networks | 572 | 0 |
| Overall Application Usage | 568 | 1 |
| Paths | 48 | 0 |
| Cookies | 762 | 0 |
| Activity Sensor Data | 12623 | 0 |
| Emails | 22 | 0 |
| Passwords | 1473 | 0 |
| Browsing History | 9528 | 2 |
| Search Queries or Search Terms | 3626 | 2 |
| Chat Messages | 2089 | 457 |
| Native | 119 | 0 |
| IMO | 39 | 1 |
| Nikhil | 39 | 1 |
| Instagram | 12 | 0 |
| [redacted] | 12 | 0 |
| Native Messages | 54 | 0 |
| [redacted] | 17 | 0 |
| [redacted] | 1 | 0 |
| Recants | 357 | 0 |
| Telegram | 35 | 0 |
| Nikhil | 35 | 0 |
| WhatsApp | 1295 | 426 |
| [redacted] | 1295 | 426 |
| WhatsApp Business | 178 | 30 |
| [redacted] | 178 | 30 |
| Installed Applications | 201 | 0 |
| Device Connectivity Information | 2146 | 201 |
| Contacts | 8223 | 21 |
| Device Notifications | 1670 | 0 |
| Location Data | 1928 | 83 |
| Log Entries | 774 | 0 |
| Notes | 142 | 0 |
| App Usage Logs | 25463 | 51 |
| Instant Messages | 373 | 0 |
| Social Media Activity | 19 | 13 |
| Device Events | 32208 | 1803 |
| User Accounts | 23 | 0 |
| Extracted Strings | 30 | 30 |
| Cellular Transmitters (Mobile Towers) | 13 | 13 |
| Web Bookmarks | 15 | 4 |
| Devices | 4 | 0 |
| Call Records | 1274 | 50 |
| Calendar Entries | 164 | 0 |
| Timeline | 127770 | 320 |
| Data Files | 429154 | 0 |
| Applications | 2923 | 0 |
| Archives | 1014 | 0 |
| Audio | 6677 | 0 |
| Databases | 1388 | 0 |
| Documents | 984 | 0 |

| | | |
|---|---|---|
| Configurations | 68389 | 0 |
| Uncategorized Data | 260142 | 0 |
| Images | 78972 | 0 |
| Text | 4476 | 0 |
| Video | 4164 | 0 |
| Exchanges | 22 | 0 |
| Shortcuts | 3 | 0 |

The data was saved to the files stopa1\MT\EXTRACTION_FFS\Zpráva.html and Zpráva.ufdr. These files were generated using the forensic tool Cellebrite Physical Analyzer.

Note: The report also includes the file CellebriteReader.exe. When this program is launched, it imports the Zpráva.ufdr file, which contains records extracted from the mobile device. The program also features a keyword search function.

Using the available tools of the Criminal Institute, it was not possible to export content from the chat application "Botim" on the mobile device. Therefore, the Cellebrite UFED forensic software's function was used, which documents the current display on the mobile device screen (screenshots). The created files (screenshots) are attached to this expert opinion in the folder stopa1\screenshots.

**Analysis of SIM Card Memory Content**

Using the working procedure described above in the section titled "Methods Used," the following was found:

Basic Identification Data of the SIM Card:

ICCID – Serial number of the SIM card stored in memory: [redacted]

IMSI – International Mobile Subscriber Identity stored in memory: [redacted]

The examined SIM card, identified as [redacted] (found on the SIM card), was issued by the electronic communications mobile network operator Vodafone IN (as found in the SIM card memory). Access to the SIM card memory was not protected by a PIN code.

Data copied from the SIM card memory using forensic tools:
The forensic tool Cellebrite UFED (Universal Forensics Extraction Device) was used to copy and recover both deleted and undeleted messages and records. A backup was made from the examined SIM card (the backup is not included as an attachment to this report), from which the following records were extracted:

| | **Total Number of Records:** | **Of Which Deleted:** |
|---|---|---|
| Data SIM | 9 | 0 |
| Contacts | 2 | 0 |

The data was saved to the files stopa1\SIM\EvidenceCollection\Zpráva.html and Zpráva.pdf. These files were generated using the forensic tool Cellebrite Physical Analyzer.
Note: The individually generated reports contain the same records; they differ only in format.

**Stopa 2: Mobile phone brand APPLE, iPhone, SIM card**
**Analysis of Mobile Device Memory Content**
Using the working procedure described above in the section titled "Methods Used," the following was found:

Basic Identification Data:

| | |
|---|---|
| IMEI Number (on device): | Not provided |
| IMEI1 Number (in device memory): | [redacted] |
| IMEI2 Number (in device memory): | [redacted] |
| Serial Number (in device memory): | [redacted] |
| Configured Apple ID (in device memory): | [redacted] |
| Device Model (determined from IMEI number): | iPhone 14 Pro Max (A2894) |
| Operating System Version: | 16.4.1 |
| Provided Security Code: | [redacted] |

Data copied from the mobile device using forensic tools:

The forensic tool Cellebrite UFED (Universal Forensics Extraction Device) was used to copy and recover both deleted and undeleted messages, records, and files. A "memory dump" backup was performed on the mobile device (the backup is not included as an attachment to this report), from which the following records were extracted:

| | Total Number of Records: | Of Which Deleted: |
|---|---|---|
| Activity Sensor Data | 63 | 0 |
| Passwords | 465 | 0 |
| Chats | 24 | 0 |
| Native Messages | 16 | 0 |
| [redacted] | 1 | 0 |
| Recents | 7 | 0 |
| WhatsApp | 1 | 0 |
| [redacted] | 1 | 0 |
| Installed Applications | 178 | 0 |
| Device Connectivity | 1054 | 54 |
| Contacts | 23 | 0 |
| Log Entries | 159 | 0 |
| Application Usage Logs | 104 | 0 |
| Instant Messages | 5 | 0 |
| Device Events | 2559 | 0 |
| User Accounts | 14 | 0 |
| Calendar Entries | 164 | 0 |
| Timeline | 671 | 0 |
| Data Files | 152529 | 0 |
| Applications | 2367 | 0 |
| Archives | 276 | 0 |
| Audio | 1351 | 0 |
| Databases | 597 | 0 |
| Documents | 113 | 0 |
| Configurations | 31823 | 0 |
| Uncategorized Data | 106223 | 0 |
| Images | 7096 | 0 |
| Text | 2491 | 0 |
| Video | 189 | 0 |
| Shortcuts | 3 | 0 |

The data was saved to the files stopa2\MT\EXTRACTION_FFS\Zpráva.html and Zpráva.ufdr. These files were generated using the forensic tool Cellebrite Physical Analyzer.

Note: The report also includes the file CellebriteReader.exe. When the CellebriteReader.exe program is launched, it imports the Zpráva.ufdr file, which contains the records extracted from the mobile device. The program also includes a keyword search function.

**Analysis of SIM Card Memory Content**

Using the working procedure described above in the section titled "Methods Used," the following was found:
Basic Identification Data of the SIM Card:
ICCID – Serial number of the SIM card stored in memory: [redacted]
IMSI – International Mobile Subscriber Identity stored in memory: [redacted]

The examined SIM card, identified as [redacted] (found on the SIM card), was issued by the electronic communications mobile network operator Airtel (as found in the SIM card memory). Access to the SIM card memory was not protected by a PIN code.

Data copied from the SIM card memory using forensic tools:
The forensic tool Cellebrite UFED (Universal Forensics Extraction Device) was used to copy and recover both deleted and undeleted messages and records. A backup was made from the examined SIM card (the backup is not included as an attachment to this report), from which the following records were extracted:

| | Total Number of Records: | Of Which Deleted: |
|---|---|---|
| Data SIM | 6 | 0 |
| Contacts | 24 | 0 |

The data was saved to the files stopa2\SIM\EvidenceCollection\Zpráva.html and Zpráva.pdf. These files were generated using the forensic tool Cellebrite Physical Analyzer.

Note: The individually generated reports contain identical records; the only difference is their format.

**Stopa 3: Mobile phone, brand VIVO, SIM card**
**Analysis of Mobile Device Memory Content**
Using the working procedure described above in the section titled "Methods Used," the following was found:

Basic Identification Data:

IMEI Number (on device): Not provided
IMEI Number (in device memory): [redacted]
Device Model (determined from IMEI): V2225
Operating System Version: 13
Security Code: Not set

Data Extracted from the Mobile Device Using Forensic Tools:
The forensic tool Cellebrite UFED (Universal Forensics Extraction Device) was used to extract and recover both deleted and undeleted messages, records, and files. A "memory dump" backup was performed on the mobile device (the backup is not included as an attachment to this report), from which the following records were obtained:

| | Total Number of Records: | Of Which Deleted: |
|---|---|---|
| Cookies | 109 | 0 |
| Emails | 1 | 0 |
| Passwords | 271 | 0 |
| Web History | 36 | 0 |
| Search Queries | | |

| | | |
|---|---|---|
| Chats | 6 | 0 |
| Native Messages | 29 | 0 |
| Signal Private Messenger | 9 | 0 |
| WhatsApp | 2 | 0 |
| [redacted] | 18 | 0 |
| Installed Applications | 18 | 0 |
| Contacts | 627 | 0 |
| Device Notifications | 93 | 0 |
| Location Data | 194 | 0 |
| Application Usage Logs | 7 | 0 |
| Instant Messages | 3152 | 0 |
| Device Events | 1 | 0 |
| Device Users | 129 | 0 |
| User Accounts | 1 | 0 |
| Call Records | 14 | 0 |
| Timeline | 11 | 0 |
| Data Files | 3834 | 0 |
| Applications | 39886 | 0 |
| Archives | 6259 | 0 |
| Audio | 1999 | 0 |
| Databases | 201 | 0 |
| Documents | 621 | 0 |
| Configurations | 1 | 0 |
| Uncategorized | 524 | 0 |
| Images | 13286 | 0 |
| Text | 14048 | 0 |
| Video | 2 | 0 |
| Exchange | 1 | 0 |

The data was saved to the files stopa3\MT\EXTRACTION_FFS\Zpráva.html and Zpráva.ufdr. These files were generated using the forensic tool Cellebrite Physical Analyzer.

Note: The report also includes the file CellebriteReader.exe. When the CellebriteReader.exe program is launched, it imports the Zpráva.ufdr file, which contains the records extracted from the mobile device. The program also features a keyword search function.

Using the available tools of the Forensic Institute, it was not possible to export the contents of the Notes and Yandex applications from the mobile device. Therefore, the forensic function of the Cellebrite UFED program was utilized, which documents the current display on the mobile device screen (screenshots). The created files (screenshots) are attached to this expert opinion in the folder stopa3\screenshots.

Furthermore, it was determined that the Signal messaging application is installed on the mobile phone. A report from this application was generated using the forensic tool Magnet AXIOM and saved to the folder stopa3\MT_AXIOM. This folder contains an executable file named OpenCase.exe, which launches the program for viewing the recovered user data.

**Analysis of SIM Card Memory Content**

Using the working procedure described above in the section "Methods Used," the following was found:

Basic Identification Data of the SIM Card:

ICCID – Serial number of the SIM card stored in memory: [redacted]

IMSI – International Mobile Subscriber Identity stored in memory: [redacted]

The examined SIM card, identified as [redacted] (found on the SIM card), was issued by the electronic communications mobile network operator Airtel (as found in the SIM card memory). Access to the SIM card memory was not protected by a PIN code.

Data extracted from the SIM card memory using forensic tools:
The forensic tool Cellebrite UFED (Universal Forensics Extraction Device) was used to copy and recover both deleted and undeleted messages and records. A backup was made from the examined SIM card (the backup is not included as an attachment to this report), from which the following records were obtained:

| | Total Number of Records: | Of Which Deleted: |
|---|---|---|
| Data SIM | 6 | 0 |

The data was saved to the files stopa3\SIM\EvidenceCollection\Zpráva.html and Zpráva.pdf. These files were generated using the forensic tool Cellebrite Physical Analyzer.

Note: The individually generated reports contain identical records; they differ only in format.

All of the above-acquired data was compressed into archive files. The MD5 checksums for these files were subsequently calculated using the tool Total Commander:

p2023006076_2_stopa1.rar – MD5: b17139484bcfd2738da9946874faa3f0
p2023006076_2_stopa2.rar – MD5: 74704f89234743854a40264ec0dbe616
p2023006076_2_stopa3.rar – MD5: 18ecd0ea0de67d98d6a1912484b0afca

These archive files are stored on a Western Digital SSD, S/N: [redacted] with a capacity of 240 GB, which forms an attachment to this expert opinion.

Note 1: The attachment also includes a cover sheet in PDF format containing a signature, certificate, and a qualified timestamp.
Note 2: To extract (decompress) RAR-type files, the WinRAR program (version 6.02 or later) is required.

All data obtained in connection with this expert opinion, including the source data submitted for examination, will be stored in the Criminalistics Institute's data repository for at least one month from the date of receipt of this expert opinion, unless otherwise instructed by the requesting authority.

**Responses to the questions posed:**
**1) Was a backup of all data from the aforementioned mobile phones performed?**
Yes. Backups of the submitted mobile phones and SIM cards were created, from which reports of all available data were generated. The obtained data is presented in the section "Examination Conducted" and is stored on the Western Digital SSD, S/N: [redacted], with a capacity of 240 GB, which is attached to this expert opinion.

**2) Further findings as determined by the expert.**
No additional significant facts were identified.

**Preparation period of the expert opinion:** From July 3, 2023 to September 14, 2023
**Laboratory address, location of the examination:** Bartolomějská 10, 110 00 Prague 1, Czech Republic
**Disclaimer:** The results of the tests (examinations) apply only to the tested items.

(Samples/traces) are examined in the condition in which they were received. The forensic institute bears no responsibility for the data and results provided by the requesting authority (the client).

**Note:**
Handling of examined items after the expert analysis:
The examined equipment, along with the attachment to this expert opinion, is handed over as part of the delivery protocol recorded under Ref. No. KU-6076-3/ČJ-2023-2306TC.

**Expert Opinion Prepared by:**
**In the field of data analysis and data storage media examination**

Warrant Officer Jiří Šalanda

This expert opinion was prepared using methods and tools recognized in forensic expertise and by qualified forensic expert(s).

The preparer(s) of this expert opinion may, if required by procedural regulations, personally provide requested explanations before a public authority.

The Forensic Institute of the Police of the Czech Republic is registered pursuant to Sections 47(1) and 48 of Act No. 254/2019 Coll., on experts, expert offices, and expert institutes, in the list of expert institutes maintained by the Ministry of Justice of the Czech Republic in the fields of electrical engineering, chemistry, forensic science, handwriting analysis, and mechanical engineering.

This expert opinion may not be reproduced in any form other than in its entirety without the written consent of the Director of the Forensic Institute of the Police of the Czech Republic, nor may any part of it be extracted or copied.

Col. Eng. Bc. Jaroslav HÜTTL, MBA
Head of the Technical Examination Department

Col. Eng. Bc. Jaroslav Hüttl, MBA
14.09.2023 10:40:38
Digitally signed by:
Col. Eng. Bc. Jaroslav Hüttl, MBA
Czech Republic Police

PCR23ETRpo469869

POLICE OF THE CZECH REPUBLIC
CRIMINAL INVESTIGATION INSTITUTE

# Appendix to the Expert Opinion

**Ref. No. KU-6076-2/CJ-2023-2306TC**

**List of Appendix:**

1. **One (1) Western Digital SSD drive, S/N:[redacted], with a capacity of 240GB containing the following file:**
   **p2023006076_2_stopa1.rar (MD5: b17139484bcfd2738da9946874faa3f0)**
   **p2023006076_2_stopa2.rar (MD5: 74704f89234743854a40264ec0dbe616)**
   **p2023006076_2_stopa3.rar (MD5: 18ecd0ea0de67d98d6a1912484b0afca)**

Col. Eng. Bc. Jaroslav Hüttl, MBA
14.09.2023 06:33:52
Digitally signed by:
Col. Eng. Bc. Jaroslav Hüttl, MBA
Czech Republic Police

# Form E
# Confirmation Regarding Seized Items

I,………………………………………………………………. having been informed that providing false testimony may subject me to criminal prosecution, hereby declare as a witness the following:
1. My position within the state authority of the ………………………………………………………………………………
(he/she) is (position/title) …………………………………………………………………………………………………………..
2. I have been entrusted with the administration of the following matters (by whom)…………………………………….

(name of person)…………………on …………. (date)………….. at……………. (place);

3. I have transferred the administration of the following matters (to whom)……………………………………….
(name of person)…………………on …………. (date)………….. at……………. (place);

in the same condition as I received them (or in a different condition as specified below).

Description of the items:

Changes in the condition of the items during my administration:

Date of Issue
Country in which the certificate was issued
Signature

(Official seal or stamp)

LANGO LEGAL

June 23, 2025

# CERTIFICATION OF TRANSLATION ACCURACY

TRANSLATION OF: USAO_000712

FROM Czech TO English

Lango Legal, a professional translation services agency, hereby certify that the above- mentioned file has been translated by an experienced, qualified, and competent professional translator who is fluent in the above-mentioned language pair. Lango Legal hereby certify that in our best judgment, the translated text reflects the content, meaning, and style of the source text, and constitutes in every respect a complete and accurate translation of the source text.

Certificate of Translation Accuracy LANGO, INC

**Meti Dibra** | Chief Operating Officer

+1 682 204 6131 | www.lango.co