**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

August 6, 2025

**BY ECF**

The Honorable Victor Marrero
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: *United States v. Nikhil Gupta,* S2 23 Cr. 289 (VM)**

Dear Judge Marrero:

The Government respectfully writes in opposition to defendant Nikhil Gupta's letter filed yesterday requesting that the Court expand the scope of the evidentiary hearing scheduled for August 12, 2025 to additionally address: (1) "whether there was a joint venture between U.S. law enforcement and Czech law enforcement when the Czech officers interrogated Mr. Gupta and obtained his phone passwords," and (2) "whether the Czech officers' interrogation of Mr. Gupta violated his Fifth Amendment rights." (Ltr. 1).[1] As to the second issue, Gupta specifically requests the Court consider whether he voluntarily provided his passcode to the Czech police, (*id.* at 5–6), despite declining to raise the issue in his opening brief, (Dkt. 66). Gupta's request should be denied because there are no disputed issues of material fact as to the additional topics he proposes addressing at the hearing, and because he waived any voluntariness challenge to his statement to the Czech police by choosing not to make that challenge in his opening brief.

## I. Applicable Law

"A defendant who seeks to suppress evidence is not automatically entitled to an evidentiary hearing on his claim." *United States v. Velasquez*, No. 96 Cr. 126 (JFK), 1997 WL 414132, at *4 (S.D.N.Y. July 23, 1997).[2] "[E]videntiary hearings should not be set as a matter of course, but

[1] "Ltr." refers to Gupta's August 5, 2025 letter request to expand the scope of the hearing, and "Ltr. Ex." refers to the exhibits to that letter. (Dkt. 80). "Mot." refers to Gupta's memorandum in support of his pretrial motions. (Dkt. 66). "Mot. Ex." refers to exhibits to the Declaration of Nola B. Heller in support of Gupta's pretrial motions. (Dkt. 68). "Gupta Decl." refers to Gupta's declaration in support of his pretrial motions. (Dkt. 67). "Opp." refers to the Government's opposition to Gupta's pretrial motions. (Dkt. 75).

[2] Unless otherwise specified, all case quotations omit internal quotation marks, citations, and prior alterations.

only when the petition alleges facts which if proved would require the grant of relief." *Grant v. United States*, 282 F.2d 165, 170 (2d Cir. 1960). "A defendant is entitled to an evidentiary hearing on a motion to suppress only if the defendant establishes a contested issue of material fact." *United States v. Noble*, No. 07 Cr. 284 (RJS), 2008 WL 140966, at *1 (S.D.N.Y. Jan. 11, 2008); *see also United States v. Jailall*, No. 00 Cr. 069 (RWS), 2000 WL 1368055, at *8 (S.D.N.Y. Sept. 20, 2000) (same). "If a defendant fails to show the existence of a true factual dispute, the court may decide any remaining legal disputes on the papers alone, without an evidentiary hearing." *United States v. Shine*, No. 15 Cr. 728 (TPG), 2016 WL 889308, at *1 (S.D.N.Y. Mar. 4, 2016).

As this Court has recognized, the scope of an evidentiary hearing should be tailored to the areas of genuine and material factual dispute. *See United States v. Jimenez*, No. 10 Cr. 316 (VM), 2011 WL 308401, at *3 (S.D.N.Y. Jan. 28, 2011) (ordering "suppression hearing limited to the single issue of the scope of the consent that Rivera provided"). Where, as here, there is no material factual dispute on an issue, an evidentiary hearing on that issue is "likely to be an unnecessary fishing expedition." *United States v. Shkreli*, No. 15 Cr. 637 (KAM), 2017 WL 3608252, at *6 (E.D.N.Y. May 16, 2017). "The purpose of a hearing is to hear disputed issues of fact, not to determine whether disputed issues of fact might be found and then heard." *United States v. Nosair*, 854 F. Supp. 251, 253 (S.D.N.Y. 1994).

## II. There Are No Disputed Issues of Material Fact Concerning the Existence of a Joint Venture

Gupta claims "there are contested issues of material fact as to whether the DEA directed the Czech officers to obtain the passcodes" to his iPhones. (Ltr. 4). But Gupta identifies no contested facts. Instead, after reciting his argument for the existence of a joint venture, (*id.* at 2), Gupta presents three responses to the Government's argument, in its opposition to Gupta's pretrial motions, that the undisputed facts do not establish a joint venture between U.S. and Czech authorities to obtain Gupta's passcode. Addressing each of Gupta's responses in turn:

*First*, Gupta argues that the Government should not have used the word "processed" when describing, in its opposition brief, the Czech police's collection of his cellphones and passcode at the Prague airport. (Ltr. 3). Gupta insists that he was not "processed" at the airport, "such that there was a clear demarcation between the conduct of the Czech officers and the DEA agents." (*Id.* at 3). But by Gupta's own account, the Czech officers undertook a 30-minute "process," (Gupta Decl. ¶¶ 7, 13), in a room where, after Gupta had been arrested, the Czech police searched Gupta's person, searched his luggage, seized his phones, and asked him for his passcode, (*id.* ¶¶ 4–13). Gupta's disaffection for the word "processed" is not a dispute over a material fact. It is a semantic grumble over whether Gupta's surrender of his phones and passcode to the Czech police at the Prague airport (a fact that nobody disputes) should be called "processing" or something else.

*Second*, Gupta argues that the Government's statement, in its opposition brief, that the Government "did not 'direct the questioning from afar' is belied by . . . a footnote, [in which] the government states that Officer Sandobal recalled a meeting between the DEA and Czech officers before Mr. Gupta's arrest during which 'someone from the DEA' said that 'the DEA would like to get Gupta's phones, ideally with his consent, and if he unlocked it even better.'" (Ltr. 3). Gupta speculates that the Czech police must have "understood this as . . . a direction given that the Czech

officers had no independent investigation." (*Id.*). As the Government explained in its brief, the statement that Officer Sandobal recalled was an "expression of hope that Gupta would consent to a search of his phones," and "not a directive to Czech officers to ask Gupta for his passcode." (Opp. 19–20 n.13). In any event, the Government assumes, for purposes of Gupta's pretrial motions, the fact that someone from the DEA said, in substance and as reflected in the notes of Officer Sandobal's interview, that "we would like to get his phones, ideally with his consent, and if he unlocks it even better." (Ltr. Ex. 2 at 1).[3] Whether that fact (along with the other undisputed facts) demonstrates the existence of a joint venture — which, for the reasons in the Government's brief, it does not — is a matter for briefing and argument, not an evidentiary hearing.

*Third*, Gupta asserts that "the government has continued to belatedly produce documents and information — which were unavailable to the defense at the time it filed its motion — that support there was a joint venture." (Ltr. 4). That is inaccurate.[4] But more importantly, it is irrelevant to the need for an expanded hearing. Whatever new facts Gupta believes he has gleaned from the Government's productions, he is free to use them. The Government does not dispute, for purposes of Gupta's pretrial motions, that the facts set forth in the notes of Officer Sandobal's July

[3] The next sentence of the notes is: "To my knowledge/recollection, nobody from DEA asked the Czechs to get his phone passcodes; I certainly never did." (Ltr. Ex. 2 at 1).

[4] Gupta cites two recent "belated[]" productions, (Ltr. 4): the Government's notes of a July 11, 2025 interview of Officer Sandobal (Ltr. Ex. 2), and a July 2, 2023 email from Agent Franks to other DEA personnel summarizing Gupta's arrest and post-arrest statements, (Ltr. Ex. 1).

As the notes make clear, the Government debriefed Officer Sandobal on July 11, 2025 to investigate the arguments in Gupta's pretrial motions, including whether there was a joint venture. (Ltr. Ex. 2). On July 18, 2025 — one week after the debriefing, three weeks before Gupta's original reply deadline of August 4, 2025, and nearly four weeks before Gupta's extended deadline of August 8, 2025 — the Government produced its notes to the defense. The Government's good-faith efforts to gather facts bearing on Gupta's motion and prompt disclosure of what it learned was not "belated." The Government addressed Officer Sandobal's debriefing, as relevant to Gupta's joint venture argument, in its opening brief, (Opp. 19–20 n.13), and Gupta has addressed the same debriefing in his letter.

Agent Franks' July 2, 2023 email was an internal DEA communication that the Government recently identified and promptly produced on July 30, 2025. There is little new information in the July 2, 2023 email bearing on Gupta's joint venture argument. Gupta says that the July 2, 2023 email disclosed that "Czech law enforcement 'took custody of [Mr. Gupta's] three cellphones,' and 'informed [the DEA] they had the passcodes and would attempt to download them.'" (Ltr. 4). But as Gupta's pretrial motion papers make clear, Gupta was already aware that Czech officers "informed SA Franks and TFO Sandobal that GUPTA had three phones in his possession" and told the DEA agents that "GUPTA voluntarily provided them with the phone passwords." (Mot. Ex. 5 ¶ 4). Gupta was also aware that "[o]n July 12, 2023, less than two weeks after Mr. Gupta's arrest, Czech law enforcement provided U.S. law enforcement with . . . full extractions from both the iPhone 14 and the Vivo phone." (Mot. 10). Accordingly, Gupta not only already knew the core facts in the July 2, 2023 email bearing on his joint venture argument, but has already argued that those facts support the existence of a joint venture.

11, 2025 interview and in Agent Franks' July 2, 2023 email are true. (*See supra* note 4). For the reasons stated in the Government's brief and in note 4 to this letter, nothing in those facts (individually or taken together with the other undisputed facts) establishes a joint venture between U.S. and Czech law enforcement authorities to obtain Gupta's passcode. (*See* Opp. 16–22).

Because there are no disputed issues of material fact bearing on the existence of a joint venture between U.S. and Czech law enforcement authorities to obtain Gupta's passcode, Gupta's request to expand the scope of the evidentiary hearing to cover that issue is "an unnecessary fishing expedition." *Shkreli*, 2017 WL 3608252, at *6. The motion should be denied.

### III. Gupta Waived Any Challenge to the Voluntariness of His Provision of His Passcode to the Czech Police, and Identifies No Factual Dispute Concerning the Foregone Conclusion Doctrine

Gupta next argues that the Court should expand the evidentiary hearing to cover an issue he did not even raise in his motion papers: whether he voluntarily provided his passcode to the Czech police. (Ltr. 5). A party who declines to raise an argument in his opening brief has waived it. *See Melo v. United States*, 825 F. Supp. 2d 457, 464 (S.D.N.Y. 2011) (Marrero, J.) ("[T]he Court notes Melo waived this argument because he raised it for the first time in his Reply."); *United States v. Greenberg*, No. 21 Cr. 92 (AJN), 2022 WL 827304, at *10 (S.D.N.Y. Mar. 9, 2022) ("It is well-established that arguments raised for the first time in a movant's reply are waived."); Individual Rules of Practice of United States District Judge Victor Marrero § II.D ("The Court will not consider new matters raised in replies for the first time."). Nowhere in Gupta's motion papers did he argue that he involuntarily provided his passcode to the Czech police. (*See* Mot. 17–23). Accordingly, that issue is not before the Court.

Gupta made a deliberate choice not to challenge the voluntariness of his statement to the Czech police. That is obvious because — in sharp contrast to his arguments relating to the Czech police, (Mot. 17–23) — Gupta *did* challenge the voluntariness of his statements to the DEA. (*Compare* Mot. 25–28 (arguing Gupta's statements to the DEA "were not freely and voluntarily given") *with* Mot. 17–23 (no voluntariness argument as to Gupta's provision of his passcode to the Czech police)). Where, as here, a party has intentionally relinquished or abandoned a known right, there is a true waiver that "altogether extinguishes a claim premised on that right." *United States v. Bolling*, 81 F. App'x 373, 375 (2d Cir. 2003); *see also United States v. Spruill*, 808 F.3d 585, 597 (2d Cir. 2015) ("We have also recognized waiver where a party makes a tactical decision not to raise an objection."). Gupta clearly knew how to make a voluntariness challenge. Having strategically chosen not to make a voluntariness challenge to his provision of his passcode to the Czech police, Gupta cannot now demand an evidentiary hearing on that issue.

Gupta says that he did not waive the argument that he involuntarily provided his passcode to the Czech police because he argued generally that his "statements were made in violation of his Fifth Amendment rights." (Ltr. 5). To be sure, Gupta made a Fifth Amendment argument that "[d]espite holding Mr. Gupta in custody at the direction of the DEA, the Czech officers did not read Mr. Gupta his rights or advise him of any protections he might have." (Mot. 20). But that is an argument that the DEA and Czech police were engaged in a joint venture and that the Czech police failed to warn Gupta of his rights under U.S. law — not an argument that his statement to

the Czech officers was involuntary. Gupta says the Court should infer that he made a voluntariness argument as to his passcode because he "explained that the Fifth Amendment analysis requires an assessment" of voluntariness, "relied on cases in which a phone search was suppressed" for lack of voluntariness, and submitted facts from which one *could have* articulated a voluntariness argument. (Ltr. 5). But the fact remains that Gupta simply did not argue that he involuntarily gave his passcode to the Czech police. It is not the Court's job, "at least in a counseled case," to "form an argument for [a party], by looking into the record to document the 'facts' posited in his 'statement of the case,' and then examining various combinations of these facts in the light of the legal doctrines he later mentions." *Sioson v. Knights of Columbus*, 303 F.3d 458, 460 (2d Cir. 2002) (declining to consider "a doctrinal recapitulation" that "references only case-law authorities, and never the requisite combination of authorities and putative facts"); *see also United States v. Fayton*, 704 F. Supp. 3d 449, 453 (S.D.N.Y. 2023) ("a party may be deemed to have waived an argument through inadequate briefing"); *United States v. Malka*, 602 F. Supp. 3d 510, 529 (S.D.N.Y. 2022) (motions "made in passing and unaccompanied by any effort at developed argumentation" are waived).

Gupta contends that the Government "understood that Mr. Gupta was raising this argument because it addressed it in its opposition." (Ltr. 6). The opposite is true: The Government expressly pointed out that "Gupta does not claim that his provision of his passcode to Czech authorities was involuntary" and urged that "[s]hould Gupta argue in his reply brief that the provision of his passcode was involuntary, the Court should dismiss the argument as forfeit." (Opp. 16 & n.12; *see also id.* at 26 ("Gupta does not claim that he provided his passcode involuntarily.")). The Government's observation, in a footnote, that the video of Gupta unlocking his phone makes clear that his will was not overborne, (*id.* at 26 n.17), does not somehow concede that Gupta made an argument that the Government expressly pointed out he had not.[5]

Finally, Gupta argues the Court should expand the hearing to encompass the Government's argument that "Mr. Gupta's passwords should not be suppressed under the foregone conclusion doctrine of the Fifth Amendment." (Ltr. 6–7). But Gupta identifies no disputed facts bearing on this issue that an evidentiary hearing would resolve. Accordingly, no hearing on this issue is warranted.

[5] Should the Court reach the merits of Gupta's voluntariness challenge to the provision of the passcode to the Czech police, the video of Gupta entering his passcode, (Mot. Ex. 9), is sufficient to dispose of that challenge without need for further evidence at the hearing scheduled in six days. (*See* Opp. 26 n.17 ("The Passcode Video . . . shows Gupta calmly entering his passcode in a well-lit room. Gupta is not handcuffed. The Czech officers in the video are in shorts and sneakers. A Czech officer speaks calmly to Gupta in English, and Gupta responds calmly in English. It is clear from the video that Gupta's will was not 'overborne by the circumstances surrounding the giving of' his passcode. *Dickerson* [*v. United States*, 530 U.S. 428, 434 (2000)].").

**IV. Conclusion**

For these reasons, Gupta's request to expand the scope of the August 12, 2025 evidentiary hearing should be denied.

Respectfully submitted,

JAY CLAYTON
United States Attorney

by: ______________________________
Camille L. Fletcher / Alexander Li /
Ashley C. Nicolas
Assistant United States Attorneys
(212) 637-2383 /-2265 /-2467

cc: All counsel of record (*by ECF*)