**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- v. -<br><br>NIKHIL GUPTA,<br><br>Defendant. | No. 23 Cr. 289 (VM) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NIKHIL GUPTA'S MOTIONS TO SUPPRESS CERTAIN EVIDENCE AND STATEMENTS AND TO DISMISS COUNT THREE OF THE SECOND SUPERSEDING INDICTMENT**

Nola B. Heller
Matthew Laroche
Peter Farag
Isabel C. Pitaro
MILBANK LLP
55 Hudson Yards,
New York, NY 10001
(212) 530-5108

*Counsel for Defendant Nikhil Gupta*

**Table of Contents**

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 3

I. COUNT THREE OF THE S2 INDICTMENT SHOULD BE DISMISSED FOR VIOLATING THE RULE OF SPECIALTY .......... 3

A. The Czech Republic Objected to and Never Waived the Addition of Count Three .......... 3

B. The Czech Republic Lacked the Necessary Facts to Evaluate Count Three .......... 4

C. The Government's Interpretation of *Barinas* Misstates Its Holding, and Mr. Gupta Has Standing to Challenge Count Three .......... 7

D. If Necessary, the Court Should Defer Its Ruling Until a Full Factual Record is Available .......... 9

II. THE COURT SHOULD COMPEL THE GOVERNMENT TO PRODUCE ALL COMMUNICATIONS WITH CZECH AUTHORITIES REGARDING MR. GUPTA'S ARREST, INTERROGATION, AND EXTRADITION .......... 9

A. Communications With Czech Authorities Regarding Mr. Gupta's Extradition Must be Produced .......... 12

B. Communications With Czech Law Enforcement Regarding Mr. Gupta's Arrest and Interrogation Must be Produced .......... 13

CONCLUSION .......... 13

# Table of Authorities

**Page(s)**

**Cases**

*Brady v. Maryland*,
373 U.S. 83 (1963)....................9, 10

*Fiocconi v. Att'y Gen. of United States*,
462 F.2d 475 (2d Cir. 1972)....................7

*Giglio v. United States*,
405 U.S. 150 (1972)....................9

*United States v. Abdalla*,
317 F. Supp. 3d 786 (S.D.N.Y. 2018)....................12

*United States v. Amirov*,
2025 WL 660197 (S.D.N.Y. Feb. 28, 2025)....................7, 9

*United States v. Barinas*,
865 F.3d 99 (2d Cir. 2017)....................6, 7

*United States v. Cortorreal*,
2024 WL 4635230 (2d Cir. Oct. 31, 2024)....................8

*United States v. Garcia*,
587 F.3d 509 (2d Cir. 2009)....................5

*United States v. Lorea*,
24 F.4th 144 (2d Cir. 2022)....................8

*United States v. Piervinanzi*,
23 F.3d 670 (2d Cir. 1994)....................5

*United States v. Rodriguez*,
496 F. 3d 221 (2d Cir. 2007)....................10

*United States v. Stein*,
488 F. Supp. 2d 350 (S.D.N.Y. 2007)....................9

*United States v. Suarez*,
791 F.3d 363 (2d Cir. 2015)....................8

*United States v. Tuzman*,
301 F. Supp. 3d 430 (S.D.N.Y. 2017)....................7

*United States v. Urena*,
989 F. Supp. 2d 253 (S.D.N.Y. 2013)....................9, 13

**Statutes**

18 U.S.C. § 1956(a)(2)(A)....................5

18 U.S.C. § 1956(h)....................4, 5

**Other Authorities**

Fed. R. Crim. P. 16....................9, 10, 11, 13

Defendant Nikhil Gupta respectfully submits this Reply Memorandum of Law in support of his motions (Dkt. 65, "Motion") to suppress certain evidence and statements and to dismiss Count Three of the Second Superseding Indictment (the "S2 Indictment").

**PRELIMINARY STATEMENT**[1]

The Court has ordered a hearing on two of the issues that the defense raised in its Motion: (i) whether Mr. Gupta's statements to the Czech officers and the fruits derived from those statements should be suppressed, and (ii) whether Mr. Gupta's statements to the DEA should be suppressed. For the reasons stated in the defense's Motion and a subsequent letter motion filed at Dkt. 80 (the "Letter Motion"), which is incorporated herein by reference, the defense fully expects to be able to establish at the hearing that suppression is necessary. Because the defense's arguments were addressed in our Letter Motion and will be further addressed at the upcoming hearing, the remainder of this memorandum addresses the defense's motion to dismiss Count Three of the S2 Indictment.

The Court should dismiss Count Three because the Czech Republic never approved Mr. Gupta's prosecution for money laundering conspiracy. The government never sought or obtained the Czech Republic's consent to expand the scope of Mr. Gupta's extradition, in direct violation of the rule of specialty. Indeed, in an April 10, 2025 letter (the "April Letter"), the Czech Ministry of Justice affirmatively stated that no such request had ever been submitted and emphasized only the United States could initiate that process. *See* Ex. 26.[2] After the defense cited this

---

[1] The defense hereby requests leave to file a reply brief that exceeds 3,500 words. The defense's reply totals approximately 4232 words.

[2] Citations to number exhibits between 1 and 31 (*e.g.*, "Ex. 1") are to exhibits to the Declaration of Nola B. Heller in support of Mr. Gupta's opening motion. *See* Dkt. 68. Citations to letter exhibits from number 32 onwards refer to exhibits to the Heller declaration filed in connection with this reply. Citations to letter exhibits are to exhibits the government attached to its opposition to Mr. Gupta's motion. *See* Dkt. 75.

communication in its opening brief (Dkt. 66), rather than seek a waiver of the rule of specialty from the Czech Republic, the government privately solicited updated views from Czech officials without notifying the defense, which apparently resulted in the Czech Republic's transmission of a letter to the government on July 7, 2025 (the "July Letter"). *See* Dkt. 75, Gov't Opp., Ex. A. But the July Letter does not provide any support for the government's position. In it, the Czech Republic does not grant a waiver of the rule of specialty, nor does it retract its prior position that the government never sought permission to expand the scope of Mr. Gupta's case. In fact, the July Letter fails to even reference Mr. Gupta's charges at all. Rather, it contains generic statements that do not cure the government's failure to secure proper authorization before expanding the scope of extradition.

The addition of Count Three introduces a substantially expanded factual narrative that was never disclosed to the Czech Republic during Mr. Gupta's extradition proceedings and adds twenty years to Mr. Gupta's sentencing exposure. Additionally, the narrative that *was* disclosed contains no facts that can support the addition of a money laundering charge. The rule of specialty exists to prevent these types of outcomes. Because the government is seeking to prosecute Mr. Gupta for an offense outside the scope of the extradition request, Count Three must be dismissed. In the alternative, the Court should delay a ruling on this issue until the government has produced all relevant materials to the defense and the record can be evaluated more fully.

Relatedly, although the parties have been working together productively on various discovery issues and the defense appreciates the government's responsiveness to its requests, there are certain discovery issues for which the parties are now at an impasse. Because those issues arose after the defense filed its Motion and impact the upcoming hearing, the defense is raising both issues now. Specifically, the defense requests that the Court compel the government to

produce all communications with Czech authorities regarding Mr. Gupta's arrest, interrogation, and extradition.[3]

## ARGUMENT

### I. COUNT THREE OF THE S2 INDICTMENT SHOULD BE DISMISSED FOR VIOLATING THE RULE OF SPECIALTY

#### A. The Czech Republic Objected to and Never Waived the Addition of Count Three

The government contends that the Czech Republic has advised that no waiver of the rule of specialty is needed. But the April Letter, *see* Ex. 26, can fairly be read as the Czech Republic's objection to the government's post-extradition addition of Count Three, and the government has presented no other evidence that it agreed to waive the rule.

In the April Letter, the Czech Ministry stated that it had not received any request to expand the scope of extradition and that no such proceedings were pending, making clear that only the United States could initiate that process, which would then allow the Czech government to assess whether waiver was appropriate. *See id.* ("To date, the Ministry of Justice of the Czech Republic has not received any request for additional consent with the extension of the extradition of Mr. Nikhil Gupta from the authorities of the United States of America."). The April Letter contains no indication that the Czech Republic ever consented to the addition of Count Three.

The government now relies on a newly obtained Czech Ministry letter, produced only after briefing began to suggest otherwise and support its position. *See* Gov't Opp., Ex. A. But the July Letter does not alter or override the April Letter. It neither waives Count Three nor retracts the language in the April Letter, nor does it contain any specific findings with respect to Mr. Gupta's

[3] The defense has reviewed Your Honor's Individual Rules governing discovery disputes. Nonetheless, given the defense's extensive discussions with the government and the fact that the government's mid-briefing productions have affected the arguments the defense raises herein, the defense has addressed these issues here for efficiency.

case. Instead, the July Letter offers a general and conditional statement that "[i]f there are no new facts and the new charge is based upon the same facts (acts) for which extradition was granted, it is not necessary to seek the extension of extradition (waiver of the rule of specialty)." This statement is not an endorsement of the government's position. It is not even tethered to the facts of this case. It makes no mention of Count Three or the scope of the S2 Indictment. It does not evaluate the elements of conspiracy to commit money laundering, the government's charging theory, or the statutory penalties involved. It does not reference the April Letter, let alone respond to it.

It is also troubling that the government obtained the July Letter *ex parte*, and only after the defense filed its Motion. The government does not explain why it was suddenly prompted to solicit updated views from the Czech Republic, what representations it made during that dialogue, and why it did not disclose those communications to the defense earlier.[4] The defense had no opportunity to respond to whatever information the government conveyed behind-the-scenes, nor to test whether it gave the Czech authorities a complete or accurate account of these issues. This lack of transparency undermines the government's reliance on the July Letter and reinforces that the Czech Republic never waived its objection to Count Three.

**B. The Czech Republic Lacked the Necessary Facts to Evaluate Count Three**

Even assuming the July Letter constituted some sort of unspoken consent to the addition of Count Three (which it does not), such consent cannot have been knowing or voluntary because the Czech Republic was *never* given the facts or legal framework necessary to evaluate a money laundering conspiracy under U.S. law. Further, the government's extradition request omitted the very information that would have allowed the Czech courts to conduct this analysis themselves.

[4] The July Letter, which is dated July 7, 2025, was produced to the defense on July 18, 2025.

Specifically, the extradition record is silent on the facts and legal theories necessary to support a money laundering conspiracy. The government's extradition request did not include the statutory language of 18 U.S.C. § 1956(h), did not set forth the elements of a money laundering conspiracy, and did not include any sentencing exposure for Count Three. The accompanying affidavit from Assistant United States Attorney Nicolas addressed only Counts One and Two. *See* Ex. 21. It included an overview of U.S. conspiracy law and the murder-for-hire statute, along with the full text of 18 U.S.C. §§ 2 and 1958. But it offered no comparable explanation of Count Three, its elements, or its potential penalties. As the Court knows, the elements of money laundering vastly differ from the elements of murder-for-hire. Thus, there is no way to argue that the Czech courts were in a position to legally or factually evaluate Count Three before it was added.

The government now points to a few isolated statements in Special Agent ("SA") Franks's affidavit to argue that the Czech Republic "knew of Gupta's money laundering conduct." Gov't Opp. at 33; *see also* Ex. 21, Franks Aff. ¶¶ 6-8. But these brief references fall short of what is required to establish a money laundering conspiracy. Conspiring to launder money under 18 U.S.C. § 1956(h) requires "two or more people [to] agree to violate the federal money laundering statute," and to "knowingly engage[] in the conspiracy with the specific intent to commit the offenses that are the objects of the conspiracy." *United States v. Garcia*, 587 F.3d 509, 515 (2d Cir. 2009) (cleaned up). As charged in the S2 Indictment, the object of the conspiracy is § 1956(a)(2)(A), which penalizes "an overseas transfer 'with the intent to promote the carrying on of specified unlawful activity.'" *United States v. Piervinanzi*, 23 F.3d 670, 680 (2d Cir. 1994) (quoting 18 U.S.C. § 1956(a)(2)(A)).

The S2 Indictment expressly alleges that Gupta's alleged co-conspirator "Yadav subsequently agreed, in dealings brokered by Gupta, to pay the UC $100,000 to murder the

Victim." But critically, this allegation was never disclosed to Czech authorities. Dkt. 28, ¶¶ 4, 15, 17, 21; *cf*. Ex. 21. None of the extradition materials mention Mr. Gupta's alleged co-conspirator Yadav at all, let alone in connection with any agreement to launder money.

Other than Yadav, Gupta's only other possible co-conspirator in this matter was the money courier himself – but the extradition materials do not allege that the courier knew of or joined the conspiracy. *See* Ex. 21, Franks Aff. ¶¶ 6-8. In fact, the extradition request contains no allegation that any money changed hands between Mr. Gupta and the courier, that the funds were unlawful or international in origin, or that the courier knew the transaction was intended to promote or conceal criminal activity. *Id.* The government's opposition points to none either. These omissions confirm the Czech Republic was never presented with facts that satisfy the elements of a money laundering conspiracy. The Czech Republic only considered what was alleged in the extradition materials and was never made aware of the entirely separate allegation that Mr. Gupta conspired to launder funds to the United States with any alleged co-conspirator.

Czech court records further confirm that Count Three was never part of the extradition analysis. Czech courts only considered the statutory maximum penalties for Counts One and Two, not any money laundering conspiracy – a particularly important fact since the addition of Count Three *doubles* Mr. Gupta's sentencing exposure, adding 20 years. *See* Ex. 2B at 6. The Czech courts' comparative law analysis likewise focused solely on whether those two counts aligned with parallel Czech criminal statutes. *See id.* at 9. And when assessing whether the charged conduct was time-barred under Czech law, the Czech courts did so only with respect to Counts One and Two. *See id*. at 10.

There is therefore no indication the Czech courts considered the elements, theory, or timeliness of a money laundering charge. Mr. Gupta and his Czech counsel had no notice of such

a charge and had no opportunity to rebut it. The government excluded Count Three from its extradition submission, and the record confirms this omission. It must now live by that decision and forgo the money laundering charge contained in Count Three.

### C. The Government's Interpretation of *Barinas* Misstates Its Holding, and Mr. Gupta Has Standing to Challenge Count Three

The government erroneously relies on *United States v. Barinas*, 865 F.3d 99 (2d Cir. 2017) to justify its position that Mr. Gupta lacks independent standing to make his rule of specialty argument here, contending that *Barinas* held that an individual only has such standing when the foreign government *has already* objected. While the *Barinas* Court held that "the principle of specialty can be invoked here only by the [surrendering state]," it *also* expressly provided that the principle of specialty "can afford the extraditee himself a remedy only if the surrendering government *would object*. . . ." *Id*. at 105 (emphasis added).[5] The "would object" standard articulated in *Barinas* indicates that reviewing courts must assess standing not only on the basis of whether the foreign government *has* already objected, but rather whether it *would* object in the same situation.

The government fails to mention that several of the cases it cites in support of its position also use the "would object" standard. *See United States v. Tuzman*, 301 F. Supp. 3d 430, 457 n.11 (S.D.N.Y. 2017) ("[The principle of specialty] can afford 'the extraditee' himself a 'remedy only if the surrendering government would object, since the underlying substantive wrong, which grows

[5] *Barinas* is also factually distinguishable from this case in several respects. First, and most importantly, there was no indication that the surrendering state objected to the additional charge in that case. *See id.* at 105. Here, by contrast, the Czech Republic made clear in its the April Letter that it had not consented to the additional charge. Second, the added charge in *Barinas* stemmed from a prior violation of supervised release, specifically a failure to report to a probation officer. This conduct occurred before extradition and was already the subject of a preexisting arrest warrant. The defendant in *Barinas* was aware of the arrest warrant *before* extradition. *See id.* at 101. Mr. Gupta, in contrast, had no such notice of the money laundering charge.

out of international law, is only to the latter.'") (quoting *Fiocconi v. Att'y Gen. of United States*, 462 F.2d at 479-80 n.8 (2d Cir. 1972)); *see also United States v. Amirov*, 2025 WL 660197, at *3 (S.D.N.Y. Feb. 28, 2025) (same).

It is the defense's position that the *Barinas* standard clearly confers individual standing if a reviewing country "would object." But because the language is somewhat unclear, other circuits' treatment of this issue is all the more persuasive. As explained in the defense's Motion, at least six circuits have held or suggested an extradited defendant has standing to raise a specialty violation, even in the absence of an express objection from the surrendering state. *See* Def. Mot. at 31. These courts have recognized the rule of specialty derives from treaty obligations that, while rooted in international comity, also protect the rights of the accused. The government does not engage with this body of law, and it offers no response to the cross-circuit consensus on this point.

Finally, the government relies on a series of factually inapposite cases in support of its standing argument. For example, the government cites *United States v. Lorea* for the proposition that an extraditee lacks standing to complain of noncompliance with an extradition treaty unless the treaty contains language indicating a private right of enforcement. 24 F.4th 144, 151 (2d Cir. 2022). But in *Lorea*, the court rejected a specialty challenge only after the extraditing country explicitly consented to the charges at issue – a wholly different scenario than here, where no such waiver was granted. 24 F.4th at 152. The defendant in *United States v. Cortorreal*, also cited by the government, did not challenge the addition of a new charge, but instead sought a cap on his sentence based on the rule of specialty – facts that are completely inapposite to those in this case. 2024 WL 4635230, at *3 (2d Cir. Oct. 31, 2024), *cert. denied*, 145 S. Ct. 1222 (2025). Similarly, *United States v. Suarez*, also relied upon by the government, involved a challenge to the severity of the sentence imposed, not the unilateral expansion of charges after extradition. 791 F.3d 363,

365 (2d Cir. 2015).

The government lacks support for its standing arguments here, and Mr. Gupta should be granted standing to challenge the addition of Count Three to the S2 Indictment.

### D. If Necessary, the Court Should Defer Its Ruling Until a Full Factual Record is Available

As further outlined in Section II, *infra*, the government has not complied with its discovery obligations to produce all material documents within its possession, custody, or control. The materials that the government has failed to produce include correspondence between the Czech Ministry of Justice and the U.S. that goes directly to whether the government has improperly expanded the scope of its extradition. The government relies on these communications to support its position on the rule of specialty yet refuses to produce them to defense counsel. Accordingly, if the Court is not prepared to grant dismissal of Count Three on the current factual record, the Court should compel the government to disclose any communications with the Czech Republic regarding Mr. Gupta's extradition and Count Three of the S2 Indictment and defer ruling on this portion of the Defendant's motion until the defense has the opportunity to review the newly produced materials and file a supplemental submission addressing them.[6]

## II. THE COURT SHOULD COMPEL THE GOVERNMENT TO PRODUCE ALL COMMUNICATIONS WITH CZECH AUTHORITIES REGARDING MR. GUPTA'S ARREST, INTERROGATION, AND EXTRADITION

The obligations of the government to produce discovery are governed by Rule 16, *Brady v. Maryland*, 373 U.S. 83, 86 (1963), and *Giglio v. United States*, 405 U.S. 150, 154 (1972). Under

[6] If the Court is not prepared to grant dismissal of Count Three on the current record or defer ruling until a full factual record is available, it should alternatively deny the motion without prejudice so the issue can be revisited on a complete record if and when Mr. Gupta is able to obtain more records from the Czech Republic himself. *See Amirov*, 2025 WL 660197, at *3 (denying motion to dismiss on rule of specialty grounds without prejudice "to renewal if the Czech Government objects to [the prosecution of] the added counts.")

Rule 16, the government must "permit the defendant to inspect and to copy . . . documents, if the item is within the government's possession, custody, or control and . . . the item is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). The materiality standard of Rule 16 "normally is not a heavy burden." *United States v. Stein*, 488 F. Supp. 2d 350, 356-57 (S.D.N.Y. 2007) (internal citations omitted). A defendant "must make a *prima facie* showing of materiality and must offer more than the conclusory allegation that the requested evidence is material." *United States v. Urena*, 989 F. Supp. 2d 253, 261 (S.D.N.Y. 2013) (cleaned up). Under *Brady*, the government must disclose favorable material evidence to a criminal defendant. 373 U.S. at 87. The government's obligations under *Brady* encompass material information that could potentially lead to admissible evidence favorable to the defense. *See United States v. Rodriguez*, 496 F. 3d 221, 225-26 (2d Cir. 2007).

The defense raises this motion to compel now—and not in our opening motion—because the government introduced new arguments concerning the rule of specialty in its opposition, relied on documents attached to its opposition that were new to the defense, and produced additional materials only after we filed our opening brief. Prior to the undersigned counsel's first appearance in this case on April 15, 2025, the government had most recently produced materials to the Defendant on November 12, 2024. The government then made no further productions until we served comprehensive discovery requests on June 2 and August 1, 2025. *See* Exs. 32, 33. The government responded to those requests on June 13 and August 5, 2025, with additional materials. *See* Exs. 34, 35. The defense appreciates the government's continued willingness to review its file and produce additional discoverable materials upon request. However, in response to many of the defense's requests, the government claimed to either have fulfilled its discovery obligations or to have no responsive materials. *See id.*

Despite these representations, the government has continued to make additional productions, including on June 10, June 13, July 18, July 30, and August 5, 2025. Likewise, in the 3500-material produced today—August 8, 2025—the government included a new document dated August 25, 2023, that memorializes statements Mr. Gupta made during his interrogation with the DEA. This document should have been produced as Rule 16 material and was covered by the defense's discovery requests. Each of these new productions has contained discoverable material that should have been produced earlier, leading the defense to question the completeness of the government's Rule 16 production as it currently stands.[7] For example, *just since the start of June*, the government has produced:

- Various contemporaneous and non-contemporaneous accounts of Mr. Gupta's arrest, including:
    - Screenshots of an iMessage chat between TFO Sandobal, SA Franks, and members of the prosecution team from June 30, 2023, the day of Mr. Gupta's arrest.
    - An email from SA Franks to other law enforcement officers describing Mr. Gupta's arrest, which was sent on July 2, 2023.
    - An August 25, 2023, email from TFO Sandobal memorializing statements of Mr. Gupta during his interrogation with the DEA.
    - Different versions of a WhatsApp chat between Czech law enforcement and U.S. law enforcement from June 2023, that include additional relevant information that was not in previously produced versions.

[7] At the request of defense counsel, the government reproduced one document from its July 30, 2025, production with redactions on August 1, 2025, in order to reclassify it as Non-Attorney Possession Only under the Protective Order. *See* Dkt. 19.

- Twenty-eight FBI reports from 2023 with background on the alleged money courier and the alleged co-conspirator.
- More than 100 pen register, subpoena and search warrant return materials from 2023 for phone numbers, email addresses, and social media accounts for different individuals.
- A July 7, 2025, letter from the Czech Republic regarding Mr. Gupta's extradition, Gov't Opp. Ex. A.

### A. Communications With Czech Authorities Regarding Mr. Gupta's Extradition Must be Produced

The government's handling of its communications with the Czech Republic underscores the need for transparency. As noted *supra*, the government privately obtained the July Letter from Czech officials well after Mr. Gupta's extradition, and only after the defense raised the rule of specialty in its Motion. The government did not produce the July Letter until after the defense filed its Motion. The defense still has no information about what prompted the government's outreach, what the government told the Czech authorities, or whether they were given a complete and accurate record. The Court should therefore order the government to produce any and all additional correspondence with the Czech Republic concerning Count Three so that the defense can supplement its motion to dismiss if appropriate, and so that the Court can properly evaluate that motion.[8]

---

[8] Mr. Gupta has standing to bring this motion to compel because he has standing to challenge the addition of Count Three to the S2 Indictment. This Court's ruling in *United States v. Abdalla*, 317 F. Supp. 3d 786, 790 (S.D.N.Y. 2018) is inapposite, because in that case, there was no indication that the foreign government had objected to extradition, and therefore no basis for the defendants to argue they had standing to bring their own challenge.

### B. Communications With Czech Law Enforcement Regarding Mr. Gupta's Arrest and Interrogation Must be Produced

The government has also disputed the existence of a joint venture between U.S. and Czech law enforcement. But recent productions confirm otherwise. Despite the government's assertion that it is in compliance with its discovery obligations with respect to additional communications between Czech and U.S. law enforcement related to Mr. Gupta's arrest, the government's own late disclosures strongly support the defense's joint venture theory. These materials go to the core of Mr. Gupta's *Miranda* and Fifth Amendment arguments. They demonstrate coordination between U.S. and Czech officers sufficient to require constitutional safeguards. At a minimum, they satisfy the defense's *prima facie* showing of materiality under Rule 16 and further underscore why the Court should compel the government to produce all outstanding communications between U.S. and Czech law enforcement related to Mr. Gupta's arrest and interrogation, including communications from DEA personnel beyond just SA Franks and Task Force Officer Sandobal who were involved in coordinating Mr. Gupta's arrest and interrogation. *See Urena*, 989 F. Supp. 2d at 261.

## CONCLUSION

For the foregoing reasons, after the upcoming hearing, the contents of Mr. Gupta's iPhones and his statements to Czech and U.S. law enforcement personnel should be suppressed. Separately, the Court should dismiss Count Three of the S2 Indictment or defer ruling until a full factual record is available. Alternatively, the Court should deny the motion without prejudice so the issue can be revisited on a complete record if and when Mr. Gupta is able to obtain more records from the Czech Republic himself.

Dated: August 8, 2025

Respectfully submitted,

Nola B. Heller
Matthew Laroche
Peter Farag
Isabel C. Pitaro
MILBANK LLP
55 Hudson Yards
New York, NY 10001
(212) 530-5108

*Counsel for Defendant Nikhil Gupta*