**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

August 10, 2025

**BY ECF**

The Honorable Victor Marrero
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: *United States v. Nikhil Gupta,* S2 23 Cr. 289 (VM)**

Dear Judge Marrero:

The Government respectfully submits this letter to address the merits of defendant Nikhil Gupta's argument that he involuntarily provided his iPhone passcode to the Czech police. (Dkt. 80). As the Government has argued, Gupta waived this argument by choosing not to raise it in his opening brief. (*See* Dkt. 84). Nevertheless, the Government expects that the evidence at the suppression hearing, including a video of Gupta unlocking his phone for the Czech police, will clearly establish that Gupta provided his passcode voluntarily within the meaning of the Due Process Clause.

## I. Applicable Law

When a defendant challenges as involuntary his statement to the police, the Government bears the burden of proving the voluntariness of the statement by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489 (1972). For purposes of Gupta's motion, the Government assumes without conceding that the Czech police gave him no *Miranda* (or equivalent) warnings. The voluntariness test for Gupta's (assumed) unwarned statement of his passcode is the "traditional due process analysis." *Oregon v. Elstad*, 470 U.S. 298, 304 (1985);[1] *see also id.* at 307 ("Where an unwarned statement is preserved for use in situations that fall outside the sweep of the *Miranda* presumption, the primary criterion of admissibility remains the 'old' due process voluntariness test."); *United States v. Welch*, 455 F.2d 211, 213 (2d Cir. 1972) ("Whenever a court is asked to rule upon the admissibility of a statement made to a foreign police officer, the court must consider the totality of the circumstances to determine whether the statement was voluntary.").

The "due process voluntariness test" is "whether a defendant's will was overborne by the circumstances surrounding the giving of a confession." *Dickerson v. United States*, 530 U.S. 428,

[1] Unless otherwise specified, all case quotations omit internal quotation marks, citations, and prior alterations.

434 (2000). "The due process test takes into consideration the totality of all the surrounding circumstances," *id.*, including "(1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials," *United States v. Haak*, 884 F.3d 400, 409 (2d Cir. 2018). "[C]oercive police activity," however, "is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). "There is a vast difference between the direct consequences flowing from coercion of a confession by physical violence or other deliberate means calculated to break the suspect's will and the uncertain consequences of disclosure of a 'guilty secret' freely given in response to an unwarned but noncoercive question, as in this case." *Elstad*, 470 U.S. at 312. "[A]bsent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion." *Id.* at 314.

Applying the due process standard, courts have excluded statements obtained through violence or "a credible threat of physical violence." *Arizona v. Fulminante*, 499 U.S. 279, 287–88 (1991); *see also Beecher v. Alabama*, 389 U.S. 35, 36–37 (1967) (loaded gun held to defendant's head); *Payne v. Arkansas*, 356 U.S. 560, 566–67 (1958) (defendant, who was a disabled 19-year-old youth, denied food and threatened with an angry mob); *Brown v. Mississippi*, 297 U.S. 278, 281–82 (1936) (defendant hung to a tree and whipped). Courts have likewise excluded statements where the defendant was deprived of basic needs or subjected to lengthy interrogation under coercive conditions. *See, e.g.*, *Brooks v. Florida*, 389 U.S. 413, 414–15 (1967) (defendant held for 14 days in a cage, subsisted on "a daily fare of 12 ounces of thin soup and eight ounces of water," and "saw not one friendly face from outside the prison"); *Reck v. Pate*, 367 U.S. 433, 441–42 (1961) (defendant "physically weakened and intense pain," "held incommunicado," and questioned for four straight days, with each day consisting of "six- or seven-hour stretches of relentless and incessant interrogation"); *Malinski v. New York*, 324 U.S. 401, 403, 406–07 (1945) (defendant kept naked for three hours, then partially naked for another seven hours). Courts have also excluded statements where the police exploited the defendant's medical or mental vulnerabilities to extract a confession. *See, e.g.*, *Mincey v. Arizona*, 437 U.S. 385, 398–401 (1978) (wounded and hospitalized defendant, who was confused, in pain, and falling in and out of consciousness); *Culombe v. Connecticut*, 367 U.S. 568, 620–35 (1961) (illiterate defendant with IQ of 64, who was held for five days and four nights); *Blackburn v. Alabama*, 361 U.S. 199, 207–08 (1960) ("insane and incompetent" defendant, who was subjected to "sustained interrogation in a tiny room" for eight to nine hours).

By contrast, courts have found statements voluntary when made without police coercion — even in circumstances far more severe than those alleged here. *See, e.g.*, *Connelly*, 479 U.S. at 161–67 (statement voluntary where defendant was driven to confess by the "voice of God" but there was no coercion by the state); *Burghuis v. Thompkins*, 560 U.S. 370, 386–87 (2010) (statement voluntary where defendant was interrogated for three hours but did not claim the police "threatened or injured him . . . or that he was in any way fearful"); *United States v. Kaba*, 999 F.2d 47, 49–51 (2d Cir. 1993) (no clear error where district court found illiterate defendant gave a voluntary statement after being strip-searched, handcuffed to a chair, and read his *Miranda* rights but claimed he did not understand them, because his "understanding of English was not so deficient that he did not understand what he was saying or being asked during [agent] questioning"); *Campaneria v. Reid*, 891 F.2d 1014, 1020 (2d Cir. 1989) (statement voluntary where wounded

defendant, who was foreign-born and claimed "a poor command of the English language," was repeatedly questioned at the hospital because the conduct of the questioners "was not coercive or overbearing" and his "pain and discomfort . . . was not so severe as to render him unable to make a voluntary statement or unduly susceptible to manipulation by his interrogators").

## II. Gupta Voluntarily Provided His Passcode to the Czech Police

At the suppression hearing, the Government expects to offer evidence, including a video of Gupta unlocking his phone by entering his passcode for the Czech police, showing that: (1) Gupta entered his passcode in a well-lit room in the Prague airport, without handcuffs, in the presence of Czech officers who were wearing civilian clothes (*e.g.*, shorts and sneakers); (2) a Czech officer spoke calmly in English with Gupta during the unlocking of his passcode; (3) shortly after arresting Gupta, Czech officers told the DEA agents that Gupta had consented to the search of one or more cellphones; (4) Gupta waived his *Miranda* rights and voluntarily gave information to the DEA agents about the case, including from one of his cellphones; (5) Gupta did not tell the DEA agents that he had been forced to provide his passcode to the Czech police; (6) Gupta is a 53-year-old adult who reads English publications including *The Economist*, *Thinking Fast and Slow*, and *The Alchemist*; and (7) since 1997, Gupta regularly traveled internationally, including to Istanbul and Prague. This evidence will establish that Gupta is an educated and sophisticated English-speaking adult, that the Czech police asked Gupta for his passcode in a respectful and professional setting, that Gupta agreed to provide his passcode, and that the Czech police engaged in no coercion whatsoever, let alone "physical violence or other deliberate means calculated to break the suspect's will." *Elstad*, 470 U.S. at 312.

In his affidavit, Gupta claims that he was taken by "six or seven Czech officers" in civilian clothes to a room in the Prague airport, searched without clothing (after he asked a female Czech officer to leave the room, which she did) and then put his clothes back on, "ordered" to unlock his phones and "asked" for the passcodes to his phone, all in a process that took approximately 30 minutes. (Dkt. 67 ¶¶ 2, 4, 6, 9, 13). Gupta further alleges that although the Czech officers spoke with him English, he is not "always comfortable speaking or understanding English," and he "did not feel like [he] had any choice" when the Czech officers asked to "look at the phones." (*Id.* ¶¶ 7, 8, 24). Even assuming that Gupta's allegations are true — and without live testimony and cross-examination, the Court should afford Gupta's affidavit limited weight, *see United States v. Cherry*, 541 F. Supp. 3d 407, 422 (S.D.N.Y. 2021) — Gupta has not even alleged (much less proven) the kind of "coercive police activity" that is a "necessary predicate" for a finding that his statement was "not 'voluntary' within the meaning of the Due Process Clause." *Connelly*, 479 U.S. at 167; *see also Berghuis*, 560 U.S. at 387 ("The Fifth Amendment privilege is not concerned with moral and psychological pressures to confess emanating from sources other than official coercion."); *United States v. Yousef*, 327 F.3d 56, 126 (2d Cir. 2003) (rejecting voluntariness challenge where district court found "absolutely no allegation that the FBI agents who questioned Murad in any way threatened, coerced, or tricked him into giving a statement" and "[t]he circumstances of the questioning were not unduly coercive); *United States v. Abu Ali*, 528 F.3d 210, 234 (4th Cir. 2008) (statement voluntary where defendant questioned by Saudi authorities over multiple days "was not tortured, abused, threatened, held in cruel conditions, or subjected to coercive interrogations"); *cf. id.* at 228–29 (no joint venture where FBI supplied Saudi authorities a list of questions and

observed interrogation through a one-way mirror, and Saudi authorities asked six of the questions submitted by the FBI).

For these reasons, if Gupta's voluntariness challenge to the provision of his passcode is not deemed waived, the Court should find by a preponderance of the evidence that Gupta voluntarily provided his passcode to the Czech police.[2]

**III. The Government Has Met Its Discovery Obligations**

In his reply in support of his pretrial motions, Gupta makes various discovery complaints to justify a new motion to compel the Government (including those outside the prosecution team) to produce all communications with the Czech Republic relating to Gupta's arrest, "interrogation," and extradition. (Dkt. 90 at 9–13). It is self-evident that discovery disputes on other subjects have no bearing on whether the defense is entitled to a broad fishing expedition on inter-governmental communications, a request for which Gupta cites no relevant precedent other than *United States v. Abdalla*, 317 F. Supp. 3d 786, 790 (S.D.N.Y. 2018), in which this Court rejected a similar discovery request because the defendant lacked standing to challenge an alleged breach of the extradition treaty and because there was no violation of the treaty in any event. The same is true here. (*See* Dkt. 75 at 28–34); *see also Abdalla*, 317 F. Supp. 3d at 794 (citing *United States v. Scully*, 108 F. Supp. 3d 59, 123 (E.D.N.Y. 2015) for the principle that "Rule 16 does not entitle a criminal defendant to a broad and blind fishing expedition among items possessed by the Government on the chance that something impeaching might turn up").[3]

Moreover, the defense account of the Government's discovery productions is incorrect and misleading. As just one example, the August 25, 2023 email from Officer Sandobal that the Government recently produced as Section 3500 material but Gupta claims "should have been produced as Rule 16 material," (Dkt. 90 at 11), is an internal DEA email, written nearly two months after Gupta's arrest, that briefly summarizes statements made by Gupta that were already detailed in a DEA report, written shortly after Gupta's arrest, that the Government produced to the defense on September 18, 2024. Federal Rule of Criminal Procedure 16(a) applies to the "substance" of a defendant's relevant oral statement, and Officer Sandobal's August 25, 2023 email contains no

[2] No U.S. law enforcement agents were present when Gupta provided his passcode to the Czech police. Because Gupta first raised the voluntariness issue on August 5, 2025, (Dkt. 80) — just one week before the August 12, 2025 suppression hearing — the Government does not intend to call a percipient Czech witness at the August 12 hearing. If the Court is unable to determine after the hearing that Gupta voluntarily provided his passcode, the Government respectfully requests reasonable time to attempt to supplement the record by seeking evidence from the Czech police through foreign legal assistance channels. Given the overwhelming proof of voluntariness, the Government does not believe this will be necessary.

[3] If a response to the defense motion to compel would assist the Court, the Government would be pleased to provide one.

new substance whatsoever.[4] As another example, the "search warrant return" that the defense claims was produced late, (Dkt. 90 at 12), is a custodial certificate — *not* content — certifying the accuracy of Google search warrant returns that the Government produced to the defense on September 18, 2024 (*i.e.*, nearly a year ago). Consistent with the Court's Individual Practices, the Government has consistently worked in good faith to resolve all discovery requests from the defense, and much of the recent productions consists of materials reflecting the Government's investigation of allegations made in the defense motions.

The Government is prepared to address at the hearing any questions the Court may have.

Respectfully submitted,

JAY CLAYTON
United States Attorney

by: ______________________________
Camille L. Fletcher / Alexander Li /
Ashley C. Nicolas
Assistant United States Attorneys
(212) 637-2383 /-2265 /-2467

cc: All counsel of record (*by ECF*)

---

[4] Relevant portion of August 25, 2023 email produced as Section 3500 material for Officer Sandobal on August 8, 2025: "During a debrief of 'Nick' [*i.e.*, defendant Nikhil Gupta], he provided a name and number of a contact named AMANAT. AMANAT had approached 'Nick' after 'Nick' had received a court date in India for a crime he claims he did not commit. AMANAT wanted a murder carried out in the United States and 'Nick' asked a DEA CS to carry the murder out. 'Nick' had very limited and vague information about AMANAT."

Relevant portion of July 12, 2023 DEA report produced as Rule 16 material on September 18, 2024: "In sum and substance, GUPTA stated back in 2021, he was traveling to Uzbekistan. When he returned to India, he was informed he had a court appearance for robbery. GUPTA did not understand why as he was not in the country, but he said this was not unusual as India's police force is corrupt. GUPTA began asking friends to see if they knew anyone who could assist him in clearing his name. GUPTA said he received a phone call from an individual named AMANAT who said he could clear GUPTA's name. GUPTA and AMANAT met in New Delhi, India shortly after. GUPTA could not describe AMANAT other than he was tall, possibly in his 40's, and possibly from India and Pakistan. GUPTA said AMANAT wore a mask, hat, glasses and long sleeve t-shirts. AMANAT asked GUPTA to have someone in New York City killed. GUPTA stated he knew someone and continued to facilitate the murder in New York City. GUPTA stated he did not know anything else about AMANAT and he would most likely go into hiding once he found out GUPTA had been arrested. GUPTA provided a phone number of AMANAT."