Milbank
MATTHEW LAROCHE
*Partner*
55 Hudson Yards | New York, NY 10001-2163
T: +1 (212) 530-5514
mlaroche@milbank.com | milbank.com

August 11, 2025

**VIA ECF**

The Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: United States v. Nikhil Gupta, 23 Cr. 289 (VM)

Dear Judge Marrero:

We write on behalf of Defendant Nikhil Gupta in the above-referenced matter to respectfully request that the Court order the government to immediately produce discovery materials consisting of all communications or documents exchanged between the Drug Enforcement Administration ("DEA") and the Czech Republic related to Mr. Gupta's arrest. In particular, the government should be ordered to produce any and all documents generated by or referencing the involvement of DEA Country Attaché ("CA") Kyle Brannon and Special Agent ("SA") Joseph Catalano (the "Requested Materials"). CA Brannon and SA Catalano were part of the group of U.S. and Czech law enforcement agents that acted collectively to plan and effect the arrest of our client in the Czech Republic, making the Requested Materials central to both Mr. Gupta's defense and the scheduled suppression hearing.

Although we have generally worked productively with the government on discovery-related issues in this matter, that has not been the case with respect to the Requested Materials. Despite repeated requests, the government has declined to produce the Requested Materials. Today, after an additional request prompted by a Jencks Act disclosure that made even clearer the critical roles of CA Brannon and SA Catalano, the government justified its position by claiming—for the first time—that CA Brannon and SA Catalano were not part of the prosecution team, relieving it of any obligation to produce the Requested Materials.

As set forth below, the Jencks Act and other evidentiary materials flatly contradict the government's position and make clear that CA Brannon and SA Catalano were the primary logistical points of contact with Czech law enforcement regarding Mr. Gupta's arrest. SA Catalano also participated in receiving and transporting evidence in this case. Mr. Gupta will be severely prejudiced if he is deprived of access to the Requested Materials at tomorrow's hearing.

**Background and Prior Requests**

As noted in our recent Reply in support of Mr. Gupta's Motions, the defense served the government with two comprehensive discovery requests on June 2, 2025 and August 1, 2025. *See* Dkt. 90. The government responded to those requests on June 13, 2025 and August 5, 2025, producing additional materials but claiming across multiple requests to have either fulfilled its discovery obligations or to have no responsive materials. As relevant here, Request 6 sought, *inter alia*:

> All communications between officials working on behalf of the United States government, law enforcement, or any other entity acting at the direction of or that collaborated with law enforcement in this investigation, and any government officials or law enforcement personnel in India, Czech Republic, or any other country regarding the circumstances of, and any documents collected in connection with, Mr. Gupta's investigation, arrest, detainment, and eventual extradition, regardless of the government's intentions with respect to their use at trial.

Dkt. 91-6. In response, the government produced limited materials and stated it was "not aware of any basis for discovery of additional communications responsive to your request." Dkt. 91-8. We reiterated this request in our August 1, 2025 letter, seeking "all documents and communications related to Czech law enforcement's participation in Mr. Gupta's arrest, including but not limited to any communications that have not yet been produced between any U.S. law enforcement personnel and Czech law enforcement relating to Mr. Gupta." Dkt. 91-7. The government again maintained that it was "in compliance with its discovery obligations [and] will supplement its productions if it obtains additional discoverable information." Dkt. 91-9.

**There Is Overwhelming Evidence of CA Brannon's and SA Catalano's Status as Members of the Gupta Prosecution Team**

The government has produced various materials indicating that CA Brannon and SA Catalano were important members of the U.S.-Czech team of law enforcement agents that worked together to arrest Mr. Gupta. The defense is thus entitled to the Requested Materials so that it may fully prepare for the hearing that will focus on critical events related to the arrest.

*First*, the June 19, 2023, provisional arrest request sent by the U.S. to the Czech authorities states that SA Brannon "has knowledge of the U.S. investigation in this matter." Dkt. 68-1.

*Second*, a DEA-6 report produced on September 18, 2024, records that SA Catalano was involved in ensuring that Mr. Gupta's seized phones—key evidence in the government's case against Mr. Gupta—were successfully transported to New York for the prosecution team's later use. Other reports in this case also reflect that SA Catalano was involved in receiving evidence provided by the Czech Republic in this case.

*Third*, a WhatsApp group chat produced on November 11, 2024 (the "WhatsApp Chat") reveals that CA Brannon and SA Catalano were exchanging real-time updates with Czech officers before and during the arrest.[1] In its August 5, 2025, response to our second discovery request letter inquiring about the source of a specific message in the WhatsApp Chat that did not appear on TFO Sandobal's phone, the government stated, "[w]e understand from ***another member of the group chat*** that the underlying message was sent on June 28, 2023 at 2:53 p.m. UTC, which was before Special Agent Mark Franks and TFO Sandobal were added to the group chat at 2:59 p.m. and 3:04 p.m. UTC, respectively." Dkt. 91-9 (emphasis added). The government thus conferred with either CA Brannon or SA Catalano to answer this question, further solidifying their status as members of the prosecution team. Moreover, because CA Brannon and SA Catalano were on the WhatsApp Chat prior to SA Franks and TFO Sandobal being added, they each have material that is new and supplemental to the materials that have already been produced. The defense has a right to this material.

*Fourth*, just yesterday, on August 10, 2025, the government produced discovery materials making clear that CA Brannon (the then-DEA Country Attaché in the Czech Republic) and SA Catalano (the then-DEA Assistant Country Attaché) played key roles communicating with Czech officers concerning Mr. Gupta's arrest and interrogation. [redacted]

CA Brannon and SA Catalano were clearly integral members of the team that planned the arrest of Mr. Gupta. The defense is thus entitled to review the Requested Materials to assess whether they are relevant to the pending motion, specifically to the question of whether a joint venture existed between U.S. and Czech law enforcement officers.

## <u>The Government's Refusal to Search Key Agents' Files</u>

After receiving the latest batch of Jencks Act material making clear the central roles of CA Brannon and SA Catalano, the defense reiterated its request that the government produce all documents reflecting or memorializing communications between the DEA and Czech officers in connection with Mr. Gupta's arrest and interrogation. This afternoon, the government once again declined, maintaining the position articulated in its June 13, 2025 and August 5, 2025 letters (Dkt.

---

1 [redacted]

2 [redacted]

91-8, 91-9), and justifying that position by claiming that CA Brannon and SA Catalano had no investigative responsibilities and were not members of the prosecution team. This position is at odds with the fact that the government apparently conferred with one of these agents when responding to the defense's discovery request, as outlined above.

The government is incorrect. Prosecutors are presumed "to have knowledge of all information gathered in connection with [their] office's investigation of the case and indeed [have] a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (cleaned up). This imputation of knowledge can also reach agents who were not involved in investigating the charged offenses. *See, e.g.*, *United States v. Bin Laden*, 397 F. Supp. 2d 465, 484 (S.D.N.Y. 2005) (holding that U.S. Marshals were members of the prosecution team even though they had not participated in the underlying investigation), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93 (2d Cir. 2008). Additionally, the prosecution team may "include individuals who are not strategic decision-makers" when those individuals "submit to the direction of the prosecutor and aid in the Government's investigation." *United States v. Meregildo*, 920 F. Supp. 2d 434, 441 (S.D.N.Y. 2013).

CA Brannon and SA Catalano were, and are, undoubtedly part of the prosecution team. They—together with SA Franks and TFO Sandobal, their fellow DEA agents—coordinated the arrest operation with the Czech officers over a several-day period. In fact, SA Catalano arguably played an even bigger role than SA Franks or TFO Sandobal in effectuating Mr. Gupta's arrest, [redacted] CA Brannon and SA Catalano had multiple meetings with the Czechs during which they discussed how to proceed with Mr. Gupta's arrest operation and were active members in the WhatsApp Chat created to coordinate Mr. Gupta's arrest. SA Catalano may have met alone with the Czechs on the day of Mr. Gupta's arrest to discuss issues related to the arrest. And SA Catalano was responsible for sending key evidence in the case to agents in New York.

In refusing to produce these discoverable materials, the government cites to *United States v. Alexandre* for the proposition that its obligations are limited to materials within the possession of the prosecution team. 2023 WL 416405, at *12 (S.D.N.Y. Jan. 26, 2023). In *Alexandre*, the court found that the CFTC was not part of the prosecution team because: (1) both the government and the CFTC initiated their investigation separately and without each other's knowledge; (2) the two agencies only became aware of the other's investigations weeks after they were initiated; and (3) any coordination between the two was focused on avoiding steps that might frustrate the work of the other agency. *Id.* at *6. The facts in that case are inapposite to those here, where CA Brannon and SA Catalano played active and contemporaneous roles in Mr. Gupta's arrest and the collection of his devices, making them integral parts of the prosecution team. *See United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013) (finding that a detective's partner who assisted in an investigation is "part of the prosecution team"); *see also Bin Laden*, 397 F. Supp. 2d at 481 (ruling that investigating case agents are part of the prosecution team).

* * *

For the forgoing reasons, the defense respectfully submits that the Court should compel the government to produce the Requested Materials immediately and in sufficient time for the defense to make use of them at tomorrow's hearing.

Respectfully submitted,

Matthew Laroche
Nola B. Heller