**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

August 19, 2025

**BY ECF**

The Honorable Victor Marrero
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: *United States v. Nikhil Gupta*, S2 23 Cr. 289 (VM)**

Dear Judge Marrero:

The Government respectfully submits this letter in opposition to defendant Nikhil Gupta's motion to compel discovery of certain materials. ("Mot.," Dkt. 95). In his motion, Gupta asks the Court to order the Government to "produce discovery materials consisting of all communications or documents exchanged between the Drug Enforcement Administration ('DEA') and the Czech Republic related to Mr. Gupta's arrest." (Mot. at 1). Gupta does not endeavor to identify a legal or factual basis for discovery of *all* inter-governmental communications related to his arrest. Instead, Gupta focuses his argument on "all documents generated by or referencing the involvement of DEA Country Attaché ('CA') Kyle Brannon and Special Agent ('SA') Joseph Catalano." (Mot. at 1). The prosecution team has already produced the discoverable information in its possession, including materials relating to the roles of Special Agents Brannon and Catalano (the "Country Attachés") in coordinating Gupta's arrest in the Czech Republic. To the extent that Gupta now demands the Government obtain from the Country Attachés "*all* documents generated by or referencing the involvement of" the Country Attachés, (Mot. at 1 (emphasis added)), Gupta's motion should be denied because the Country Attachés are not members of the prosecution team. Alternatively, as discussed below, the Court may deny Gupta's motion as moot if it finds that he voluntarily provided his passcode to the Czech police.

## I. Applicable Law

"As the Supreme Court repeatedly has emphasized, 'there is no general constitutional right to discovery in a criminal case.'" *United States v. Al Fawwaz*, 116 F. Supp. 3d 194, 217 (S.D.N.Y. 2015) (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)).[1] Instead, "the boundaries of the government's discovery obligations in criminal prosecutions are fixed by the Federal Rules of Criminal Procedure — chiefly or exclusively Rule 16 — and by the familiar *Brady-Giglio*

[1] Unless otherwise specified, all case quotations omit internal quotation marks, citations, and prior alterations.

doctrine." *Id.*; *cf. Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("We have never held that the Constitution demands an open file policy."); *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) ("Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance.").

Federal Rule of Criminal Procedure 16(a)(1)(E) provides, in relevant part, that the Government must, upon the defendant's request, permit the defendant to inspect and copy documents and data "if the item is within the government's possession, custody, or control" and is either "material to preparing the defense" or an item that the Government "intends to use . . . in its case-in-chief at trial." In addition, pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Government has an affirmative duty to provide to the defense evidence that is favorable to the accused, known to the Government, and material to guilt or punishment. *See Strickler v. Greene*, 527 U.S. 263, 280–81 (1999).[2]

Courts in the Second Circuit use the concept of the "prosecution team" to determine whose materials are in the possession of the Government for purposes of its disclosure obligations. *See, e.g.*, *United States v. Avenatti*, No. 19 Cr. 374 (JMF), 2022 WL 457315, at *9 (S.D.N.Y. Feb. 15, 2022) ("[I]n the Second Circuit, a prosecutor's constructive knowledge only extends to those individuals who . . . are an arm of the prosecutor or part of the prosecution team."). This limitation is necessary because "the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998); *see also United States v. Hunter*, 32 F.4th 22, 36 (2d Cir. 2022) ("We have long rejected the notion that knowledge of any part of the government is equivalent to knowledge on the part of the prosecutor.").

"[T]he relevant inquiry" for determining whether a person is a member of the prosecution team "is what the person *did*, not who the person *is*." *United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006). "Individuals who perform investigative duties or make strategic decisions about the prosecution of the case are considered members of the prosecution team, as are police officers and federal agents who submit to the direction of the prosecutor and participate in the investigation." *United States v. Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015). "At bottom," the determination of who is on the prosecution team "involves a question of agency law: should a prosecutor be held responsible for someone else's actions?" *United States v. Meregildo*, 920 F. Supp. 2d 434, 443–44 (S.D.N.Y. 2013), *aff'd sub nom. United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015). "[E]ven when agents are involved in the investigation, they are not always so integral to the prosecution team that imputation is proper. Interacting with the prosecution team, without more, does not make someone a team member. Instead, under the totality of the circumstances, the more involved individuals are with the prosecutor, the more likely they are team members. Among many others, these circumstances include whether the individual actively investigates the

[2] Of course, when the Government calls a witness to testify, it must disclose material impeachment evidence pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), and the prior statements of the witness on the subject matter of the witness's testimony pursuant to 18 U.S.C. § 3500 and Federal Rule of Criminal Procedure 26.2.

case, acts under the direction of the prosecutor, or aids the prosecution in crafting trial strategy." *Id.* at 441–42.

Courts sometimes consider a non-exhaustive list of five factors when considering the scope of the prosecution team — namely, whether the disputed individual or entity: "(1) participated in the prosecution's witness interviews, (2) was involved in presenting the case to the grand jury, (3) reviewed documents gathered by or shared documents with the prosecution, (4) played a role in the development of prosecutorial strategy, or (5) accompanied the prosecution to court proceedings." *United States v. Ingarfield*, No. 20 Cr. 146 (RA), 2023 WL 3123002, at *3 (S.D.N.Y. Apr. 27, 2023); *see also United States v. Middendorf*, No. 18 Cr. 36 (JPO), 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018) (same).

## II. The Country Attachés Are Not Members of the Prosecution Team

As Gupta notes, Special Agents Brannon and Catalano are the DEA country attaché and assistant country attaché for the Czech Republic (among other countries in the region). (Mot. at 3). They are based in Europe, not in the United States, and had no investigative duties in this case. Instead, as Task Force Officer Jose Sandobal explained at the suppression hearing, the Country Attachés served as the DEA case agents' logistical points of contact to Czech authorities in coordinating the United States's requests for international assistance in this case. (Tr. 14–15, 82–83).[3] Thus, for example, the Country Attachés arranged meetings between the DEA case agents (that is, Officer Sandobal and Special Agents Mark Franks) and the Czech police to discuss Gupta's arrest in the Czech Republic, (Tr. 82–83); sent Gupta's physical phones from the Czech Republic to the United States, (Tr. 138); and coordinated with Czech authorities on the logistics of Gupta's extradition, (Tr. 16).

The Country Attachés had no investigative responsibilities in this case. (Tr. 131). They did not conduct surveillance, interview witnesses, swear out search warrants, review electronic evidence, or participate in charging decisions. (Tr. 131–32). Nor did they present the case to the grand jury, develop prosecutorial strategy, or accompany the prosecution team to court. *See Ingarfield*, 2023 WL 3123002, at *3. Instead, the Country Attachés performed the same functions in this case that they perform for DEA agents everywhere with respect to the Country Attachés' geographic area of responsibility — they facilitated the DEA case agents' contact with the Czech police. And what the Country Attachés *did* do highlights what they *did not*. In their roles as liaisons between U.S. law enforcement and Czech law enforcement, the Country Attachés coordinated meetings between the case agents and the Czech police. But it was the case agents — not the Country Attachés — who sat outside the Prague airport during Gupta's arrest and interviewed Gupta in the van. In their roles as liaisons between U.S. law enforcement and Czech law enforcement, the Country Attachés took custody of Gupta's cellphones from the Czech authorities (on the United States's mutual legal assistance request) and sent the cellphones to the United States. But it was the case agents — not the Country Attachés — who swore out the search warrant and reviewed the evidence on the phones. Put simply, the Country Attachés performed routine functions as in-country liaisons between the DEA case agents and the Czech police.

[3] "Tr." refers to the transcript of the August 12, 2025 suppression hearing, and "GX" refers to a Government exhibit introduced into evidence at that hearing.

By every standard in the case law, the Country Attachés are not members of the prosecution team. They performed no "investigative duties" and made no "strategic decisions about the prosecution of the case." *Barcelo*, 628 F. App'x at 38. They did not "submit to the direction of the prosecutor [or] participate in the investigation." *Id.* They did not participate in witness interviews, present the case to the grand jury, review evidence, help develop prosecutorial strategy, or accompany the prosecution to court. *Ingarfield*, 2023 WL 3123002, at *3. Under the totality of the circumstances, the Country Attachés were not substantively "involved in the investigation," let alone "so integral to the prosecution team that imputation is proper." *Meregildo*, 920 F. Supp. 2d at 441. They therefore are not members of the prosecution team.

In an opinion and report and recommendation currently pending before this Court, Magistrate Judge Netburn held that the Federal Bureau of Investigation ("FBI") legal attaché and assistant legal attaché in Malaysia — who serve similar functions as the DEA country attaché and assistant country attaché for the Czech Republic in this case — were not members of a prosecution team. *United States v. Hiya*, 24 Cr. 282 (VM) (SN), 2025 WL 1178115, at *4 (S.D.N.Y. Apr. 21, 2025). Judge Netburn explained that the FBI legal attaché and assistant legal attaché were not members of the prosecution team because they "did not perform investigative duties or make strategic decisions," but instead "transmitted routine information requests before Hiya's arrest" and "operated as liaisons between the prosecution team and the Malaysian authorities" after his arrest. *Id.* Though the FBI legal attaché and assistant legal attaché "coordinated with Malaysian officials on behalf of the prosecution team," there was no indication that they "investigated the passport fraud case, crafted prosecutorial strategy, or participated in witness interviews," or "were involved in making strategic decisions on the prosecution of [the] case." *Id.* "Because [the FBI legal attaché and assistant legal attaché] are not members of the prosecution team, it follows that their alleged communications with the Malaysian government are not within the Government's possession, custody, or control." *Id.* The same is true for the Country Attachés here.

## III. Gupta's Arguments Are Meritless

Gupta argues that the Country Attachés are "integral members of the team" for four reasons. (Mot. at 3). None of these reasons, individually or together, makes the Country Attachés part of the prosecution team.

*First*, Gupta notes that "the June 19, 2023, provisional arrest request sent by the U.S. to the Czech authorities states that SA Brannon 'has knowledge of the U.S. investigation in this matter.'" (Mot. at 2). Having knowledge of an investigation does not mean that one is part of the prosecution team, and the very next sentence of the provisional arrest request provides Special Agent Brannon's contact information by email and telephone. (Dkt. 68-1). In the context of the provisional arrest request, the clear import of "has knowledge" is not to suggest that Special Agent Brannon is a case agent, but rather to provide Czech authorities with a local point of contact for the request. This is entirely consistent with Special Agent Brannon's role as the DEA country attaché — that is, a liaison to "coordinate[] the needs" of the DEA case agents "in order to affect the arrest of Mr. Nikhil Gupta with the Czech Police." (Tr. 15); *see Hiya*, 2025 WL 1178115, at *4 (FBI legal attaché and assistant legal attaché who "coordinated with Malaysian officials on behalf of the prosecution team" were not themselves members of the prosecution team).

*Second*, Gupta says that "SA Catalano was involved in receiving evidence provided by the Czech Republic in this case," including by "ensuring that Mr. Gupta's seized phones . . . were successfully transported to New York for the prosecution team's later use." (Mot. at 2). But if merely receiving and shipping cellphones — without even reviewing the contents of the phones — makes someone part of the prosecution team, then first responders and evidence technicians in every case would become part of the prosecution team as a matter of course. That is certainly not the case and stretches far beyond the bounds of the law in this Circuit. *See, e.g.*, *United States v. Stewart*, 433 F.3d 273, 298–99 (2d Cir. 2006) (forensic ink examiner was not part of the prosecution team despite analyzing a document, explaining to prosecutors the forensic tests that had been performed, discussing potential defense expert testimony, assisting prosecutors in developing cross-examination questions, participating in a mock examination, and testifying as an expert at trial). Indeed, in the parallel investigation context, courts routinely hold that civil investigating agencies do not join the prosecution team simply by providing access to their files. *United States v. Alexandre*, No. 22 Cr. 326 (JPC), 2023 WL 416405, at *6 (S.D.N.Y. Jan. 26, 2023) ("these 'access grants' between governmental agencies, which are hardly uncommon, do not indicate by themselves a joint investigation" (collecting authorities)).

*Third*, Gupta argues that because the prosecution team "conferred with either CA Brannon or SA Catalano to answer" a question Gupta had asked about a group chat that included the DEA case agents, the Country Attachés, and the Czech police (the "Group Chat"),[4] the Country Attachés must be "members of the prosecution team." (Mot. at 3).[5] But "[i]nteracting with the prosecution team, without more, does not make someone a team member." *Meregildo*, 920 F. Supp. 2d at 441–42; *see also id.* at 440 (asking "whether the prosecution has the power to obtain the evidence . . . confuses the power to act with the duty to do so"); *United States v. Connolly*, No. 16 Cr. 370 (CM), 2017 WL 945934, at *4 (S.D.N.Y. Mar. 2, 2017) ("The mere fact that the Government may have requested and received documents from another agency in the course of its investigation does not convert the investigation into a joint one.").

Gupta also speculates that because the Country Attachés "were on the [Group Chat] prior to SA Franks and TFO Sandobal being added, [the Country Attachés] each have material that is new and supplemental to the materials that have already been produced." (Mot. at 3). But there is no reason to think there is anything else in the Group Chat that is material to the issue that Gupta asserts as the basis for his discovery request: whether there was a joint venture to obtain his passcode. (*See* Mot. at 3). Officer Sandobal was added to the Group Chat on June 28, 2023, one day before he and Special Agent Franks first met with the Czech police at their headquarters to discuss the arrest operation. (Tr. 14, 27). There was little activity in the Group Chat before June 30, 2023, when the Czech police provided text, photo, and video updates on the arrest operation,

[4] The Government introduced the Group Chat as evidence at the suppression hearing. (GX 111; *see also* Tr. 25–29, 32–43).

[5] In an August 1, 2025 letter, Gupta asked the Government to identify when an undated message in the Group Chat had been sent. To answer that question, the Government arranged for a phone call with Special Agent Catalano, who provided the date and time of the message. On August 5, 2025, the Government provided that information to the defense.

and no activity in the Group Chat after June 30, 2023 until July 3, 2023, when the Czech police notified the DEA that Gupta had been ordered remanded. (GX 111; *see also* Tr. 27–29, 32–43). And there is no evidence that the Group Chat contains any demand by U.S. law enforcement to the Czech police regarding Gupta's passcode. It is pure speculation to suggest that before the DEA case agents even met with the Czech police to discuss Gupta's arrest, the Country Attachés might have used the Group Chat to hatch a plan with the Czech police to demand Gupta's passcode — only to then fall silent once the case agents joined the chat.

*Fourth*, Gupta points to certain Section 3500 material indicating that the DEA case agents viewed the Country Attachés as their primary logistical points of contact with the Czech Republic. (Mot. at 3). As discussed above, "operat[ing] as liaisons between the prosecution team and the [foreign] authorities" does not make one part of the prosecution team. *Hiya*, 2025 WL 1178115, at *4.

* * *

Throughout this case, the prosecution team has continually re-examined its holdings for additional discoverable information when receiving new information, when made aware of new defense theories, or as requested by the defense. When Gupta raised his joint venture argument in his pretrial motions, the prosecution team not only re-reviewed the materials in its possession but also took additional investigative steps, including by debriefing the case agents and promptly producing the notes of what it learned to the defense. As Officer Sandobal explained at the suppression hearing, in connection with Gupta's arrest, the DEA case agents (i) participated in two meetings and attended one dinner with the Czech police, (ii) joined the Group Chat with the Czech police, and (iii) accompanied the Czech arrest team to the Prague airport, where they waited for the Czech police to arrest Gupta and then conducted a post-arrest interview of Gupta in the van. (Tr. 9–25). All this information, in the form of interview notes, reports, and communications involving the case agents, has been produced to the defense.

What Gupta is now asking is to compel the prosecution team to take possession of materials it does *not* have — namely, communications and documents from two Europe-based Country Attachés, who did not investigate the case and instead served a limited logistical role as the DEA case agents' liaisons to Czech authorities. There is no basis in law to impute the Country Attachés to the prosecution team. For many of the same reasons that the Country Attachés are not part of the prosecution team, there is also no reason to think that they have any new information that would bear on the existence of a joint venture to obtain Gupta's passcode. This was the DEA case agents' investigation, not the Country Attachés'. The case agents attended the arrest operation planning meetings with the Czech police, received the arrest updates in the Group Chat from the Czech police, accompanied the Czech police to and from the Prague airport, and interviewed Gupta. The case agents received Gupta's phones, applied for a search warrant, and reviewed the content of the phones. One of the DEA case agents, Officer Sandobal, testified at the suppression hearing that to his knowledge, no one from the DEA requested that the Czech Police ask Gupta for his passcode. (Tr. 11, 30). Gupta's demand to scour the files of the Country Attachés for some secret instruction to the Czech police, made behind the backs of the DEA case agents, is a fishing expedition. *See United States v. Delacruz*, No. 14 Cr. 815 (KBF), 2015 WL 2211943, at *1 (S.D.N.Y. May 12, 2015) ("Rule 16 does not entitle a criminal defendant to a broad and blind

fishing expedition among items possessed by the Government on the chance that something impeaching might turn up.").

The Court should deny Gupta's lawless request. "Limiting disclosure obligations to the 'prosecution team' prudently prevents a prosecutor from needing to search the 'whole-of-government' for possibly material information in myriad cases and controversies before the courts. Such an obligation would clearly be an unworkable encumbrance on the system of justice." *Hunter*, 32 F.4th at 37. Taken to its conclusion, Gupta's argument would not only impute the country attaché (or equivalent) to the prosecution team in every case involving international assistance, but would also assign to the prosecution team every evidence technician, analyst, laboratory technician, and patrolman in the most routine of criminal cases.[6] (*See* Mot. at 2 (arguing assistant country attaché is part of the prosecution team because he "receiv[ed] evidence provided by the Czech Republic" and "ensur[ed] that Mr. Gupta's seized phones . . . were successfully transported to New York for the prosecution team's later use")). Such an "unlimited duty" to scour the files of people with limited roles in a criminal investigation which would "condemn the prosecution of criminal cases to a state of paralysis." *Avellino*, 136 F.3d at 255. The Court has held an evidentiary hearing on the existence of a joint venture to obtain Gupta's passcode. The fact that there was no evidence of a joint venture shows there *was* no joint venture — not that the prosecution team should be compelled to scour records from Europe in the hope that some new evidence will be found.

## IV. If the Court Determines that Gupta Voluntarily Provided His Passcode, Then His Discovery Request is Moot

Though Gupta's discovery motion plainly fails on the merits, the Court may also deny the motion as moot if it determines — as the suppression hearing made plain — that Gupta voluntarily provided his cellphone passcode to the Czech police. Gupta claims that the discovery he requests is material to "the question of whether a joint venture existed between U.S. and Czech law enforcement officers." (Mot. at 3). But even if there was a joint venture between U.S. and Czech law enforcement authorities to obtain Gupta's passcode (and there was not), such that the Czech police were required to give *Miranda* warnings to Gupta, the "physical fruits of [a] suspect's unwarned but voluntary statements" cannot be suppressed. *United States v. Patane*, 542 U.S. 630, 634 (2004); (*see* Memorandum of Law of the United States of America in Opposition to Defendant Nikhil Gupta's Pretrial Motions, Dkt. 75 at 23–26 (discussing application of *Patane* to cellphone contents obtained using passcodes obtained voluntarily but in violation of *Miranda*)).

The Government does not intend to offer Gupta's passcode at trial, but only the cellphone contents that are the fruits of the passcode. Accordingly, if the Court finds that Gupta's statement of his passcode was voluntary, then the contents of Gupta's cellphones cannot be suppressed under the rule of *Patane* and the joint venture issue is moot. Gupta's request for discovery aimed at the joint venture issue would also be moot. *See United States v. Abdalla*, 317 F. Supp. 3d 786, 791 (S.D.N.Y. 2018) (Marrero, J.) ("[I]f the purported defense for which a defendant seeks to compel

---

[6] Of course, to the extent that these individuals become testifying witnesses, the Government would have *Giglio*, Section 3500, and Rule 26.2 disclosure obligations for them. (*See supra* note 2). But that is different than assigning them to the prosecution team.

the production of certain documents is meritless as a matter of law, then the requested documents are not 'material' for purposes of Rule 16.").

**V. Conclusion**

For these reasons, Gupta's motion to compel additional discovery should be denied.

Respectfully submitted,

JAY CLAYTON
United States Attorney

by: ______________________________
Camille L. Fletcher / Alexander Li /
Ashley C. Nicolas
Assistant United States Attorneys
(212) 637-2383 /-2265 /-2467

cc: All counsel of record (*by ECF*)