UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

NIKHIL GUPTA

Defendant.

S2 23 Cr. 289 (VM)

**JOINTLY PROPOSED REQUESTS TO CHARGE**

MILBANK LLP
55 Hudson Yards
New York, New York 10001
212-530-5000

Nola B. Heller
Matthew Laroche
Peter Farag
Isabel C. Pitaro
*Counsel for Defendant Nikhil Gupta*

JAY CLAYTON
United States Attorney
Southern District of New York
26 Federal Plaza, 37th Floor
New York, New York 10278

Ashley C. Nicolas
Alexander N. Li
Camille L. Fletcher
Assistant United States Attorneys
*Of Counsel*

## TABLE OF CONTENTS


| | | |
|---|---|---|
| Request No. 1: | General Requests | 2 |
| Request No. 2: | Summary of the Indictment | 5 |
| Request No. 3: | "Knowingly" and "Intentionally" Defined | 6 |
| Request No. 4: | Count Two: Murder-for-Hire | 8 |
| Request No. 5: | Count Two: Murder-for-Hire: First Element — Use of Interstate or Foreign Commerce | 9 |
| Request No. 6: | Count Two: Murder-for-Hire: Second Element — Intent to Commit Murder | 11 |
| Request No. 7: | Count One: Murder-for-Hire: Third Element — Murder to Be Committed as Consideration for Anything of Value | 13 |
| Request No. 8: | Count Two: Murder-for-Hire — Aiding and Abetting | 14 |
| Request No. 9: | Counts One and Three: Conspiracy Generally | 17 |
| Request No. 10: | Count One: Conspiracy to Commit Murder-for-Hire | 22 |
| Request No. 11: | Count Three: Conspiracy to Commit Money Laundering | 23 |
| Request No. 12: | Conscious Avoidance [If Appropriate] | 25 |
| Request No. 13: | Venue | 28 |
| Request No. 14: | Use of Undercover Officers and Informants | 29 |
| Request No. 15: | Use of Evidence Obtained at Time of Arrest | 31 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

NIKHIL GUPTA

Defendant.

S2 23 Cr. 289 (VM)

**JOINTLY PROPOSED REQUESTS TO CHARGE**

Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the parties respectfully request that the Court include the following in its charge to the Jury. [1]

[1] Agreed-upon requests are in ordinary font. Requests proposed by the defense to which the Government objects are underlined. Requests proposed by the Government to which the defense objects are in italics.

**Request No. 1: General Requests**

The parties respectfully request that the Court give its ordinary instructions to the jury on the following matters:[2]

**A. General Instructions**

1. Role of the Court
2. Role of the Jury
3. Sympathy or Bias
4. All Persons Equal Before the Law
5. Presumption of Innocence; The Government's Burden of Proof; and the Reasonable Doubt Standard
6. What Is and Is Not Evidence
7. Role of Counsel; Objections
8. Transcripts and Translations
9. Summary Charts [if applicable]
10. Evidence Received for a Limited Purpose [if applicable]
11. Redaction of Evidentiary Items [if applicable]
12. Direct and Circumstantial Evidence
13. Persons Not on Trial
14. Stipulations
15. Witness Credibility
16. Witness Bias
17. Prior Inconsistent Statements [if applicable]
18. Law Enforcement Witnesses

[2] The parties will propose a charge regarding Rule 404(b) evidence, if any, based upon the Court's ruling on the pending motions *in limine*.

19. Defendant's Right Not to Testify [if applicable]

20. Defendant's Testimony [if applicable]

21. Uncalled Witnesses Equally Available

22. Preparation of Witnesses

23. Expert Witnesses [if applicable]

24. Cooperating or Accomplice Witnesses [if applicable]

25. Specific Investigative Techniques Not Required

26. Use of Evidence Obtained Pursuant to Searches

27. Improper Considerations: Race, Religion, National Origin, Sex, or Age

28. Punishment Not to Be Considered by Jury

**B. Instructions As to Specific Charges**

1. Significance of the Indictment
2. Multiple Counts
3. Variance in Dates

**C. Final Instructions Concerning Procedure**

1. Duties of Foreperson
2. Duty to Deliberate/Unanimous Verdict
3. Verdict Form
4. Right to See Exhibits and Request Testimony
5. Communications with the Court
6. Juror Notes
7. Indictment Not Evidence [if sent to jury]
8. Return of Verdict

*See* Hon. Victor Marrero, Jury Charge, *United States v. Torres*, 16 Cr. 809 (S.D.N.Y. 2020); Hon. Victor Marrero, Jury Charge, *United*

*States v. Kidd*, 18 Cr. 872 (S.D.N.Y. 2019); Hon. Victor Marrero, Jury Charge, *United States v. Steele*, 15 Cr. 836 (S.D.N.Y. 2016); Hon. Victor Marrero, Jury Charge, *United States v. Diakhoumpa*, 15 Cr. 629 (S.D.N.Y. 2016); Hon. Victor Marrero, Jury Charge, *United States v. Gonzalez*, 12 Cr. 828 (S.D.N.Y. 2014); Hon. Victor Marrero, Jury Charge, *United States v. Reese*, 12 Cr. 629 (S.D.N.Y. 2013).

**Request No. 2: Summary of the Indictment**

The defendant, Nikhil Gupta, has been formally charged in Counts One through Three of the Indictment.

Count One charges that from at least in or about May 2023 through at least in or about June 2023, Mr. Gupta conspired, or agreed, with others to commit murder-for-hire, specifically, that Mr. Gupta and others agreed to use and cause another person to use a facility of interstate and foreign commerce, to wit, a cellphone, with the intent that a murder be committed.

Count Two charges Mr. Gupta with murder-for-hire, namely that from at least in or about May 2023 through at least in or about June 2023, Mr. Gupta used and caused another person to use a facility of interstate and foreign commerce, to wit, a cellphone, with the intent that murder be committed, and aided and abetted the same.

Count Three charges that from at least in or about May 2023 through at least in or about June 2023, Mr. Gupta conspired, or agreed, with others to commit money laundering, by transferring and attempting to transfer funds to a place in the United States from a place outside the United States, with the intent to promote the carrying on of the murder-for-hire acts charged in Counts One and Two.

Because Count One charges Mr. Gupta with conspiring to commit murder-for-hire, and Count Two charges Mr. Gupta with the actual commission of murder-for-hire, I will instruct you on Count Two first.

Adapted from S2 Superseding Indictment, Dkt. 28, *United States v. Gupta*, S2 23 Cr. 289 (VM).

**Request No. 3: “Knowingly,” “Intentionally,” and “Willfully” Defined**

Before I instruct you on each of the counts specifically, I will define some terms and concepts that will come up repeatedly through these instructions. Specifically, we will be discussing whether certain actions are taken “knowingly,” “intentionally,” or “willfully,” so I will define these terms before we discuss the counts. You can take these explanations and definitions and apply them as I instruct you on each of the counts.

A person acts “knowingly” if he acts intentionally and voluntarily and not because of ignorance, mistake, accident, or carelessness.

An act is done “intentionally” if it is done deliberately and purposefully; that is, the defendant’s acts must have been the product of his conscious objective, rather than the product of force, mistake, accident, mere negligence, or some other innocent reason.

An act is done “willfully” if it is done knowingly and purposefully, with an intent to do something the law forbids, that is to say, with bad purpose either to disobey or to disregard the law.

Whether a person acted knowingly, intentionally, and/or willfully may be proven by his or her conduct as well as by the facts and circumstances surrounding the case.

Now, knowledge, intent, and willfulness are a matter of inference from the proven facts. Science has not yet devised a manner of looking into a person’s mind and knowing what that person is thinking. However, you do have before you the evidence of certain acts and conversations alleged to have taken place involving Mr. Gupta or done in his presence. You must consider this evidence — or lack of evidence — in determining whether the Government has proven beyond a reasonable doubt Mr. Gupta’s knowledge, intent, and/or willfulness.

> Adapted from Hon. Victor Marrero, Jury Charge, *United States v. Torres*, 16 Cr. 809 (S.D.N.Y. 2020); Hon. Victor Marrero, Jury Charge, *United States v. Reese*, 12 Cr. 629 (S.D.N.Y. 2013); Hon.

Colleen McMahon, Jury Charge, *United States v. Amirov, et ano.*, 22 Cr. 438 (S.D.N.Y. 2025).

**Request No. 4: Count Two: Murder-for-Hire**

Count Two charges Mr. Gupta with murder-for-hire. This crime has three elements, each of which the Government must prove beyond a reasonable doubt:

First, that Mr. Gupta used, or caused another person to use, a facility of interstate or foreign commerce;

Second, that Mr. Gupta used, or caused another person to use, that facility of interstate or foreign commerce with the intent of bringing about the murder of another person, in violation of the laws of any State or of the United States; and

Third, that Mr. Gupta intended that the murder be committed as a consideration for the receipt of anything of value.

> Adapted from Sand, *Modern Jury Instructions*, Instr. 60-14; Hon. Colleen McMahon, Jury Charge, *United States v. Amirov, et ano.*, 22 Cr. 438 (S.D.N.Y. 2025); Hon. P. Kevin Castel, Jury Charge, *United States v. Collins, et al.*, 19 Cr. 395 (S.D.N.Y. 2020); Hon. P. Kevin Castel, Jury Charge, *United States v. Grasesqui*, 10 Cr. 74 (S.D.N.Y. 2016); Hon. Richard J. Sullivan, Jury Charge, *United States v. Mercedes*, 10 Cr. 74 (S.D.N.Y. 2017); *see also United States v. Ritter*, 989 F.2d 318, 321 (9th Cir. 1993) (elements of murder-for-hire).

**Request No. 5: Count Two: Murder-for-Hire: First Element — Use of Interstate or Foreign Commerce**

The first element that the Government must prove beyond a reasonable doubt is that Mr. Gupta used, or caused someone else to use, a facility of interstate or foreign commerce.

The term "facility of interstate or foreign commerce" includes means of transportation and communication. This includes, for example, the use of a telephone where the telephone network is capable of placing calls or text messages between States or internationally, regardless of whether or not the actual telephone call or text message crossed State lines.

The use of a facility of interstate or foreign commerce must have occurred to facilitate or further the commission of the murder-for-hire. It need not have been the only reason, or even the principal reason, for the use of the facility of interstate or foreign commerce, as long as it was one of the reasons for that use.

To meet its burden of proof on the first element, the Government need not prove that Mr. Gupta himself used a facility of interstate or foreign commerce, or that Mr. Gupta knew that he used or caused the use of a facility of interstate or foreign commerce. The Government need only prove that Mr. Gupta in fact used or caused another person to use a facility of interstate or foreign commerce.

> Adapted from Hon. Colleen McMahon, Jury Charge, *United States v. Amirov, et ano.*, 22 Cr. 438 (S.D.N.Y. 2025); Hon. P. Kevin Castel, Jury Charge, *United States v. Collins, et al.*, 19 Cr. 395 (S.D.N.Y. 2020); Hon. P. Kevin Castel, Jury Charge, *United States v. Grasesqui*, 10 Cr. 74 (S.D.N.Y. 2016); Hon. Richard J. Sullivan, Jury Charge, *United States v. Mercedes*, 10 Cr. 74 (S.D.N.Y. 2017); Sand, *Modern Federal Jury Instructions*, Instr. 60-6, 60-15; *see also* 18 U.S.C. § 1958(B)(2) (defining "facility of interstate commerce"); *United States v. Marek*, 238 F.3d 310, 313 (5th Cir. 2001) ("We now . . . hold that § 1958's use of a 'facility of interstate commerce' is synonymous with the use of an 'interstate commerce facility' and satisfies the jurisdictional element of that federal murder-for-hire statute, irrespective of whether the particular transaction in question is itself inter state or wholly intra state.") (affirming murder-for-hire

conviction where defendant's use of Western Union wire transfer was wholly intra state); *United States v. Perez*, 414 F.3d 302, 304-05 (2d Cir. 2005) (adopting the reasoning of Marek in § 1958 prosecution involving wholly intra state telecommunications, because the network used did provide local customers with access to long-distance calling plans and was therefore "undeniably a facility involved in interstate communication"); *United States v. Ballinger*, 395 F.2d 1218, 1225-26 & n.3 (11th Cir. 1995) (affirming conviction under 18 U.S.C. § 247 of church arsonist who traveled by car on interstate highways to commit crimes and explaining that "[c]hannels of commerce are 'the interstate transportation routes through which persons and goods move.' These channels include highways, railroads, navigable waters, and airspace, as well as telecommunications networks, and national securities markets."); *United States v. Razo-Leora*, 961 F.2d 1140, 1148 (5th Cir. 1992); *United States v. Edelman*, 873 F.2d 791, 795 (5th Cir. 1989); *United States v. Sigalow*, 812 F.2d 783, 785-86 (2d Cir. 1987).

**Request No. 6: Count Two: Murder-for-Hire: Second Element — Intent to Commit Murder**

The second element that the Government must prove beyond a reasonable doubt is that Mr. Gupta used, or caused another person to use, a facility of interstate or foreign commerce with the intent of bringing about the murder of another person, in violation of the laws of any State or of the United States. Here, the alleged intended victim was [**name of victim**].

I instruct you that under the laws of New York, a person commits murder when, with intent to cause the death of another person, he causes the death of such person. A person commits murder intentionally when his conscious objective is to kill.

The Government does not have to prove that the murder was committed or even that it was attempted. Rather, it must prove that the use of the facility of interstate or foreign commerce was done with the intent to further or facilitate the commission of the murder. You are thus being asked to look into Mr. Gupta's mind and ask why he used or caused the use of a facility of interstate or foreign commerce. You may determine that intent from all the evidence that has been placed before you, including any statements made by Mr. Gupta, statements by co-conspirators, and Mr. Gupta's conduct both before and after the use of the facility of interstate or foreign commerce.

> *See* N.Y. Pen. L. 125.25(1) (second-degree murder); N.Y. Pen L. § 15.05(1) (defining "intentionally"); *United States v. Lisyansky*, 806 F.3d 706, 712-13 (2d Cir. 2015) (trial court not required to instruct on the state definition of murder); *United States v. Buselli*, 106 F.4th 1273, 1286-87 (11th Cir. 2024) (same, because Section 1958 merely "identifies the kind of conduct tied to interstate activity for which the federal statute makes it illegal to pay," and does not incorporate the underlying murder law itself); Sand, *Modern Federal Jury Instructions*, Instr. 60-16 cmt. ("The jury should not be charged on the elements of murder. Whether the murder would violate state or federal law is a question of law for the court."); Hon. Colleen McMahon, Jury Charge, *United States v. Amirov, et ano.*, 22 Cr. 438 (S.D.N.Y. 2025); Hon. P. Kevin Castel, Jury Charge, *United States v. Collins, et al.*, 19 Cr. 395 (S.D.N.Y. 2020); Hon. P. Kevin Castel, Jury Charge, *United States v. Grasesqui*, 10 Cr. 74

(S.D.N.Y. 2016); Hon. Richard J. Sullivan, Jury Charge, *United States v. Mercedes*, 10 Cr. 74 (S.D.N.Y. 2017).

**Request No. 7: Count Two: Murder-for-Hire: Third Element — Murder to Be Committed as Consideration for Anything of Value**

The third element that the Government must prove beyond a reasonable doubt is that Mr. Gupta intended that the murder be committed as consideration for the receipt of anything of value.

This requires that there was a mutual agreement, understanding, or promise that something of value would be exchanged for committing the murder.

"Anything of value" means money or anything else the primary significance of which is economic advantage.

Adapted from Hon. Colleen McMahon, Jury Charge, *United States v. Amirov, et ano.*, 22 Cr. 438 (S.D.N.Y. 2025); Hon. P. Kevin Castel, Jury Charge, *United States v. Collins, et al.*, 19 Cr. 395 (S.D.N.Y. 2020); Hon. P. Kevin Castel, Jury Charge, *United States v. Grasesqui*, 10 Cr. 74 (S.D.N.Y. 2016); Hon. Richard J. Sullivan, Jury Charge, *United States v. Mercedes*, 10 Cr. 74 (S.D.N.Y. 2017); Sand, *Modern Federal Jury Instructions*, Instr. 60-17; *see also United States v. Hardwick*, 523 F.3d 94, 99 (2d Cir. 2008) ("The consideration requirement of Section 1958 is interpreted in the traditional sense of bargained for exchange, so that there must be a quid-pro-quo (or at least the promise of such) between the parties to the transaction." (internal quotation marks omitted)); *United States v. Phillips*, 929 F.3d 1120, 1124 (9th Cir. 2019) (the phrase "anything of value" in § 1958 "broadly applies to currency, drugs, weapons, or anything else that has quantifiable monetary value," and applies to the forgiveness of a debt, even where debt is not legally enforceable).

**Request No. 8: Count Two: Murder-for-Hire — Aiding and Abetting**

I will now instruct you on the concept of aiding and abetting. As to Count Two, Mr. Gupta is charged with committing murder-for-hire and also with aiding and abetting the commission of that crime. Aiding and abetting liability is its own theory of criminal liability. In effect, it is a theory of liability that permits a person to be convicted of a specific crime if the person, while not himself committing the crime, assisted another person or persons in committing the crime. The Government must prove this theory of liability beyond a reasonable doubt.

Under the federal aiding-and-abetting statute, whoever "aids, abets, counsels, commands, induces or procures" the commission of an offense is punishable as a principal. You should give these words their ordinary meaning. A person "aids" or "abets" a crime if he knowingly does some act for the purpose of aiding or encouraging the commission of that crime, with the intention of causing the crime charged to be committed.

To "counsel" means to give advice or recommend.

To "induce" means to lead or move by persuasion or influence as to some action or state of mind.

To "procure" means to bring about by unscrupulous or indirect means.

To "cause" means to bring something about, to effect something.

A person who aids and abets another to commit an offense is just as guilty of that offense as if he had committed it himself. Therefore, if you find that the Government has proven beyond a reasonable doubt that another person actually committed the crime charged in Count Two, and that Mr. Gupta aided and abetted that person in the commission of the crime, then you may find Mr. Gupta guilty of that crime.

As you can see, the first requirement is a crime charged was committed. Obviously, no one can be convicted of aiding and abetting a crime if no crime was committed; but if you do find

that a crime was committed, then you must consider whether Mr. Gupta aided or abetted the commission of the crime.

In order to aid or abet another to commit a crime, it is necessary that Mr. Gupta willfully and knowingly associated himself in some way with the crime and that he willfully and knowingly participated in the crime by doing some act to help make the crime succeed. I have already defined "willfully" and "knowingly," and you should use those same definitions here.

However, I must caution you that the mere presence of Mr. Gupta where a crime is being committed, even when coupled with knowledge by him that a crime is being committed, or merely associating with others who were committing a crime, or merely acquiescing in the criminal conduct of another, is not sufficient to establish aiding and abetting. A defendant is not guilty as an aider or abettor just because he is a knowing spectator of a crime. One who has no knowledge that a crime is being committed or is about to be committed but inadvertently does something that aids in the commission of that crime is not an aider and abettor. An aider and abettor must have some interest in the criminal venture. The Government must prove that an aider and abettor knew a crime was being committed, took some conscious action to further the commission of the crime, and did so with the intent to bring about the success of the crime.

To determine whether Mr. Gupta aided and abetted the commission of Count Two, ask yourself these questions:

- Did he participate in the crime charged as something he wished to bring about?
- Did he associate himself with the criminal venture knowingly and willfully?
- Did he seek by his actions to make the criminal venture succeed?

If the Government has proven beyond a reasonable doubt that the answer to these questions is yes, *he did*, then *he* Mr. Gupta is an aider and abettor, and therefore guilty of the offense. If *he*

the Government has not met its burden of proof, then Mr. Gupta *did not, then he* is not an aider and abettor and is not guilty as an aider and abettor.[3]

> Adapted from Hon. Victor Marrero, Jury Charge, *United States v. Torres*, 16 Cr. 809 (S.D.N.Y. 2020); Hon. Victor Marrero, Jury Charge, *United States v. Diakhoumpa*, 15 Cr. 629 (S.D.N.Y. 2016); Sand, *Modern Federal Jury Instructions*, Instr. 11-1.

---

[3] **Government's Position**: The Government objects to the underlined text because it is unnecessary. The jury will have already been instructed that the Government must prove an aiding-and-abetting theory of liability beyond a reasonable doubt. The standard formulation routinely given in this District, which is drawn from the cited Sand instruction, does not include the underlined text, and the Court gave the standard instruction in *Torres* and *Diakhoumpa*. *See Torres*, Tr. 2099 ("If he did, then that defendant is an aider and abettor and therefore guilty of the offense; if he did not, then that defendant is not an aider and abettor and is not guilty as an aider and abettor.").

**Defense's Position**: The defense responds that the underlined text is an accurate statement of the law concerning the government's burden of proof on an aiding and abetting charge. A version of the defense's proposed language also has been included in charges given in this District. *See, e.g.*, Hon. Jed S. Rakoff, Jury Charge, *United States v. Garcia*, 21 Cr. 412 (S.D.N.Y. 2023) ("If, but only if, the government proves beyond a reasonable doubt that the answer to these questions is 'yes,' then the defendant is an aider and abettor, and therefore guilty of the [charged offense]."); Hon Alison J. Nathan, Jury Charge, *United States v. Berry*, 20 Cr. 84 (S.D.N.Y. 2021) (same).

**Request No. 9: Counts One and Three: Conspiracy Generally**

The remaining two counts of the Indictment, Count One and Count Three, charge Mr. Gupta with the crime of conspiracy. Count One charges Mr. Gupta with conspiring to commit murder-for-hire. Count Three charges Mr. Gupta with conspiring to commit money laundering. Before I instruct you on each of those counts specifically, I am going to give you some general instructions on the law of conspiracy.

A conspiracy is a kind of criminal partnership — an agreement of two or more persons to join together to accomplice some unlawful purpose. It is an entirely separate and different offense from the substantive crime which may be the objective of the conspiracy. Indeed, if the Government proves the elements of conspiracy beyond a reasonable doubt, then you may find Mr. Gupta guilty of the crime of conspiracy even if you find that the substantive crime that was the object of the conspiracy was never actually committed. Of course, if Mr. Gupta participated in a conspiracy and the crime or crimes that were the object of the conspiracy were in fact committed, he may be guilty of both conspiracy and the substantive crime. The point is simply that crime or crimes that were the objective of the conspiracy need not have been actually committed for a conspiracy to exist.

To sustain its burden of proof with respect to the charge of conspiracy, whether in Count One or in Count Three, the Government must prove beyond a reasonable doubt the following two elements:

First, that the charged conspiracy you are considering existed, that is, that two or more persons came to an understanding or agreement to commit the unlawful objects of the conspiracy; and

Second, that Mr. Gupta knowingly became a member of the conspiracy you are considering with intent to further its illegal purpose, that is, with the intent to achieve the illegal object of the conspiracy.

To show the existence of a conspiracy, the Government is not required to show that two or more persons sat around a table and entered into a solemn pact, orally or in writing, stating that they had formed a conspiracy to violate the law and out all of the details. Common sense tells us that when people, in fact, agree to enter into a criminal conspiracy, much is left to an unexpressed understanding. Is it rare that a conspiracy can be proven by direct evidence of an explicit agreement. In order to show that a conspiracy existed, the evidence must show beyond a reasonable doubt that two or more persons, in some way or manner, either explicitly or implicitly, came to an understanding to violate the law and to accomplish an unlawful plan.

In determining whether there has been an unlawful agreement, you may consider the actions of the alleged co-conspirators that were taken to carry out the apparent criminal purpose. The old adage, "actions speak louder than words," applies here. Often, the only evidence that is available with respect to existence of a conspiracy is that of disconnected acts on the part of the alleged individual co-conspirators. When taken together and considered as a whole, however, that conduct may warrant the inference that a conspiracy existed just as conclusively as more direct proof, such as evidence as an express agreement. On this question, you should refer back to my earlier instructions on direct and circumstantial evidence and inferences.

In considering whether or not the Government has proved beyond a reasonable doubt that the conspiracy you are considering existed, you should consider all the evidence that has been admitted with respect to the conduct and statements of each alleged co-conspirator and any inferences that may reasonably be drawn from that conduct and those statements. It is sufficient

to establish the existence of the conspiracy, as I have already said, if, from the proof of all the relevant facts and circumstances, you find beyond a reasonable doubt that the minds of at least two alleged co-conspirators met in an understanding way to accomplish the objectives of the conspiracy you are considering.

I want to caution you that there is one category of persons who cannot be considered in deciding whether two or more people reached an agreement or understanding. No one who is acting at the direction of the *U.S.* Government may be considered for that purpose, in other words, no one who is acting at the direction of the *U.S.* Government may be considered as one of the two persons who initially formed the conspiracy. *This is because U.S. Government agents, and those who at act the direction of U.S. Government agents, intend to enforce the law, not to violate it, and so they cannot enter into an agreement to violate the law.* In this case, **[pseudonym for CS-1]** and **[pseudonym for UC-1]** were acting at the direction of the *U.S.* Government *and did not intend to violate the law*, so you may not consider them in deciding whether the Government has proved beyond a reasonable doubt that two or more persons entered into the necessary agreement or understanding. *You may, however, consider individuals acting at the direction of a foreign government, so long as those individuals had the intent and agreed to commit the unlawful objects of the conspiracy.*[4]

---

[4] **Defense Position**: The defense objects to the italicized language because it is neither necessary nor supported by the standard formulation of this charge typically given in this district. The government's proposed language also is not supported by the charge given in *United States v. Estevez*, which the government cites for support. The defense does not believe that there will be evidence at trial establishing that Yadav worked for or at the direction of the Government of India, which would moot the government's concern.

**Government's Position**: The Government responds that the italicized language is necessary to avoid any misimpression that Yadav, whom the Government alleges was an employee of the Government of India, cannot enter into a conspiracy. This misimpression could be created by announcing a categorical rule that government agents cannot be conspirators, without distinguishing between the agents of the U.S. Government in this case (who cannot conspire) and

The object of the conspiracy is the illegal goal the co-conspirators agree or hope to achieve. I will describe the object of a particular conspiracy when instructing you on that conspiracy.

If you conclude that the Government has proved beyond a reasonable doubt that the conspiracy charged existed, and that the conspiracy had as its object one of the illegal purposes charged in the Indictment, then you must next determine whether Mr. Gupta intentionally participated in that conspiracy with knowledge of its unlawful purpose and with the intent to further its unlawful objectives.

The Government must prove beyond a reasonable doubt that Mr. Gupta knowingly and intentionally entered into the conspiracy with criminal intent, that is, with a purpose to violate the law, and that he agreed to take part in the conspiracy to promote and cooperate in its unlawful objectives. I have already defined for you the words "knowingly" and "intentionally," and those definitions apply here.

For the crime of conspiracy, a defendant's guilt does not depend on the extent or duration of his participation in the conspiracy. Indeed, each member of a conspiracy may perform separate and distinct acts and may perform them at different times. Some conspirators play major roles, while others may play minor parts in the scheme. An equal role is not what the law requires. In fact, even a single act may be sufficient to draw a defendant within the conspiracy.

---

the alleged agent of a foreign government in this case (who can conspire). Some of the italicized language, explaining the reason why government agents cannot be conspirators, is based on the charge given in *United States v. Estevez*, 20 Cr. 686 (JGK) (2022); *see generally United States v. Vazquez*, 113 F.3d 383, 387 (2d Cir. 1997) ("It is well-established that an agreement to conspire may come into being only when at least two culpable coconspirators agree. A person who enters into such an agreement while acting as an agent of the government, either directly or as a confidential informant, lacks the criminal intent necessary to render him a *bona fide* co-conspirator.").

I want to caution you that some facts do not by themselves establish a defendant's participation in a conspiracy. A defendant's mere presence at the scene of a crime does not, by itself, make him a member of the conspiracy. Similarly, association with one or more members of a conspiracy does not make a defendant a member. A person may know or be related to or be friendly with a criminal without being a criminal himself. Mere similarity of conduct or the fact that they may have assembled together or discussed common aims and interests does not establish membership in the conspiracy.

I also want to caution you that mere knowledge or acquiescence without participation in the unlawful plan is not sufficient. Moreover, if acts of Mr. Gupta, without knowledge or intent, happen to further the purposes or objectives of the conspiracy, that does not make Mr. Gupta a member of the conspiracy. More is required under the law. Again, what is necessary is that Mr. Gupta must have joined in the conspiracy with knowledge of its unlawful purposes or objectives and with the intent of aiding the accomplishment of those unlawful ends.

A conspiracy, once formed, is presumed to continue until either its objective is accomplished or there is some affirmative act of termination by its members. So, too, once a person is found to be a member of a conspiracy, he is presumed to continue his membership in the venture until the termination of the conspiracy, unless it is shown by some affirmative proof that he withdrew and disassociated himself from it.

Adapted from Hon. Victor Marrero, Jury Charge, *United States v. Torres*, 16 Cr. 809 (S.D.N.Y. 2020); Hon. Colleen McMahon, Jury Charge, *United States v. Amirov, et ano.*, 22 Cr. 438 (S.D.N.Y. 2025); Hon. Lewis A. Kaplan, Jury Charge, *United States v. Roldan Cardenas*, 21 Cr. 359 (S.D.N.Y. 2024) (instruction on Government agents and informants).

**Request No. 10: Count One: Conspiracy to Commit Murder-for-Hire**

Count One charges Mr. Gupta with conspiring to commit murder-for-hire. This crime has two elements, each of which the Government must prove beyond a reasonable doubt:

First, that the conspiracy charged in Count One existed, that is, a conspiracy to commit the crime of murder-for-hire. I described for you the elements of murder-for-hire in my instructions on Count Two, which charges Mr. Gupta with committing the actual or substantive offense of murder-for-hire.

Second, that Mr. Gupta participated in the conspiracy to commit murder-for-hire with knowledge of its unlawful purpose and in furtherance of its unlawful objective.

I have just instructed you on the law regarding conspiracy, which you must keep in mind when determining whether the government has proved Count One beyond a reasonable doubt.

> Adapted from Hon. Colleen McMahon, Jury Charge, *United States v. Amirov, et ano.*, 22 Cr. 438 (S.D.N.Y. 2025); Hon. Victor Marrero, Jury Charge, *United States v. Reese*, 12 Cr. 629 (S.D.N.Y. 2013).

**Request No. 11: Count Three: Conspiracy to Commit Money Laundering**

Count Three charges Mr. Gupta with conspiring to commit money laundering. This crime has two elements, each which the Government must prove beyond a reasonable doubt:

First, that the conspiracy charged in Count Three existed, that is, a conspiracy to commit the crime of money laundering.

Second, that Mr. Gupta participated in the conspiracy to commit money laundering with knowledge of its unlawful purpose and in furtherance of its unlawful objective.

These are the same two basic elements as the charge in Count One alleging conspiracy to commit murder-for-hire, and you must remember to keep in mind the law regarding conspiracy as I previously described it when determining whether the Government has proven Count Three beyond a reasonable doubt. The difference between Count Three and Count One is the object or purpose of the conspiracy. Because the object of the conspiracy alleged in Count Three — that is, money laundering — differs from the object alleged in Count One — that is, murder-for-hire — I must give you additional instructions concerning the object of the conspiracy alleged in Count Three.

**Object of the Conspiracy**

The Indictment charges that the object of the conspiracy in Count Three was to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to or through a place outside the United States, and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, here, acts indictable under the federal murder-for-hire laws.

In order to determine whether Mr. Gupta conspired, or agreed, to commit money laundering, you must understand what the two elements of the actual or "substantive" crime of money laundering are.

The first element is that the defendant transported, transmitted, or transferred — or attempted to transport, transmit, or transfer — a monetary instrument or funds from a place in the United States to or through a place outside the United States, or to a place in the United States from or through a place outside the United States.

The second element is that the defendant engaged in that transaction with the intent to promote the carrying on of specified unlawful activity.

The term "promote" means to facilitate, assist, or further something.

The term "specified unlawful activity" includes the murder-for-hire conspiracy charged in Count One and the murder-for-hire charged in Count Two.

A defendant can be found guilty of committing the crime of conspiracy to commit money laundering even where the object of the conspiracy — actual money laundering — was never actually committed.

> Adapted from Hon. Paul G. Gardephe, Jury Charge, *United States v. Wang, et ano.*, 23 Cr. 302 (S.D.N.Y. 2025); Hon. Colleen McMahon, Jury Charge, *United States v. Amirov, et ano.*, 22 Cr. 438 (S.D.N.Y. 2025); Sand, Modern Federal Jury Instructions, Instr. 50A-12 to 14; *see also United States v. Santos*, 553 U.S. 507, 517 (2008) (discussing the meaning of "promote").

**Request No. 12: Conscious Avoidance [If Appropriate]**

My instructions on each of Counts One through Three included an instruction on the concept of knowledge. Let me say one other thing about that concept.

In determining whether the Government has proven beyond a reasonable doubt that Mr. Gupta acted knowingly, you may consider whether he deliberately closed his eyes to what otherwise would have been obvious. A person may not willfully and intentionally remain ignorant of a fact that is material and important to his conduct in order to escape the consequences of the criminal law. We refer to this notion of intentionally blinding oneself to what is staring one in the face as "conscious avoidance."

Accordingly, if you find beyond a reasonable doubt that Mr. Gupta was aware that there was a high probability of a fact, but that he deliberately and consciously avoided confirming this fact — such as by purposely closing his eyes to it or by intentionally failing to investigate it — then you may treat the deliberate avoidance of positive knowledge as the equivalent of knowledge. If you find that Mr. Gupta actually believed that the fact was not so, however, then you cannot find that he was consciously avoiding knowledge of that fact. Similarly, if the Government merely proves that Mr. Gupta was negligent, careless, foolish, or mistaken with regard to a fact, then it has not proven conscious avoidance.

I will explain further what the concept of conscious avoidance means with respect to the conspiracy charges contained in Counts One and Three of the Indictment. With respect to the conspiracy counts, there is an important difference between knowingly and intentionally participating in a conspiracy, on the one hand, and knowing the specific objects or objectives of the conspiracy, on the other.

You may consider conscious avoidance only in deciding whether Mr. Gupta knew the objects of the conspiracy. For example, for Count One, you may consider conscious avoidance in

deciding whether Mr. Gupta reasonably believed that there was a high probability that the object of the conspiracy was to commit murder-for-hire, and that he deliberately avoided confirming that fact but participated in the conspiracy anyway. Conscious avoidance may not be used, however, to substitute for finding that Mr. Gupta knowingly and intentionally joined the conspiracy in the first place. It is logically impossible for a defendant to intend to agree to join a conspiracy if he does not know it exists. But conscious avoidance may be used to support a finding of knowledge of the conspiracy's unlawful objectives. In other words, the Government can prove either that Mr. Gupta actually knew the objects of the conspiracy or that he consciously avoided knowledge of the objects of the conspiracy.

> Adapted from Hon. Victor Marrero, Jury Charge, *United States v. Diakhoumpa*, 15 Cr. 629 (S.D.N.Y. 2016); Hon. Paul G. Gardephe, Jury Charge, *United States v. Wang, et ano.*, 23 Cr. 302 (S.D.N.Y. 2025); *see also United States v. Henareh*, 563 F. App'x 808, 811 (2d Cir. 2014) ("A conscious-avoidance charge is appropriate when (a) the element of knowledge is in dispute, and (b) the evidence would permit a rational juror to conclude beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact. . . . In other cases, we have explained that this charge is appropriate when a defendant asserts what amounts to ignorance of the specific objectives alleged. . . . In this regard, Henareh overlooks his own testimony . . . including his express denials that he knew the drugs at the heart of the conspiracy were intended for the United States. . . . Our review of the record confirms that this is the very instance when a defendant's purported lack of knowledge defense, despite [his] deep involvement in the transactions that effectuated [the crime], all but invite[s] the conscious avoidance charge. . . . We find no error, plain or otherwise, in the district court's instruction to the jury" (citations and quotations omitted)); *United States v. DiTommaso*, 817 F.2d 201, 219 (2d Cir. 1987) ("Here, both Molina-Chacon and Risatti asserted ignorance of the specific objectives alleged in the indictment — accordingly, a 'conscious avoidance' instruction was fitting[.]");*United States v. Lange*, 834 F.3d 58, 78 (2d Cir. 2016) (conscious avoidance charge appropriate in conspiracy case where the defendant "argued at trial that he lacked knowledge of the nature of the fraudulent schemes"); *United States v. Cuti*, 720 F.3d 453, 464 (2d Cir. 2013) ("This purported lack of knowledge defense,

despite Tennant's deep involvement in the transactions [at issue], all but invited the conscious avoidance charge.").

**Request No. 13: Venue**

In addition to all the elements that I have described for you, you must also consider the issue of venue as to each of Counts One through Three of the Indictment — namely, whether any act in furtherance of the crime occurred within this District, which is the Southern District of New York. The Southern District of New York includes, among other areas, Manhattan. Anything that occurs in Manhattan occurs in the Southern District of New York.

For each of Counts One through Three, venue is proper in the Southern District of New York if you find that any act in furtherance of that offense occurred in this District, and that it was reasonably foreseeable to Mr. Gupta that the act would take place in this District.

As to venue, and as to venue alone, the Government's burden is not proof beyond a reasonable doubt. Instead, the Government must prove venue by a preponderance of the evidence — meaning more likely than not. Thus, the Government has satisfied the venue requirement if you conclude that it is more likely than not that any act in furtherance of the count you are considering occurred within this District. If you find that the Government has failed to prove this venue requirement as to any count, then you must acquit Mr. Gupta of that count.

Adapted from Hon. Victor Marrero, Jury Charge, *United States v. Torres*, 16 Cr. 809 (S.D.N.Y. 2020).

**Request No. 14: Use of Undercover Officers and Informants**

You have heard testimony from an undercover law enforcement officer. You have also heard testimony from a paid DEA confidential source, or informant, who was employed by the Government to investigate the defendant.

Sometimes the Government uses undercover officers and or informants who may conceal their true identities in order to investigate suspected violations of the law. There is nothing improper or illegal with the Government using these techniques. Indeed, certain types of evidence would be *extremely* difficult to detect without the use of undercover officers or informants. You should therefore consider this evidence, together with all the other evidence, and give it such weight, if any, as you believe it merits.[5]

Whether or not you approve of the use of an undercover officer or informant to detect unlawful activities is not to enter into your deliberations in any way.

On the other hand, when an informant testifies, as [**pseudonym for CS-1**] did here, his testimony must be examined with greater scrutiny than the testimony of an ordinary witness. You should consider whether he received any benefits or promises from the Government that would motivate him to testify falsely against the defendant. For example, he may believe that he will only continue to receive these benefits if he produces evidence of criminal conduct. If you decide

[5] **Defense Position**: The "if any" language is a correct statement of the law and mirrors the charge used by the Honorable John G. Koeltl in the Jury Charge given in *United States v. Tabarez*, 13 Cr. 947 (S.D.N.Y. 2014).

**Government's Position**: The "if any" language undermines the thrust of the paragraph by suggesting that although the use of undercover officers and informants is lawful, the jury should feel free to disregard their testimony altogether. Without the "if any," the sentence says to give the evidence "such weight as you believe it merits," which implicitly includes none.

to accept his testimony, after considering it in the light of all the evidence in this case, then you may give it whatever weight, if any, you find it deserves.

*However, because of the possible interest that an informant may have in testifying, an informant's testimony should be scrutinized with special care and caution. The fact that a witness is an informant for the Government can be considered by you as bearing upon his credibility. It does not follow, however, that simply because a person has been paid by the Government to investigate a case, that he is incapable of giving a truthful version of what happened. Like the testimony of any other witness, informant testimony should be given such weight as it deserves in light of the facts and circumstances before you, taking into account the witness's demeanor and candor, the strength and accuracy of his recollection, his background, or the extent to which the testimony is or is not corroborated by other evidence in the case. You may consider whether an informant witness — like any other witness called in the case — has an interest in the outcome of the case, and if so, whether it has affected his testimony.*[6]

Adapted from Sand, *Modern Federal Jury Instructions*, Instr. 5-23.

---

[6] **Government's Position**: The Government objects to the underlined defense paragraph because it is not even-handed. While recognizing it is drawn from Sand, the instruction suggests, for example — without factual basis in this case — that the informant here may be incentivized to "testify falsely against the defendant" and "may believe that he will only continue to receive these benefits if he produces evidence of criminal conduct." The Government has proposed an alternative instruction modeled on the Court's instruction on the credibility of accomplice witnesses in *Torres*. The Government suggests that the Court address the credibility of informants as part of its general instructions on witness credibility.

**Defense Position**: The defense responds that given that informants are differently situated than accomplice witnesses, the instruction proposed by the defense is more appropriate. It is the standard proffered instruction in Sand, *Modern Federal Jury Instructions*, Instr. 7-14, and has been given by a number of judges in this district. *See* Hon. Robert P. Patterson, Jr., Jury Charge, *United States v. Melvin*, 12 Cr. 727 (S.D.N.Y. 2013). It was also given by Judge Engelmayer in the context of a witness with a non-prosecution agreement. *See* Hon. Paul A. Engelmayer, Jury Charge, *United States v. Hoey*, 15 Cr. 229 (S.D.N.Y. 2016). The Court should specifically address informant credibility here, where instructing the jury on how to consider testimony from an informant.

**Request No. 15: Use of Evidence Obtained at Time of Arrest**

You have heard testimony that when law enforcement officers arrested Mr. Gupta in the Czech Republic, they seized evidence from him. The evidence allegedly obtained from Mr. Gupta at the time of his arrest was properly admitted in this case and may properly be considered by you. Whether you approve or disapprove of how the evidence was obtained from Mr. Gupta should not enter into your deliberations. What weight you choose to give this evidence is entirely up to you.

Adapted from Hon. Paul G. Gardephe, Jury Charge, *United States v. Wang, et ano.*, 23 Cr. 302 (S.D.N.Y. 2025).

* * *

Dated: New York, New York
October 1, 2025

Respectfully submitted,

MILBANK LLP

By: /s Matthew Laroche
Matthew Laroche
Nola B. Heller
Peter Farag
Isabel C. Pitaro
(212) 530-5514/-5108/-5830/-5136

*Counsel for Defendant Nikhil Gupta*

JAY CLAYTON
United States Attorney
Southern District of New York

By: /s Alexander Li
Ashley C. Nicolas
Alexander N. Li
Camille L. Fletcher
Assistant United States Attorneys
(212) 637-2467/-2265/-2383

*Counsel for the United States of America*