UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 23 Cr. 289 (VM)

NIKHIL GUPTA,

Defendant. Plea

------------------------------x

New York, N.Y.
February 13, 2026
10:20 a.m.

Before:

HON. SARAH NETBURN,

Chief Magistrate Judge

APPEARANCES

JAY CLAYTON
United States Attorney for the
Southern District of New York
CAMILLE L. FLETCHER
ALEXANDER N. LI
ASHLEY C. NICOLAS
Assistant United States Attorneys

DAVID TOUGER
Attorney for Defendant

Also Present: Umesh C. Passi, Interpreter (Hindi)
Madhu Mishra, Interpreter (Hindi)
Sabrina Jim Munoz, Paralegal Specialist-USAO

(Case called)

THE DEPUTY CLERK: Starting with the government, please state your name for the record.

MS. FLETCHER: Good morning, your Honor.

Camille Fletcher, Alexander Li, Ashley Nicolas, for the United States. Also at counsel's table is Paralegal Specialist Sabrina Jim Munoz.

THE COURT: Thank you.

MR. TOUGER: Good morning, your Honor.

David Touger, T-O-U-G-E-R, for Mr. Gupta, who's sitting to my right.

THE COURT: Thank you. And good morning, Mr. Gupta.

My name is Judge Netburn. I hear you have an interpreter going, but you don't have an interpreter device on.

THE INTERPRETER: Umesh Passi, P-A-S-S-I, Hindi interpreter.

Good morning, your Honor.

THE COURT: Good morning.

THE INTERPRETER: I'm Madhu Mishra, M-A-D-H-U; last name is Mishra, M-I-S-H-R-A, and I'm a Hindi interpreter.

THE COURT: Okay. Great.

Ms. Shaw, can you swear in the interpreters.

(Interpreters sworn)

THE COURT: Thank you very much.

Mr. Gupta, if at any point in time your translation

device should stop working, just please raise your hand so that we can fix it. Terrific.

Sir, I have before me a consent to proceed before a United States Magistrate Judge on a felony plea allocution that you have signed. What this form says is that knowing you have the right to have this plea taken by a United States District Judge, you are agreeing instead to have this plea taken by me, a United States Magistrate Judge; is that correct?

THE DEFENDANT: (In English) Yes.

THE COURT: And before you signed this form, did your lawyer explain it to you?

THE DEFENDANT: (In English) Yeah, my attorney explained.

THE COURT: Thank you.

Sir, you've been charged in a three-count superseding indictment.

Count One charges you with participating in a conspiracy to commit murder for hire, in violation of Title 18 of the United States Code, Section 1958.

THE DEFENDANT: (In English) Right.

THE COURT: Count Two charges you with committing murder for hire, in violation of Title 18 of the United States Code, Sections 1958 and 2.

THE DEFENDANT: (In English) Right.

THE COURT: And Count Three charges you with

participating in a conspiracy to commit money laundering, in violation of Title 18 of the United States Code, Section 1956(h).

THE DEFENDANT: (In English) Right.

THE COURT: I've been informed that you wish to change your plea and to enter a plea of guilty to certain charges; is that correct?

THE DEFENDANT: (In English) Correct.

THE COURT: Before deciding whether to accept your guilty plea, I'm going to ask you certain questions. It's very important that you answer these questions honestly and completely. The purpose of these proceedings is to make sure that you understand your rights, to decide whether you are pleading guilty of your own free will, and to make sure that you are pleading guilty because you are guilty and not for some other reason.

THE DEFENDANT: (In English) Very true, your Honor.

THE COURT: Do you understand what I'm saying?

THE DEFENDANT: (In English) Yes, I'm getting it completely.

THE COURT: If at any point in time you don't understand my questions or you want an opportunity to speak with your lawyer, please say so; because it's important that you understand every question before you answer it.

THE DEFENDANT: (In English) Thank you very much, your

Honor. Obliged.

THE COURT: Ms. Shaw, will you please swear in Mr. Gupta.

(Defendant sworn)

THE DEPUTY CLERK: Please state your name for the record.

THE DEFENDANT: (In English) Nikhil Gupta.

THE DEPUTY CLERK: Thank you. Have a seat.

THE DEFENDANT: (In English) Thank you.

THE COURT: Sir, you understand that you are now under oath; and if you answer any of my questions falsely, you can be prosecuted for perjury? Do you understand that?

THE DEFENDANT: (In English) Yes.

THE COURT: Sir, are you a United States citizen?

THE DEFENDANT: (In English) No.

THE COURT: What country are you a citizen of?

THE DEFENDANT: (In English) India.

THE COURT: And do you understand that as a result of your guilty plea, it is very likely that you will be ordered removed from the United States? Do you understand that?

THE DEFENDANT: (In English) Yes.

THE COURT: Okay. And that, at a minimum, you risk being removed or suffering other immigration consequences. So, for example, you could be denied citizenship in the future; you could be denied admission to the United States in the future;

and, like I said, you could be removed.

Do you understand all of this?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: And have you discussed these possible immigration consequences of your plea with your lawyer?

THE DEFENDANT: (In English) Yes, he explain to me everything.

THE COURT: Okay. And do you understand that you will be bound by your guilty plea, regardless of these immigration consequences and regardless of any advice you may have received from your lawyer or anyone else regarding those immigration consequences?

THE DEFENDANT: (In English) Yeah. He explain me this.

THE COURT: Okay.

Mr. Gupta, how old are you?

THE DEFENDANT: (In English) I'm running 54.

THE COURT: 54?

THE DEFENDANT: (In English) Yeah.

THE COURT: And how far did you go in school?

THE DEFENDANT: (In English) I did graduation.

THE COURT: And what did you graduate from?

THE DEFENDANT: Bachelor of art.

THE COURT: Bachelor of art. And that was in India?

THE DEFENDANT: (In English) In India, Delhi

University.

THE COURT: I take it you understand some English.

THE DEFENDANT: (In English) I don't know. Now since three years only that I miss and everyone only the English, so I am -- I am improved now.

THE COURT: Okay.

THE DEFENDANT: (In English) But not 100 percent. That's why sometime I am looking left and right. I'm sorry for that.

THE COURT: No, that's fine. I just want to clarify your capacity in English.

Are you able to read English?

THE DEFENDANT: (In English) A little. Not 100 percent, but, yes, 40 percent, 50 percent, yes.

THE COURT: Okay. Has the indictment been translated for you?

THE DEFENDANT: (In English) Yes.

THE COURT: Are you currently or have you recently been under the care of a doctor or a psychiatrist for any reason?

THE DEFENDANT: (In English) No, no, your Honor.

THE COURT: Have you taken any mind-altering drugs, medicine or pills?

THE DEFENDANT: (In English) No, no, your Honor.

THE COURT: Anything in the last 24 hours?

THE DEFENDANT: (In English) No.

THE COURT: What about any alcohol, have you consumed any alcohol in the last 24 hours?

THE DEFENDANT: (In English) No, no.

THE COURT: For the benefit of the court reporter, as well as you, can you just make sure that I get to ask my question fully before you answer it?

THE DEFENDANT: (In English) Okay. Okay, your Honor.

THE COURT: Thank you.

Our court reporters are very good, but they can't take down two statements at once.

Okay. Mr. Gupta, is your mind clear today?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: Do you understand what's happening in these proceedings?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: Does the government have any objection about the defendant's competence to enter a guilty plea at this time?

MS. FLETCHER: We have no concerns about the defendant's competence, your Honor.

THE COURT: Okay.

And does defense counsel have any objections?

MR. TOUGER: No, your Honor.

THE COURT: Okay.

Sir, I was just asking you, have you received a copy of the written version of the charges in this case known as the indictment?

THE DEFENDANT: (In English) Yes.

THE COURT: Okay.

And you told me earlier it's been translated for you?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: Do you understand what it says?

THE DEFENDANT: (In English) Yes.

THE COURT: You have the right to have me read it to you in its entirety here in open court, if you would like, or you can waive that right.

THE DEFENDANT: (In English) I waive.

THE COURT: You waive it?

THE DEFENDANT: (In English) Yes.

THE COURT: Okay.

And as we discussed, you understand that you're charged with three counts: With participating in a conspiracy to commit murder for hire, for the act of committing murder for hire, and for participating in a conspiracy to commit money laundering. You understand all of that?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: Have you had time to talk to your attorney about these charges and about how you wish to plead?

THE DEFENDANT: (In English) Yes, in detail.

THE COURT: Okay.

And has he told you the consequences of pleading guilty?

THE DEFENDANT: (In English) Yes. He explain to me everything in detail, pros and cons, everything.

THE COURT: Okay.

Are you satisfied with your attorney's representation?

THE DEFENDANT: (In English) Completely.

THE COURT: Sir, I'm now going to explain certain constitutional rights that you have. These are rights that you will be giving up if you enter a guilty plea. Please listen carefully to what I'm about to say; and if you don't understand something, please stop me, and your attorney or I will explain the issue more fully. Okay?

THE DEFENDANT: (In English) Yes.

THE COURT: Under the Constitution and the laws of the United States, you have the right to plead not guilty to the charges contained in this indictment. Do you understand that?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: And if you pled not guilty, you would be entitled under the Constitution to a speedy and public trial by a jury of those charges.

At that trial, you would be presumed innocent and the government would be required to prove you guilty beyond a reasonable doubt before you could be found guilty.

THE DEFENDANT: (In English) Yes, your Honor, I understand.

THE COURT: This means that you would not have to prove that you are innocent, and you would not be convicted unless a jury of 12 people agreed unanimously that you are guilty beyond a reasonable doubt. Do you understand that?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: If you decided to go to trial, at that trial and at every stage of your case, you would have the right to be represented by an attorney. And if you could not afford one, an attorney would be appointed to represent you at the government's expense and at no cost to you.

THE DEFENDANT: Yes, your Honor.

THE COURT: When an attorney is appointed, that attorney is appointed to handle your case all the way through to trial and not just for a guilty plea. So your decision to plead guilty here today should not depend on whether you can afford to hire an attorney. Do you understand that?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: During a trial, the witnesses for the prosecution would have to come to court and testify in your presence, where you could see and hear them, and your lawyer could cross-examine those witnesses.

And if you wanted, your lawyer could offer evidence on your behalf. You would be able to use the Court's power to

compel witnesses to come to court to testify in your defense, even if they did not want to come. Do you understand that?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: At a trial, you would have the right to testify in your own defense if you wanted to, but you would also have the right not to testify. And if you chose not to testify, that could not be used against you in any way. No inference or suggestion of guilt could be made from the fact that you did not testify. Do you understand that?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: If you are convicted at trial, you would have the right to appeal that verdict to a higher court.

Do you understand that?

THE DEFENDANT: (In English) Yes.

THE COURT: And as I said before, you have the right to plead not guilty. Even right now, even as you sit here today for the purposes of entering a guilty plea, you have the right to change your mind, persist in your not-guilty plea, and proceed to trial.

But if you do plead guilty and I accept your plea, there will be no trial. All that will remain to be done will be to impose a sentence. You and the government will have a chance to make arguments about what that sentence should be. But there will not be any further trial to determine whether you are guilty or not guilty of the charges to which you pled

guilty. Do you understand that?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: Do you understand that the decision as to the appropriate sentence in this case will be entirely up to the sentencing judge; and that he will be limited only by what the law requires? This means that even if you are surprised or disappointed by your sentence, you will still be bound by your guilty plea. Do you understand that?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: Finally, if you do plead guilty, you are giving up your right not to incriminate yourself. And I will ask you questions about what you did in order to satisfy myself that you are actually guilty. By pleading guilty, you are admitting to your factual as well as your legal guilt.

Do you understand that?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: You said earlier that you have reviewed the indictment, it's been translated for you, and you discussed the charges with your lawyer.

If the case were to proceed to trial, the government would be required to prove each of the elements of each of the charges against you beyond a reasonable doubt.

So I'm now going to ask the Assistant United States Attorney to state the elements of each charge.

MS. FLETCHER: Yes, your Honor.

The defendant is charged in three counts in the second superseding indictment.

Count One charges the defendant with conspiracy to commit murder for hire, in violation of 18, United States Code, Section 1958.

This crime has two elements, each of which the government must prove beyond a reasonable doubt:

First, that there was a conspiracy or agreement to commit the crime of murder for hire.

And second, that the defendant participated in the conspiracy, with knowledge of its unlawful purpose, and with the intent to achieve its unlawful objective.

Count Two charges the defendant with murder for hire, in violation of 18, United States Code, Sections 1958 and 2.

This crime has three elements, each of which the government must prove beyond a reasonable doubt:

First, that the defendant used or caused another person to use a facility of interstate or foreign commerce.

Second, that the defendant used or caused another person to use the facility of interstate or foreign commerce with the intent of bringing another -- bringing about the murder of another person, in violation of the laws of any state or of the United States.

And third, that the defendant intended that the murder be committed as a consideration for the receipt of anything of

value.

Count Three charges the defendant with conspiracy to commit money laundering, in violation of 18, United States Code, Section 1956(h).

This crime has two elements, each of which the government must prove beyond a reasonable doubt:

First, that there was a conspiracy or agreement to commit the crime of money laundering.

And second, that the defendant participated in the conspiracy with knowledge of its unlawful purpose and with the intent to achieve its unlawful objective.

For clarity, I'll now describe the element of the object of the conspiracy alleged in Count Three; that is the elements of the substantive crime of money laundering.

That substantive crime has two elements:

First, that the defendant transported, transmitted, or transferred, or attempted to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States, or to a place in the United States from or through a place outside the United States.

And second, that the defendant engaged in that transaction with the intent to promote the carrying on of a specified unlawful activity. The specified unlawful activity alleged in Count Three are acts indictable under Title 18,

United States Code, Section 1958. That is the murder for hire laws.

In addition to the elements just recited, the government must also prove for each count — that's Counts One, Two, and Three — that venue is proper here in the Southern District of New York by a preponderance of the evidence.

THE COURT: Thank you.

Mr. Gupta, I'm now going to tell you the maximum possible punishments for these crimes. "The maximum" means the most that could possibly be imposed; it does not necessarily mean this is what you will receive. But you have to understand that by pleading guilty here today, you are exposing yourself to any combination of punishments up to the maximum that I'm about to describe. Do you understand that?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: Okay. First I'm going to tell you about the possible restrictions on your liberty.

With respect to Count One, for a conspiracy to commit murder for hire, the maximum allowable term of imprisonment is ten years, and there is a maximum term of supervised release of three years.

Count Two, which charges you with committing murder for hire, also carries a maximum term of imprisonment of ten years and a maximum term of supervised release of three years.

And Count Three, which charges you with conspiracy to

commit money laundering, carries a maximum term of imprisonment of 20 years, and a maximum term of supervised release of three years.

This means that the total term of imprisonment that you face for Counts One, Two, and Three, is 40 years.

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: With respect to supervised release, "supervised release" means that if you are sentenced to prison and thereafter released from prison, you may be subject to supervision by the probation department.

If you are placed on supervised release and then you violate any of the terms or conditions of that release, the Court can revoke your term of supervised release and return you to prison without giving you any credit for the time that you served out on supervised release.

Do you understand all of that?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: Second, in addition to these restrictions on your liberty, the maximum possible punishment also includes certain financial penalties.

With respect to Count One, for conspiracy to commit murder for hire, that carries a maximum allowable fine of the greatest of $250,000 or twice what was made by the criminal activity or twice what someone other than yourself lost because of the criminal activity.

Count Two similarly carries a maximum fine of the greatest of $250,000 or twice what was made by the criminal activity or twice what someone other than yourself lost because of the criminal activity.

And Count Three, which charges you with conspiracy to commit money laundering, carries a maximum fine of $500,000 or twice the value of the property that was involved in the transaction.

In addition, there is a mandatory special assessment that must be imposed for each count of conviction. For each count there is $100 mandatory special assessment. So if you plead guilty to all three counts, there is a $300 mandatory special assessment.

Sir, has anyone threatened you or coerced you in any way to get you to plead guilty?

THE DEFENDANT: (In English) No, your Honor. It's my own way.

THE COURT: Okay. Good.

Has anyone promised you or offered you anything to get you to plead guilty?

THE DEFENDANT: (In English) No.

THE COURT: In this case, the government has written a letter to your lawyer; it's sometimes referred to as a *Pimentel* letter, which is based on the case *United States v. Pimentel*.

This letter explains how the government believes the

sentencing guidelines would apply to your case.

Have you seen a copy of this letter?

THE DEFENDANT: (In English) Yes. Yes, your Honor.

THE COURT: Okay.

So the government has made its own assessment of your sentencing range under the sentencing guidelines. And based on the government's calculation, it believes that the appropriate guidelines range for you is between 235 to 293 months' imprisonment. Are you aware of that?

THE DEFENDANT: (In English) Yes, my attorney explain to me.

THE COURT: In addition, the government has calculated that the appropriate fine range in this case is a fine between $50,000 and $500,000. Are you aware of that as well?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: As I indicated, this is the government's assessment of what your sentencing range would be under the sentencing guidelines. But it is not binding on the district court; and that the district court may reject these calculations. Do you understand that?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: And that includes that the district court can impose a more severe punishment than the government has calculated here in this letter. Do you understand that?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: And you would not be permitted to withdraw your guilty plea in that instance. Do you understand that?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: Okay. The sentencing judge is required to make his own independent calculation under the sentencing guidelines, and then impose a sentence based on what he believes is the appropriate sentence for you, even if it is different than the one in this letter. Do you understand that?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: In determining that sentence, the Court will consider — in addition to the guidelines and any departures from those guidelines — all of the factors that are set forth in our sentencing statute, which you can find at Title 18, United States Code, Section 3553(a).

Those factors include the nature and circumstances of the offense, and the history and characteristics of you, the defendant; the need for the sentence imposed; the kinds of sentences that are available; the sentencing range provided under the guidelines; the need to avoid sentencing disparities; and the need to provide restitution to victims.

In addition, the Court will consider the presentence report which is prepared by the probation department in advance of your sentencing. Before you are sentenced, you and the government will have an opportunity to challenge the facts that are reported by the probation office. Do you understand that?

THE DEFENDANT: (In English) Yes, my attorney has explained me that too. Yes.

THE COURT: Okay.

Sir, now that you've been advised of the charges against you and the possible penalties that you face and the rights that you are giving up, is it still your intention to plead guilty to Counts One, Two, and Three of the indictment?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: Okay. So with respect to Count One that charges you with conspiracy to commit murder for hire, how do you plead?

THE DEFENDANT: (In English) Guilty.

THE COURT: Okay.

And with respect to Count Two, which charges you with committing murder for hire, how do you plead?

THE DEFENDANT: (In English) Guilty.

THE COURT: And with respect to Count Three, that charges you with conspiracy to commit money laundering, how do you plead?

THE DEFENDANT: (In English) Guilty.

THE COURT: Sir, can you tell me now in your own words what you did to make you believe that you are guilty of this charge. You can stay seated, sir.

THE DEFENDANT: (In English) Okay.

THE COURT: However you're most comfortable.

THE DEFENDANT: (In English) May I read aloud?

THE COURT: Yes. Just make sure you read slowly.

THE DEFENDANT: (In English) Okay.

In the spring of 2023, I agreed with another person to have another individual to murder a person in United States. And in furtherance to that crime, I had delivered $15,000 in cash via cellular phone to another individual in United States.

THE COURT: So I understand, sir, your allocution is that in 2023, you and another person agreed to commit murder for hire; and in exchange for that, you received $15,000.

Is that correct?

MR. TOUGER: He paid somebody else $15,000?

THE DEFENDANT: (In English) I paid $15,000 by using the cellular phone to another person.

THE COURT: You paid somebody $15,000 to do this?

THE DEFENDANT: (In English) Yes.

MR. TOUGER: And he was in India at that time.

THE COURT: Sir, at the time that you paid that person, you were in India?

THE DEFENDANT: (In English) Yes, your Honor.

THE COURT: Does the government believe that is a sufficient allocution for the three counts?

MS. FLETCHER: Your Honor, could you ask the defendant where he understood the victim was at the time he was arranging the murder, as well as where the payment actually occurred, the

payment of the $15,000 occurred.

THE COURT: You mean where it was received?

MS. FLETCHER: Correct.

THE COURT: Sir, when you made the payment of $15,000 to another person, where was that person located?

THE DEFENDANT: (In English) Who received the money?

THE COURT: Who received the money.

THE DEFENDANT: (In English) When I phoned, he was in Manhattan.

THE COURT: He was in Manhattan?

THE DEFENDANT: (In English) According to the documents.

THE COURT: According do the documents?

THE DEFENDANT: (In English) Yes.

THE COURT: Okay.

But you did not know that he was in Manhattan?

THE DEFENDANT: (In English) See, I was in India, so but I was just talking over the phone.

THE COURT: Okay.?

THE DEFENDANT: (In English) Yes.

THE COURT: Did you know that the person was in the United States?

THE DEFENDANT: (In English) Yeah, that I knew, that he was in the United States.

THE COURT: Okay. But maybe not --

THE DEFENDANT: (In English) In New York, that also.

THE COURT: So you knew he was in New York, just not specifically?

THE DEFENDANT: (In English) Yes.

THE COURT: Okay. And where did you believe the person who was targeted for murder, where was that person?

THE DEFENDANT: (In English) In New York.

THE COURT: That person was also in New York?

THE DEFENDANT: (In English) Yes. In Queens especially.

THE COURT: In Queens.

THE DEFENDANT: (In English) Yes.

THE COURT: Okay.

And you knew that when you sent this person the $15,000, it was to pay that person to commit the murder; is that correct?

THE DEFENDANT: (In English) Yeah. Yes.

THE COURT: Any additional questions you'd like me to ask the defendant?

MS. FLETCHER: No, your Honor.

THE COURT: Does the government believe that's a sufficient allocution for the guilty pleas?

MS. FLETCHER: Yes, your Honor.

THE COURT: Do you want to proffer the evidence if the case had gone forward to trial.

MS. FLETCHER: Yes, your Honor.

If the case had gone to trial, the government's evidence would include:

First, testimony from a confidential source from whom the defendant solicited the murder of the victim in New York. Testimony from an undercover officer that acted as the would-be hitman to whom the defendant arranged payment in Manhattan, New York, in furtherance of the murder-for-hire plot.

The defendant's post-arrest statement admitting his participation in the murder-for-hire plot. Recorded WhatsApp text messages, voice notes, audio calls, and video calls in which the defendant solicited and orchestrated the plot to murder the victim.

Evidence from the defendant's cell phones, including text messages, between the defendant and a co-conspirator showing their agreement and plans to murder the victim; as well as text messages indicating that the funds that they used to pay the purported hitman in New York originated from India. As well as video of the $15,000 initial cash payment for the murder, when it was made to the undercover agent here in New York City.

THE COURT: Thank you.

Sir, on the basis of your responses to my questions and my observation of your demeanor, I find that you are competent to enter a guilty plea. I'm satisfied that you

understand your rights, including your right to go to trial; that you are aware of the consequences of your plea, including the sentence that may be imposed and the immigration consequences that will likely follow; that you are voluntarily pleading guilty, and that you've admitted that you're guilty as charged in Counts One, Two, and Three of the indictment.

For these reasons, I'll recommend to District Judge Marrero that he accept your plea of guilty as to Counts One, Two, and Three of the indictment.

THE DEFENDANT: (In English) Thank you.

THE COURT: I'll direct the government to order a copy of the transcript and submit it to Judge Marrero so that he may act on my recommendation.

Has he set a sentencing date?

MS. FLETCHER: He has not, your Honor.

THE COURT: Should I just set a three-month control date?

MS. FLETCHER: Yes, your Honor. Thank you.

THE COURT: Okay. So May 15th, 2026, is a control date for us.

I'll direct that the presentence report be prepared.

Can the government deliver a case summary to probation for purposes of the presentence report within the next 14 days?

MS. FLETCHER: Yes, your Honor.

THE COURT: Thank you.

And can defense counsel be available with Mr. Gupta to be interviewed by probation in the next 14 days?

MR. TOUGER: Yes, your Honor.

And also, he does not need an interpreter for the PSI.

THE COURT: He does not need an interpreter for the PSI. Okay.

Mr. Gupta, are you comfortable with that?

THE DEFENDANT: (In English) Yes, I am comfortable with that.

THE COURT: Okay.

So we'll just indicate that that will not be necessary.

All right. Anything further from the government?

MS. FLETCHER: No, your Honor. Thank you.

THE COURT: Anything further from defense?

Counsel, anything further?

MR. TOUGER: No, your Honor.

I'm just going to make a request for the transcript also.

THE COURT: Okay. Great. Thank you. We're adjourned.

THE DEFENDANT: (In English) Thank you very much, your Honor. Thank you. Highly obliged.

* * *